**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**Newark Vicinage**

ROCHE DIAGNOSTICS CORP. and ROCHE
DIABETES CARE, INC.,

                    Plaintiffs,

     v.

JEFFREY C. SMITH; STEVEN L. HADLOCK;
SAHILY PAOLINE; DAVID GRANT; JUSTIN
LEAVITT; BLAINE SMITH; TRAVIS HUGHES;
ALISON WISTNER; ADAM KOOPERSMITH;
LEE H. ROSEBUSH; ZB, N.A.; HUGHES &
COMPANY; HUGHES & COMPANY
INVESTMENT PARTNERS, LLC; KESMAN
HUGHES & COMPANY, LLC; HS
MEDSOURCE HOLDCO, LLC; MERCATO
MANAGEMENT, LLC; MERCATO PARTNERS,
LLC; MERCATO PARTNERS GROWTH II GP,
LLC; MERCATO PARTNERS GROWTH II, L.P.;
MERCATO PARTNERS GROWTH AFFILIATES
II, L.P.; MERCATO PARTNERS AI II, L.P.;
MERCATO PARTNERS INGRAM, LLC;
MERCATO PARTNERS INGRAM CO-INVEST,
LLC; JABODON PT COMPANY; PRITZKER
GROUP VENTURE CAPITAL LLC; NWV-
ALLIANCE LLC; and NWV-ALLIANCE-2 LLC,

                  Defendants.

**Civil Action**

Case No. 2:19-cv-08761-CCC-CLW

*Document Electronically Filed*

**MEMORANDUM OF LAW OF DEFENDANTS**
**SAHILY PAOLINE, STEVEN HADLOCK, AND BLAINE SMITH**
**IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

Stephanie Resnick, Esq.
Ernest E. Badway, Esq.
John C. Fuller, Esq.
**FOX ROTHSCHILD LLP**
49 Market Street
Morristown, New Jersey 07960-5122
Telephone: (973) 994-7530
Fax: (973) 992-9125
E-mail: sresnick@foxrothschild.com
E-mail: ebadway@foxrothschild.com
E-mail: jfuller@foxrothschild.com

*Attorneys for defendants Sahily Paoline,*
*Steven L. Hadlock, and Blaine Smith*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ................................................................... 1

STATEMENT OF FACTS AND PROCEDURAL HISTORY.................... 2

LEGAL ARGUMENT ............................................................................... 4

POINT I.   PLAINTIFFS FAILED TO ARTICULATE A BASIS FOR PERSONAL JURISDICTION. .............................................................. 4

POINT II.  THIS COURT IS NOT A PROPER VENUE FOR THIS CASE. ............................. 7

POINT III. PLAINTIFFS' CLAIM FOR LOST PROFITS  IS BARRED BY THE FIRST SALE DOCTRINE. ................................................ 10

POINT IV.  THE COMPLAINT FAILS TO STATE A SINGLE CLAIM................................ 12

    A.     Roche has no Federal or New Jersey RICO claim............................. 13

           1.    *Roche's federal RICO claims are baseless.* ............................. 13

                i.     No Aiding and Abetting Exists ........................... 18

                b.    Roche Lacks Standing to Bring a RICO Claim. ......................... 18

           2.    *Roche does not have a New Jersey Racketeering Claim.* ......................... 20

           3.    *Roche has no RICO or NJRICO Conspiracy Claim.* ............................... 22

           4.    *Roche Has No Punitive Damages under RICO or NJRICO* .................... 24

    B.     Plaintiffs Failed to Plead Any Claim Sounding in Fraud with the Requisite Specificity. ........................................ 24

           1.    *Plaintiffs failed to specifically plead their fraud claim with particularity.* ............................... 24

           2.    *Plaintiffs' aiding and abetting fraud claim also fails.* ............................. 26

           3.    *Plaintiffs' fail to articulate a colorable cause of action for of conspiracy to commit fraud.* .............................. 28

    C.     There is No Unjust Enrichment Claim.................................................. 29

    D.     Plaintiffs Have No Claim for Negligent Misrepresentation. ................................ 31

E.      Plaintiffs Have Failed to State a Claim for Tortious Interference. ....................... 33

CONCLUSION ......................................................................................................................... 35

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alin v. Am. Honda Motor Co.*,
    2010 WL 1372308 (D.N.J. Mar. 31, 2010)..........................................................................30

*Am. Corp. Soc'y v. Valley Forge Ins. Co.*,
    424 F. App'x 86 (3d Cir. 2011) ..................................................................................28, 29

*In re Am. Inv'rs Life Ins. Co. Annuity Mktg. & Sales Practices Litig.*,
    2006 WL 1531152 (E.D. Pa. June 2, 2006)......................................................................18

*Anderson v. Ayling*,
    396 F.3d 265 (3d Cir. 2005)..............................................................................................18

*Annulli v. Panikkar*,
    200 F.3d 189 (3d Cir. 1999)........................................................................................13, 18

*Arlandson v. Hartz Mountain Corp.*,
    792 F. Supp. 2d 691 (D.N.J. 2011) ..................................................................................25

*Ashcroft v. Iqbal*,
    556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)..................................................12

*Banco Popular N. Am. v. Gandi*,
    876 A.2d 253, 184 N.J. 161 (2005)..................................................................................27

*Banks v. Wolk*,
    918 F.2d 418 (3d Cir. 1990)........................................................................................15, 22

*Barr Labs., Inc. v. Bolar Pharm. Co.*,
    1992 U.S. Dist. LEXIS 22882 (D.N.J. Dec. 23, 1992)....................................................34

*Bockman v. First Am. Mktg. Corp.*,
    459 F. App'x 157 (3d Cir. 2012) .......................................................................................7

*Bonavitacola Elec. Contractor, Inc. v. Boro Developers, Inc.*,
    87 F. App'x 227 (3d Cir. 2003) .......................................................................................16

*Bowman v. Monsanto Co.*,
    569 U.S. 278, 133 S.Ct. 1761, 185 L.Ed.2d 931 (2013)..................................................10

*Bridge v. Phoenix Bond & Indem. Co.*,
    553 U.S. 639, 128 S.Ct. 2131170, L.Ed.2d 1012 (2008)................................................27

*C.O. Truxton, Inc. v. Blue Caribe, Inc.*,
   2014 WL 6883145 (D.N.J. Dec. 5, 2014) .................................................................8, 9

*Cafaro v. HMC*,
   2008 WL 4224801 (D.N.J. Sep. 5, 2008) .................................................................29

*Canadian Nat'l Ry. v. Vertis, Inc.*,
   811 F. Supp. 2d 1028 (D.N.J. 2011) .......................................................................29

*Cetel v. Kirwan Fin. Grp., Inc.*,
   460 F.3d 494 (3d Cir. 2006).....................................................................................20

*CLP Packaging Sols. v. Sports Pouch Bev. Co.*,
   2008 WL 2095774 (D.N.J. May 15, 2008) ...............................................................9

*Cooper v. Samsung Elecs. Am., Inc.*,
   2008 WL 4513924 (D.N.J. Sep. 30, 2008) ...............................................................30

*Cottman Transmission Sys. v. Martino*,
   36 F.3d 291 (3d Cir. 1994)........................................................................................8

*Craig Outdoor Advert., Inc. v. Viacom Outdoor, Inc.*,
   528 F.3d 1001 (8th Cir. 2008) .................................................................................14

*Database Amer., Inc. v. Bellsouth Advertising & Pub. Corp.*,
   825 F. Supp. 1195 (D.N.J. 1993) ..............................................................................4

*Dist. 1199P Health & Welfare Plan v. Janssen, L.P.*,
   784 F. Supp. 2d 508 (D.N.J. 2011) ...................................................................28, 29

*Doug Grant, Inc. v. Greate Bay Casino Corp.*,
   232 F.3d 173 (3d Cir. 2000)......................................................................................15

*Eberhart v. LG Elecs. USA, Inc.*,
   188 F. Supp. 3d 401 (D.N.J. 2016) ..........................................................................32

*Educ. Testing Serv. v. Katzman*,
   631 F. Supp. 550 (D.N.J. 1986) ................................................................................5

*Eli Lilly & Co. v. Roussel Corp.*,
   23 F. Supp. 2d 460 (D.N.J. 1998) .....................................................................23, 34

*Fagan v. Fischer*,
   2016 WL 347318 (D.N.J. Jan. 28, 2016) .................................................................26

*Fairfax Fin. Holdings Ltd. v. S.A.C. Capital Mgmt., LLC*,
   450 N.J. Super. 1 (App. Div. 2017) ..........................................................................21

*Fimbel v. Fimbel Door Corp.*,
   2014 WL 6992004 (D.N.J. Dec. 10, 2014) .............................................................21

*Fiorani v. Chrysler Grp.*,
   510 F. App'x 109 (3d Cir. 2013) ........................................................................8

*Fowler v. UPMC Shadyside*,
   578 F.3d 203 (3d Cir. 2009) ............................................................................12

*Frederico v. Home Depot*,
   507 F.3d 188 (3d. Cir. 2007) ................................................................12, 24, 25

*Galicki v. New Jersey*,
   2016 WL 4950995 (D.N.J. Sept. 15, 2016) .......................................................21

*Genty v. Resolution Trust Corp.*,
   937 F.2d 899 (3d Cir. 1991) ........................................................................15, 18

*Goodyear Dunlop Tires Operations S.A. v. Brown*,
   564 U.S. 915, 131 S.Ct. 2846, 180 L.Ed.2d 796 (2011) ..........................................4

*Grayson v. Mayview State Hosp.*,
   293 F.3d 103 (3d Cir. 2002) ............................................................................31

*Great W. Mining & Mineral Co. v. Fox Rothschild LLP*,
   615 F.3d 159 (3d Cir. 2010) ............................................................................22

*Gretzula v. Camden Cty. Tech. Sch. Bd. of Educ.*,
   965 F. Supp. 2d 478 (D.N.J. 2013) ...................................................................31

*GSC Partners CDO Fund v. Washington*,
   368 F.3d 228 (3d Cir. 2004) ......................................................................12, 27

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
   466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984) ...........................................4

*Hemi Grp., LLC v. City of New York*,
   559 U.S. 1, 130 S.Ct. 983, 175 L.Ed.2d 943 (2010) ........................................19, 20

*Hemy v. Perdue Farms, Inc.*,
   2011 WL 6002463 (D.N.J. Nov. 30, 2011) .........................................................31

*Hoffman v. Liquid Health, Inc.*,
   2014 WL 29999280 (D.N.J. July 2, 2014) ..........................................................31

*Iberia Foods Corp. v. Romeo*,
   150 F.3d 298 (3d Cir. 1998) ............................................................................10

*Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*,
  90 F.3d 737 (3d Cir. 1996)...........................................................................14, 15

*IMO Indus., Inc. v. Kiekert AG*,
  155 F.3d 254 (3d Cir. 1998).................................................................................4

*Impression Prod., Inc. v. Lexmark Int'l, Inc.*,
  137 S. Ct. 1523, 198 L.Ed.2d 1 (2017) .............................................................10

*Interchange State Bank v. Veglia*,
  286 N.J. Super. 164 (App. Div. 1995) ...............................................................21

*Johnson v. Draeger Safety Diagnostics, Inc.*,
  2013 WL 3788937 (D.N.J. July 19, 2013)..........................................................32

*In re K-Dur Antitrust Litigation*,
  338 F. Supp. 2d 517 (D.N.J. 2004) ....................................................................30

*Kann v. U.S.*,
  323 U.S. 88, 65 S.Ct. 148, 89 L.Ed. 88 (1944)...................................................15

*Kaufman v. i-Stat Corp.*,
  754 A.2d 1188, 165 N.J. 94 (2000)..............................................................27, 33

*Keeton v. Hustler Magazine, Inc.*,
  465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984)..........................................5

*Kirtsaeng v. John Wiley & Sons, Inc.*,
  568 U.S. 519, 133 S.Ct. 1351, 185 L.Ed.2d 392 (2013)......................................10

*Kolar v. Preferred Real Estate Investments, Inc.*,
  361 Fed. App'x. 354 (3d Cir. 2010)....................................................................14

*Korean Cmty. Church of New Jersey Methodist v. Cho*,
  2012 WL 1224682 (D.N.J. Apr. 11, 2012) .........................................................14

*Korman v. Trusthouse Forte PLC*,
  1990 WL 83353 (E.D. Pa. June 15, 1990) ..........................................................24

*Kronfeld v. First Jersey Nat. Bank*,
  638 F. Supp. 1454 (D.N.J. 1986) .......................................................................31

*Leroy v. Great W. United Corp.*,
  443 U.S. 173, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979)............................................7

*Lightning Lube, Inc. v. Witco Corp.*,
  4 F.3d 1153 (3d Cir. 1993)..........................................................................23, 34

*In re Lipitor Antitrust Litig.*,
   868 F.3d 231 (3d Cir. 2017) ...................................................................13

*Lorven Techs., Inc. v. Insight Techs., Inc.*,
   2017 WL 2670971 (D.N.J. June 21, 2017) .............................................8

*Lum v. Bank of Am.*,
   361 F.3d 217 (3d Cir. 2004) ....................................13, 14, 15, 16, 24

*Lundy v. Catholic Health Sys. of Long Island Inc.*,
   711 F.3d 106 (2d Cir. 2013) ...................................................................17

*Maniscalco v. Brother Int'l Corp. (USA)*,
   627 F. Supp. 2d 494 (D.N.J. 2009) .......................................................30

*Marina Dist. Dev. Co., LLC v. Ivey*,
   216 F. Supp. 3d 426 (D.N.J. 2016) .......................................................20

*Maxim Sewerage Corp. v. Monmouth Ridings*,
   273 N.J. Super. 84 (Law. Div. 1993) ....................................................21

*Mayo, Lynnch & Assoc., Inc. v Pollack*,
   351 N.J. Super. 486 (App. Div. 2002) ..................................................22

*State of N.J., Dep't of Treasury, Div. of Inv. ex rel. McCormac v. Qwest*
   *Commc'ns Int'l, Inc.*,
   387 N.J. Super. 469 (App. Div. 2006) ..................................................27

*McDonald's Corp. v. Shop at Home, Inc.*,
   82 F. Supp. 2d 801 (M.D. Tenn. 2000) ..........................................10, 11

*McEvoy Travel Bureau, Inc. v. Heritage Travel, Inc.*,
   904 F.2d 786 (1st Cir. 1990) ..................................................................19

*Mellon Bank (East) PSFS, N.A. v. DiVeronica Bros., Inc.*,
   983 F.2d 551 (3d Cir. 1992) ................................................................4, 5

*Metro. Life Ins. Co. v. Bank One, N.A.*,
   2012 WL 4464026 (D.N.J. Sep. 25, 2012) .............................................8

*Miller v. Burt*,
   ___ Fed. App'x. ___, 2019 WL 1219977 (3d Cir. Mar. 14, 2019) .........14

*Moravian Dev. Corp. v. Dow Chem. Co.*,
   651 F. Supp. 144 (E.D.Pa. 1986) .........................................................24

*Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*,
   723 F.3d 192 (2d Cir. 2013) ...................................................................17

*Naporano Iron & Metal Co. v. American Crane Corp.*,
    79 F. Supp. 2d 494 (D.N.J. 1999) ...............................................................14, 15, 25

*Nat'l Sec. Sys. v. Iola*,
    700 F.3d 65 (3d Cir. 2012)........................................................................15, 16

*O'Connor v. Sandy Lane Hotel Co., Ltd.*,
    496 F.3d 312 (3d Cir. 2007)..............................................................................4

*Osawa & Co. v. B & H Photo*,
    589 F. Supp. 1163 (S.D.N.Y. 1984)............................................................10, 11

*Pennsylvania Ass'n of Edwards Heirs v. Rightenour*,
    235 F.3d 839 (3d Cir. 2000).......................................................................18, 21

*Petit-Clair v. Attorney General for New Jersey*,
    730 Fed. Appx. 120 (3d Cir. 2018) ....................................................................33

*Prestonettes, Inc. v. Coty*,
    264 U.S. 359, 44 S.Ct. 350, 68 L.Ed. 731 (1924) ...............................................10

*Princeton Ophthalmic, LLC v. Corinthian Ophthalmic, Inc.*,
    2017 WL 4543688 (D.N.J. Oct. 10, 2017).........................................................31

*Prudential Ins. Co. of Am. v. Bank of Am.*,
    14 F. Supp. 3d 591 (D.N.J. 2014) .....................................................................26

*Quality King Distribs. v. L'anza Research Int'l*,
    523 U.S. 135, 118 S.Ct. 1125, 140 L.Ed.2d 254 (1998).......................................10

*Rapid Models & Prototypes, Inc. v. Innovated Sols.*,
    71 F. Supp. 3d 492 (D.N.J. 2014) .....................................................................32

*Reed v. Scheffler*,
    218 F. Supp. 3d 275 (D.N.J. 2016) ...................................................................12

*Reese v. Horizon Blue Cross Blue Shield of New Jersey*,
    2008 WL 5188853 (D.N.J. Dec. 10, 2008)........................................................23

*Rehrer v. Atiyeh*,
    2015 WL 5680104 (D.N.J. Sep. 25, 2015) ..........................................................5

*Roche Diagnostics Corp. v. Binson's Hosp. Supplies, Inc.*,
    2017 WL 4123050 (S.D. Ind. Sep. 18, 2017) ..............................................6, 7, 25

*Roll v. Singh*,
    2008 WL 3413863 (D.N.J. June 26, 2008) ........................................................31

*Rolo v. City Investing Co. Liquidating Tr.*,
155 F.3d 644 (3d Cir. 1998)...........................................................................18, 21

*Rush v. Savchuk*,
444 U.S. 320, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980)....................................................5

*Salinas v. U.S.*,
522 U.S. 52, 118 S.Ct. 469, 139 L.Ed.2d 352 (1997)..................................................22

*Schmuck v. U.S.*,
489 U.S. 705, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1954)..............................................17

*Sebastian Int'l, Inc. v. Consumer Contacts (PTY) Ltd.*,
847 F.2d 1093 (3d Cir. 1988)...........................................................................10

*Sebastian Int'l Inc. v. Longs Drug Stores Corp.*,
53 F.3d 1073 (9th Cir. 1995) .......................................................................10, 11

*Sedima, S.P.R.L. v. Imrex co., Inc.*,
473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985)...........................................13, 19

*Seville Indus. Machinery Corp. v. Southmost Machinery Corp.*,
742 F.2d 786 (3d Cir. 1984).............................................................................25

*Shearin v. E.F. Hutton Group, Inc.*,
885 F.2d 1162 (3d Cir. 1989)...........................................................................22

*Smith v. Berg*,
247 F.3d 532 (3d Cir. 2001).............................................................................22

*Southward v. Elizabeth Bd. of Educ.*,
2017 WL 4392038 (D.N.J. Oct. 2, 2017)................................................................21

*Standard Chlorine of Delaware, Inc. v. Sinibaldi*,
821 F. Supp. 232 (D. Del. 1992)........................................................................24

*State v. Ball*,
141 N.J. 142, 661 A.2d 251 (N.J. 1995) ................................................................20

*State v. Cagno*,
211 N.J. 488, 49 A.3d 388 (N.J. 2012) .............................................................20, 21

*Tierney & Partners, Inc. v. Rockman*,
274 F. Supp. 2d 693 (E.D. Pa. 2003) ...................................................................17

*Tonkinson v. Byrd*,
2018 WL 1919829 (D.N.J. Apr. 24, 2018) ...............................................................28

*Town of Kearny v. Hudson Meadows Urban Renewal Corp.*,
  829 F.2d 1263 (3d Cir. 1987)................................................................19

*Trans USA Prods. v. Howard Berger Co.*,
  2008 WL 3154753 (D.N.J. Aug. 4, 2008) .............................................34

*U.S. v. Cannistraro*,
  800 F. Supp. 30 (D.N.J. 1992) ........................................................14, 15

*U.S. v. Maze*,
  414 U.S. 395, 94 S.Ct. 645, 38 L.Ed.2d 603 (1974)............................17

*United Nat. Ins. Co. v. Equip. Ins. Managers, Inc.*,
  1995 WL 631709 (E.D. Pa. Oct. 27, 1995)...........................................23

*United States v. Lane Labs-USA, Inc.*,
  324 F. Supp. 2d 547 (D.N.J. 2004) ........................................................1

*United States v. Tiller*,
  302 F.3d 98 (3d Cir. 2002)...................................................................15

*Univ. of Tex. Sw. Med. Ctr. v. Nassar*,
  570 U.S. 338, 133 S.Ct. 2517, 186 L.Ed.2d 503 (2013)......................19

*Van v. Borough of N. Haledon*,
  2009 WL 1811727 (D.N.J. June 22, 2009) ...........................................33

*Victory Int'l v. Perry Ellis Int'l*,
  2008 WL 65177 (D.N.J. Jan. 2, 2008) ....................................................5

*Walden v. Fiore*,
  571 U.S. 277, 134 S.Ct. 1115, 188 L.Ed.2d 12 (2014)..........................5

*Walters v. McMahen*,
  684 F.3d 435 (4th Cir. 2012) ...............................................................19

*Westmont Dev. Grp., LLC v. Twp. of Haddon*,
  625 F. Supp. 2d 178 (D.N.J. 2009) .......................................................32

*Ziglar v. Abbasi*,
  137 S. Ct. 1843, 198 L. Ed. 2d 290 (2017)...........................................29

*Zodda v. Nat'l Union Fire Ins. Co.*,
  2015 WL 926221 (D.N.J. Mar. 4, 2015).................................................24

**Statutes**

18 U.S.C. § 2 ..................................................................................................................18

18 U.S.C. §§ 1341 & 1343 ...................................................................................13, 18

18 U.S.C. § 1961(1) .......................................................................................................18

18 U.S.C. § 1961(5) .......................................................................................................15

18 U.S.C. § 1962 .....................................................................................................18, 19

18 U.S.C. § 1962(c) ................................................................................................13, 23

18 U.S.C. § 1964(c) ................................................................................................18, 19

18 U.S.C. § 1965 ........................................................................................................8, 9

18 U.S.C. § 1965(a) .........................................................................................................8

28 U.S.C. § 1332 .............................................................................................................4

28 U.S.C. § 1391(a) .........................................................................................................8

28 U.S.C. § 1391(b)(2) ................................................................................................8, 9

28 U.S.C. § 1391(b)(3) ................................................................................................8, 9

N.J.S.A. 2C:41–1(a)(1), (2) ..........................................................................................21

N.J.S.A. 2C:41–2(c) ......................................................................................................20

**Other Authorities**

Fed. R. Civ. P. 4(k) .........................................................................................................4

Fed. R. Civ. P. 9(b) ...............................................................................................passim

Fed. R. Civ. P. 8(a) ................................................................................................22, 29

Fed. R. Civ. P. Rule 11 ..................................................................................................1

Fed. R. Civ. P. 12(b)(2) ..................................................................................................6

Fed. R. Civ. P. 12(b)(3) ..................................................................................................9

Fed. R. Civ. P. 12(b)(6) ................................................................................................12

Defendants Sahily Paoline ("Paoline"), Steven L. Hadlock ("Hadlock") and Blaine Smith ("Smith") (collectively, the "Moving Defendants"), by and through their undersigned counsel, submit this Memorandum of Law in support of their Motion to Dismiss the Complaint (the "Complaint") of plaintiffs Roche Diagnostics Corp. ("Roach Diagnostics") and Roche Diabetes Care, Inc. ("Roche Diabetes") (collectively, the "Plaintiffs" or "Roche"), with prejudice in its entirety pursuant to Federal Rules of Civil Procedure ("FRCP") 8(a), 9(b) and 12(b).[1]

## PRELIMINARY STATEMENT

Plaintiffs' Complaint fails to name its own business partners, who may have violated their agreement with it, and, instead, fabricates various claims in a baseless attempt to hold corporate employees of a bankrupt entity with whom it had no contractual relationship to some form of liability. Plaintiffs have ignored their potential causes of action against other parties, and, without a legal justification to do so, chosen to sue the individual employees, of another corporate entity in hopes of holding someone—anyone—accountable for Roche's concocted "brazen scheme" to defraud them.[2]

---

[1] For the purposes of this Motion, the Moving Defendants must accept the allegations the Complaint as time. However, if compelled to respond, they would deny the allegations, and the Moving Defendants believe this Complaint to be so frivolous that they have served notice pursuant to FRCP Rule 11 upon the Plaintiff as a result of this Complaint.

[2] Notably, in another action that was filed in this District, *Jeanine Prescott, et al. v. CVS Health Corporation, et al.*, 3:17-cv-13066-BRM-LHG, Roche Diagnostics was alleged to be a participant in a nationwide RICO scheme with other manufactures and pharmacy benefit managers to fix prices for diabetic test strips and other diabetic pharmaceuticals to the detriment of the approximately 30 million Americans who suffer from diabetes. *Prescott*, 3:17-cv-13066, Dkt. No. 1. The *Prescott* matter was voluntarily dismissed and closed on April 25, 2019. As this Court has repeatedly held, a party cannot retain the ill-gotten gains resulting from their own illegal conduct. *See, e.g., United States v. Lane Labs-USA, Inc.*, 324 F. Supp. 2d 547, 576 (D.N.J. 2004), *aff'd*, 427 F.3d 219 (3d Cir. 2005), and *aff'd*, 427 F.3d 219 (3d Cir. 2005) (citing *SEC v. Hughes Capital Corp.*, 917 F.Supp. 1080, 1085 (D.N.J. 1996)).

In fact, Plaintiffs have neglected to allege actual conduct or actions taken by any single defendant that caused damage.  The Complaint is replete with vague accusations formulated in conclusory statements pointed, generally, at the "Defendants," and never actually articulates any specific conduct engaged in by any individual defendant.  As a result of this shoddy and misguided pleading, the Complaint suffers from multiple fatal defects that mandate its dismissal with prejudice.

In particular, without any allegation of specific conduct by any Moving Defendant, Plaintiffs have failed to establish that the Moving Defendants have purposefully availed themselves of the jurisdiction of this state, and, as such, this Court cannot exercise personal jurisdiction over the non-resident Moving Defendants.  Further, Roche cannot demonstrate that substantial events involving Moving Defendants occurred in New Jersey, and, for this reason alone, if any of the venue is also improper in the District of New Jersey.  Finally, Plaintiffs have failed to state a claim that gives rise to any cause of action against any Moving Defendant.

Accordingly, Roche's ill-concieved and frivolous Complaint must be dismissed with prejudice.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

Roche manufactures blood glucose test strips for diabetes patients.  *See* Compl. at ¶ 1. Significantly, Roche manufactures the *exact same* diabetic blood glucose test strips, but sells them in different packaging, distribution channels, and to patients with different insurance.  *Id.* at ¶¶ 41-42.  These same diabetic test strips at issue are referred to in two different ways: Retail Strips, intended for general retail sale; and NFR ("not for retail sale") or DME Strips, intended for sale by providers of durable medical equipment.  *Id.* at ¶¶ 42-44.  Roche sells Retail Strips to wholesalers ("Retail Wholesalers") , who sell it to retail pharmacies at various prices.  *Id.* at ¶ 45. According to Plaintiffs, patients with Pharmacy Benefit Plans—insurance plans that cover the

strips—do the "vast majority" of Retail Strip purchases.  *Id.* at ¶ 44.  However, DME Strips are primarily sold to mail-order distributors.  *Id.* at ¶ 46.  The DME distributors are contractually obligated "to sell only to patients with DME insurance," and Roche offers no rebates on them.  *Id.* at ¶¶ 44 and 46.  Roche never had a contract with nor sold any of these items directly to Alliance Medical Holdings, LLC, d/b/a Alliance Health, and its corporate predecessors, subsidiaries, and affiliates (collectively, "Alliance"), or the Moving Defendants.

Nonetheless, without any basis in fact, Plaintiffs allege these products are different – they are not – and further claim that Roche prominently marks all its DME Strip-packaging as "Not for Sale in Retail Outlets" and "Exclusively for Mail Order Use," and alleges that these warnings were not contained in the Retail Strips packaging.  Id. at ¶¶ 48 and 51.   As a result of this fiction, Plaintiffs now assert a number of causes of action all revolving around Alliance's purported business practice of purchasing DME Strips on the secondary market and allegedly selling them to patients in Alliance's network of retail pharmacies.  Id. at ¶¶ 354-427.

Plaintiffs make-up a fraud claim by saying there was some "large network of companies" out to defraud them. *Id.* at ¶¶ 2, 54.  Roche never alleges any facts against the Moving Defendants, only general allegations about Alliance's lawful purchases from third-parties as well as the lawful submission of insurance claims to pharmacy benefit managers ("PBMs").  *Id.* at  ¶ 69 and 77.  Absent from the Complaint, however, are specific factual allegations of any purportedly illegal or fraudulent conduct by the Moving Defendants.  However, Plaintiffs baselessly "throw the kitchen sink" in eight claims against Defendants: federal and New Jersey RICO; conspiracy to violate federal and New Jersey RICO; common law fraud (with aiding and abetting fraud and conspiracy to commit fraud); unjust enrichment; negligent misrepresentation; and tortious interference with prospective business relation.  *Id.* at ¶¶ 354-427.

## LEGAL ARGUMENT

## POINT I.

## PLAINTIFFS FAILED TO ARTICULATE A BASIS FOR PERSONAL JURISDICTION.

Plaintiffs make no legitimate allegation as to why the Moving Defendants should be sued in a New Jersey court, but baldly assert that this Court has personal jurisdiction over the Moving Defendants, despite the Complaint stating each is a resident of Utah.  As a result, this Court cannot exercise personal jurisdiction over the Moving Defendants, and the Complaint must be dimissed.

A federal district court may exercise jurisdiction over a non-resident defendant to the extent permitted by the law of the state where it sits.  28 U.S.C. § 1332; see O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 316 (3d Cir. 2007); Fed. R. Civ. P. 4(k).  Plaintiff bears burden of proving that personal jurisdiction is proper. IMO Indus*., Inc. v. Kiekert AG*, 155 F.3d 254 (3d Cir. 1998). However, Plaintiffs have failed to demonstrate how this Court may exercise either general or specific jurisdiction over the Moving Defendants.

General jurisdiction requires a showing that a defendant "engaged in 'continuous and systemic' contacts with the forum state" that are unrelated to the subject matter of the lawsuit. Mellon Bank (East) PSFS, N.A. v. DiVeronica Bros., Inc., 983 F.2d 551, 554 (3d Cir. 1992); Database Amer., Inc. v. Bellsouth Advertising & Pub.  Corp., 825 F. Supp. 1195, 1209 (D.N.J. 1993); see also Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).  The Complaint is devoid of any claim that the Moving Defendants had contact with New Jersey outside the allegations of the litigation, thus, preventing an exercise of general jurisdiction.  See Database Amer., 825 F. Supp. at 1209.  Moreover, the Supreme Court has applied general jurisdiction only to non-resident corporate defendants, and not to non-resident individual defendants.  See Goodyear Dunlop Tires Operations S.A. v. Brown, 564 U.S. 915, 924, 131 S.Ct. 2846, 180 L.Ed.2d 796 (2011).

4

Similarly, specific jurisdiction requires evidence demonstrating that "the cause of action arose specifically from defendant's particular activities within the forum state." Mellon Bank (East), 983 F.2d at 554. "Because the existence of specific jurisdiction depends on a link between the defendant's activity and the resulting harm, specific jurisdiction is necessarily claim—and defendant—specific." Rehrer v. Atiyeh, 2015 WL 5680104, at *2 (D.N.J. Sep. 25, 2015) (citing *Arlandson v. Hartz Mountain Corp.*, 792 F. Supp. 2d 691, 698 (D.N.J. 2011)); *see also Walden v. Fiore*, 571 U.S. 277, 284-85, 289, 134 S.Ct. 1115, 188 L.Ed.2d 12 (2014). When there are multiple defendants, a plaintiff must set out each individual defendant's contact with the forum state. *See Rush v. Savchuk*, 444 U.S. 320, 332, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980). Accordingly, the focus in the specific jurisdiction analysis must be on each Defendant's conduct, and not the conduct of the Plaintiffs or unnamed third parties.

The Complaint fails to make any specific allegation that the Moving Defendants purposefully availed themselves of or directed activity at New Jersey. Plaintiffs' theory seems to be that, since the Moving Defendants worked for Alliance, they have engaged in the same conduct as Alliance, a corporate entity. However, "jurisdiction over an employee does not automatically follow from jurisdiction over the corporation which employs him." Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 781 n.13, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984); Victory Int'l v. Perry Ellis Int'l, 2008 WL 65177, at *6 (D.N.J. Jan. 2, 2008). "Each defendant's contacts with the forum State must be assessed individually." Id. (citing Rush, 444 U.S. at 332). "[A]bsent allegations that the corporate shield is a sham, jurisdiction over the corporation does not subject officers, directors and shareholders of the corporation to personal jurisdiction." Educ. Testing Serv. v. Katzman, 631 F. Supp. 550, 558 n.10 (D.N.J. 1986) (quotation and citation omitted). In fact, Plaintiffs feeble

attempt to connect Alliance to New Jersey is through the unnamed third-parties it should be suing, and there is no connection to the Moving Defendants in any capacity.[3]

Plaintiffs' (and their exact same counsel) proposed theory of personal jurisdiction was recently rejected by a federal court in a near-mirror image case,  Roche Diagnostics Corp. v. Binson's  Hosp. Supplies, Inc., 2017 WL 4123050, at *5-7 (S.D. Ind. Sep. 18, 2017).  In that case, Roche Diagnostics, brought suit in its home state of Indiana against various non-resident corporations and individual employees, alleging, essentially, the same claims regarding diabetic test strips.  The Indiana federal court concluded that it did not have personal jurisdiction over non-resident corporate and individual defendants, noting that Roche Diagnostics failed to "allege[] any direct contacts with Indiana" for the defendants.[4] Id. at *6.  The court specifically rejected Roche's argument (the same one here) that the defendants "had sufficient contacts with Indiana because they participated in a fraudulent scheme to harm an Indiana company."  Id.  Instead, the court held that "[t]he mere fact that [a] defendant's conduct affected plaintiffs with connection to the forum State does not suffice to authorize jurisdiction."  Id. (quotation omitted).

The court further held that it lacked jurisdiction over the individual defendants because Roche improperly attempted to impute the actions of the corporate entities to the individual employees.  Id. at *7.  Roche needed to allege that the individual employees "have sufficient contacts with Indiana in their personal capacities for this Court to have personal jurisdiction over them."  Id. at *7 (emphasis added).  The court distinguished the individuals' "actions on behalf of

---

[3] The third-party diverters and distributors are the real parties in interest at least as they relate to the purported claims made by Plaintiffs and test strips sold in the secondary market.  It also highlights how all of Plaintiffs' claims are barred by the first sale doctrine as discussed below.

[4] Not all defendants moved to dismiss for lack of personal jurisdiction under FRCP 12(b)(2), but the court granted the motion to dismiss for each defendant that filed a motion on jurisdictional grounds.

[defendant corporations] in their official capacities," including "participat[ing] in the development and scheme to divert the sale of Roche's DME strips," from "any wrongful conduct by [individual defendants] in their personal capacities." *Id.* The former was insufficient to establish personal jurisdiction, and Roche failed to make any allegations of specific conduct by the individuals in their personal capacities. *Id.* Thus, the court dismissed the claims against the individual defendants for lack of personal jurisdiction. *Id.*

In the case at bar, Plaintiffs have made no allegation that the Moving Defendants personally availed themselves of the benefits and protections of New Jersey's laws (rather than their corporate employer and its subsidiaries), and the Moving Defendants could not reasonably have expected to be hauled into a New Jersey court in their personal capacities. Therefore, the Complaint must be dismissed pursuant to FRCP12(b)(2).

## POINT II.

### THIS COURT IS NOT A PROPER VENUE FOR THIS CASE.

Plaintiffs claim that a substantial part of events occurred in New Jersey, but do not identify a single event of this fraudulent scheme—let alone a substantial portion of events—actually occurring within the borders of New Jersey.

The purpose of the venue provision is "to protect the defendant against the risk that a plaintiff will select an unfair or inconvenient place of trial." Leroy v. Great W. United Corp., 443 U.S. 173, 183-84, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979). Thus, as the Third Circuit explained, "the venue provision 'favors the defendant in a venue dispute by requiring that the events or omissions supporting a claim be substantial.'" Bockman v. First Am. Mktg. Corp., 459 F. App'x 157, 161 (3d Cir. 2012). (quoting Cottman Transmission Sys. v. Martino, 36 F.3d 291, 294-95 (3d Cir. 1994)). Allowing this matter to proceed in New Jersey is fundamentally unfair to the Moving Defendants because they do no reside in the state and have no other connections to the state.

In conclusory fashion, Plaintiffs assert that venue is appropriate in the District of New Jersey pursuant to 28 U.S.C. § 1391(a).  Compl. at ¶ 26.  However, venue must be proper for each claim asserted in a complaint.  Lorven Techs., Inc. v. Insight Techs., Inc., 2017 WL 2670971, at *3 (D.N.J. June 21, 2017).  Plaintiffs appear to be resting their venue argument on 28 U.S.C. § 1391(b)(2), by alleging "a substantial part of the events or omissions giving rise to the claim occurred in this district," or 28 U.S.C. § 1391(b)(3), by alleging "one or more of the Defendants is subject to personal jurisdiction in this district."  Id. Plaintiffs also allege that venue is proper under the RICO statute, 18 U.S.C. § 1965. See Compl. at  ¶ 26.  However, in determining venue for RICO claims, the Third Circuit has held that "venue over RICO claims is controlled by both 18 U.S.C. § 1965(a) and the general venue provisions contained in 28 U.S.C. § 1391."  Fiorani v. Chrysler Grp., 510 F. App'x 109, 111 (3d Cir. 2013).

"The test for determining venue is not the defendant's 'contacts' with a particular district, but rather the location of those 'events or omissions giving rise to the claim.'"  Cottman, 36 F.3d at 294.  Events or omissions that have only "some tangential connection" with the dispute are not sufficient to support venue under § 1391(b)(2).  Id. at 294.

Here, despite bold yet baseless language, Plaintiffs actually make no factual allegations that anything the Moving Defendants did, specifically, happened in New Jersey.  For venue purposes, absent specific allegations to the contrary, any alleged misrepresentation is deemed to have occurred in the district where the statement was made—even if the statement concerned distributing or selling a product into another state.  C.O. Truxton, Inc. v.  Blue Caribe, Inc., 2014 WL 6883145, at *4-7 (D.N.J. Dec. 5, 2014); Metro.  Life Ins. Co. v. Bank One, N.A., 2012 WL 4464026, at *6 (D.N.J. Sep. 25, 2012).

Here, the Complaint does not even allege a single event or omission occurred in New Jersey.  Moreover, the Complaint acknowledges that Hadlock, Smith, and Paoline are each residents of Utah.  Compl. at ¶¶ 10-11, 14.  Plaintiffs do not allege that any of the Moving Defendants performed any acts in New Jersey.  The Complaint contains no allegation that the Moving Defendants were ever present in New Jersey, let alone in New Jersey when the alleged fraudulent statements were made, and no in-person meeting is alleged to have occurred in New Jersey.  See CLP Packaging Sols. v. Sports Pouch Bev. Co., 2008 WL 2095774, at *3 (D.N.J. May 15, 2008).  To the contrary, Alliance was headquartered in Utah and, absent evidence otherwise, misrepresentations are presumed to have occurred where business is principally transacted.  See C.O. Truxton, 2014 WL 6883145, at *4-7.  The Complaint does not even allege a single event or omission occurred in New Jersey.

As a result, venue is not proper in this District under 28 U.S.C. § 1391(b)(2) or 18 U.S.C § 1965, because Plaintiffs have failed to allege any of the Moving Defendants resides, has agents, or transacts affairs in the District.  Venue is also not proper under 28 U.S.C. § 1391(b)(3), since no defendant is subject to the Court's personal jurisdiction.  Section 1391(b) (3) is only applicable when there is personal jurisdiction over at least one defendant and also "there is no district in which an action may otherwise be brought."  Plaintiffs, however, have not alleged that no other district could serve as a proper venue and there is no reason to believe that venue would be improper in every single other federal district.  Thus, this District is an improper venue under the statute, and this Court must dismiss the Complaint pursuant to FRCP 12(b)(3).

**POINT III.**

**PLAINTIFFS' CLAIM FOR LOST PROFITS
IS BARRED BY THE FIRST SALE DOCTRINE.**

Plaintiffs do not have a cognizable basis to recover lost profit damages, or any other claim for that matter, because they are barred by the "first sale" doctrine.

The "first sale" doctrine states that the initial, authorized sale of a product extinguishes a property owner's right to control who subsequently buys, sells, or uses the product. *Iberia Foods Corp. v. Romeo*, 150 F.3d 298, 301 n.4 (3d Cir. 1998); J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 25:41 (4th ed. 1999); *see Impression Prod., Inc. v. Lexmark Int'l, Inc.*, 137 S. Ct. 1523, 1527, 198 L.Ed.2d 1 (2017); *Quality King Distribs. v. L'anza Research Int'l*, 523 U.S. 135, 152, 118 S.Ct. 1125, 140 L.Ed.2d 254 (1998); *Prestonettes, Inc. v. Coty*, 264 U.S. 359, 366-68, 44 S.Ct. 350, 68 L.Ed. 731 (1924).[5]

A property owner's ability—such as Plaintiffs'—to control the downstream distribution of a product is "exhausted" after its first sale placing the product into commerce. *Osawa & Co. v. B & H Photo*, 589 F. Supp. 1163, 1174 (S.D.N.Y. 1984); see McDonald's Corp. v. Shop at Home, Inc., 82 F. Supp. 2d 801, 811 (M.D. Tenn. 2000). As a result, all subsequent purchasers are free to advertise, display and resell the product as they wish so long as the reseller does not alter the product in a material way or misrepresent themselves to downstream customers as authorized

---

[5] Although regularly raised as a defense in matters pertaining to intellectual property rights, the application of the "first sale" rule is by no means limited to any specific type of property. The exhaustion doctrine is based on fundamental, common-law property principles against restraints on the alienation of chattels. *Accord Impression Prod.*, 137 S. Ct. at 1534 ("[W]hen an item passes into commerce, it should not be shaded by a legal cloud on title as it moves through the marketplace."); *Sebastian Int'l, Inc. v. Consumer Contacts (PTY) Ltd.*, 847 F.2d 1093, 1096 (3d Cir. 1988) ("The first sale rule is statutory, but finds its origins in the common law aversion to limiting the alienation of personal property."); *see Kirtsaeng v. John Wiley & Sons, Inc.*, 568 U.S. 519, 538-39, 133 S.Ct. 1351, 185 L.Ed.2d 392 (2013) (noting that exhaustion has an "impeccable historic pedigree" that can be traced all the way back to Lord Coke and English common law).

agents of the prior owner.  Bowman v. Monsanto Co., 569 U.S. 278, 283, 133 S.Ct. 1761, 185 L.Ed.2d 931 (2013); Sebastian Int'l Inc. v. Longs Drug Stores Corp., 53 F.3d 1073, 1076 (9th Cir. 1995).  Importantly, this includes reselling a product in direct competition with the prior owner and/or seller.  See Sebastian Int'l, 53 F.3d at 1076; Osawa, 589 F. Supp. at 1174.

Here, all of Plaintiffs' claims are based entirely on their attempt to exert downstream control over the sale of DME Strips to patients.  See Compl. at ¶ 43.  Plaintiffs readily admit that they are trying to exert and apply a tremendous amount of control over how and where DME Strips can be purchased, by claiming that they only sell DME Strips to mail-order distributors and contractually prohibit those mail-order distributors from reselling DME Strips to anyone except DME Beneficiaries.  Id. at ¶¶ 43-44.  Plaintiffs have absolutely no legal right to control the downstream sale of DME Strips (or Retail Strips for that matter); they exhausted that right when they sold the diabetic test strips to their distributors—a lawful first sale.  *See id.* at ¶¶ 43-46. *Osawa*, 589 F. Supp. at 1174. Plaintiffs lose that ability once those sales are made to the mail-order distributors, and their intent is wholly and completely irrelevant.  As such, Alliance did not require Roche's permission or consent to sell DME Strips in its pharmacies.  *McDonald's*, 82 F. Supp. 2d at 811 ("It does not matter that the owner of the trademark objects to the use of its mark, as long as one approved sale has already occurred.").  Alliance was also not bound by the contractual prohibitions that Roche imposed on its DME Strip-distributors.  *Id.* at 817; *Matrix Essentials*, 988 F.2d at 590-93. Further, Plaintiffs' efforts to suggest that their products can only be sold in certain channels through the use of packaging labels that the DME Strips were for "Not for Sale in Retail Outlets" or "Exclusively for Mail Order Use" are of no legal consequence.  Compl. at ¶ 48; *see Sebastian Int'l*, 53 F.3d at 1077 (holding that the manufacturer or producer of a product cannot avoid the "first sale" rule and control downstream distribution of its products

simply by placing a statement on the container that the product was intended to be sold a specific way); *Matrix*, 988 F.2d at 589-93 (applying the "first sale" rule to products resold that the manufacturer marked as "Sold Only in Professional Salons").

For these reasons, the "first sale" rule precludes all of Plaintiffs' claims since it "exhausted" any right to downstream control over the sale of DME Strips after placing them into the stream of commerce.

## POINT IV.

## THE COMPLAINT FAILS TO STATE A SINGLE CLAIM.

Plaintiffs' eight claims fail to state a claim where relief may be granted.  See Compl. at ¶¶ 354-427.  As a result, the Complaint must be dismissed pursuant to FRCP 12(b)(6).

In ruling on a motion to dismiss pursuant to FRCP 12(b)(6), the court must accept all factual allegations as true and construe the complaint in the light most favorable to the plaintiff. Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).  However, a court need not accept "bald assertions."  Reed v. Scheffler, 218 F. Supp. 3d 275, 279 (D.N.J. 2016).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

A plaintiff who alleges fraud must also meet a heightened pleading standard.  Frederico v. Home Depot, 507 F.3d 188, 200-03 (3d. Cir. 2007).  Under this "stringent standard," a plaintiff must set forth "the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the 'precise misconduct with which [it is] charged."  *Id.* at 200.  As the Third Circuit has explained, "the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Id.* "Simply referring to a series of public statements and then alleging, in a general and conclusory manner, that those disclosures were false or misleading is insufficient [to meet the

heightened pleading standard]." *GSC Partners CDO Fund v. Washington*, 368 F.3d 228, 240 (3d Cir. 2004) (quoting *In re Party City Sec. Litig.,* 147 F.Supp.2d 282, 300 (D.N.J.2001)). Here, Plaintiffs have failed to make any showing, let alone the requisite showing.

     **A.    Roche has no Federal or New Jersey RICO claim.**

          *1.    Roche's federal RICO claims are baseless.*

Roche falsely states that it has a civil RICO claim under 18 U.S.C. § 1962(c), making it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." See Compl. at ¶¶ 354-68. Roche alleges the Moving Defendants— along with other individually named defendants, collectively classified in the Complaint as the "RICO Defendants"—engaged in a mail and wire fraud scheme through Alliance-related entities causing Roche to "wrongfully pay over $87 million in rebates." Compl. at ¶¶ 3-6; 349-66. Roche also alleged this "fraudulent scheme" caused it to lose sales, resulting in lost profits. Id. at ¶¶ 6 & 352.

A prima facie RICO claim requires allegations demonstrating four elements: (1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity. See Sedima, S.P.R.L. v. Imrex co., Inc., 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985); Lum v. Bank of Am., 361 F.3d 217, 223 (3d Cir. 2004), abrogated on other grounds by Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007), as recognized in In re Lipitor Antitrust Litig., 868 F.3d 231, 249 (3d Cir. 2017). "Racketeering activity" is "any act which is indictable" under those offenses specifically enumerated within RICO statute, which includes violations of federal mail and wire fraud statutes. Id. at § 1961(1) (listing 18 U.S.C. §§ 1341 & 1343); see Annulli v. Panikkar, 200 F.3d 189, 200 (3d Cir. 1999) ("RICO's list of acts constituting predicate acts of racketeering activity is exhaustive."), overruled on other grounds by Rotella v. Wood, 528 U.S. 549 (2000).

Importantly, each element of a RICO claim must be established as to each individual defendant.  See Craig Outdoor Advert., Inc. v. Viacom Outdoor, Inc., 528 F.3d 1001, 1027-28 (8th Cir. 2008); Naporano Iron & Metal Co. v. American Crane Corp., 79 F. Supp. 2d 494, 511 (D.N.J. 1999); U.S. v. Cannistraro, 800 F. Supp. 30, 73 (D.N.J. 1992). "Without a predicate act, [a] plaintiff cannot possibly succeed on its federal and state RICO claims."  Ideal Dairy Farms, 90 F.3d at 747; Korean Cmty. Church of New Jersey Methodist v. Cho, 2012 WL 1224682, at *3 (D.N.J. Apr. 11, 2012) (same).

Moreover, a RICO plaintiff must plead allegations of mail or wire fraud with specificity. See Lum, 361 F.3d at 224 (citing Fed. R. Civ. P. 9(b)); see also Kolar v. Preferred Real Estate Investments, Inc., 361 Fed. App'x. 354, 363 (3d Cir. 2010). Specificity is met by a RICO plaintiff "injecting precision and some measure of substantiation into [its] allegations of fraud," typically by, pleading the date, place, time, speaker and content of the allegedly fraudulent communication. Lum, 361 F.3d at 224.  Significantly, "[b]are allegations … are insufficient to state a claim, especially given that a RICO predicate act of mail or wire fraud must be pleaded with even greater particularity."  Miller v. Burt, ___ Fed. App'x. ___, 2019 WL 1219977, at *3 (3d Cir. Mar. 14, 2019).

For the reasons set forth below, Roche has failed to plead facts under the heightened pleading standard to support a fraud-based RICO claim against any of the Moving Defendants.

Roche has Failed to Allege any "Racketeering Activity" under RICO.

Roche fails to plead specific facts that the Moving Defendants engaged in any "racketeering activity"—that is, Plaintiffs have failed to demonstrate that the Moving Defendants committed violations of the predicate offenses enumerated in § 18 U.S.C. 1961.

A RICO claim must be based on actual racketeering conduct.  Doug Grant, Inc. v. Greate Bay Casino Corp., 232 F.3d 173, 184 (3d Cir. 2000); Ideal Dairy Farms, Inc. v. John Labatt, Ltd., 90 F.3d 737, 747 (3d Cir. 1996).  As noted above, any RICO complaint requires allegations that set forth with specificity that each individual defendant committed two or more of the alleged predicate acts within a ten-year-period of one another.  18 U.S.C. § 1961(5); see Cannistraro, 800 F. Supp. at 73; Naporano, 79 F. Supp. at 511; see also Banks v. Wolk, 918 F.2d 418, 421 (3d Cir. 1990).

Roche bases its RICO claim on three types of alleged predicate acts: (1) violations of the federal mail statute; (2) violations of the federal wire statute, and (3) aiding and abetting those alleged violations.  Compl. at ¶¶ 360-62 (citing 18 U.S.C. §§ 1341 (federal mail fraud statute), 1343 (federal wire fraud statute) and 2 (federal aiding and abetting statute)).  Roche fails to allege specific facts in support of these conclusory allegations to show that each individual Moving Defendants engaged in "racketeering activity."

No Mail and Wire Fraud Exists.

The federal mail and wire statutes prohibit the use of the mail or wires to carry out a scheme or artifice to defraud.  See Lum, 361 F.3d at 223 (citing 18 U.S.C. §§ 1341 & 1343); see also Kann v. U.S., 323 U.S. 88, 95, 65 S.Ct. 148, 89 L.Ed. 88 (1944).  The elements of mail and wire fraud are (1) participation in a scheme to defraud; (2) with the specific intent to defraud; and (3) use of mails or interstate wires to further that scheme.  *Nat'l Sec. Sys. v. Iola*, 700 F.3d 65, 105 (3d Cir. 2012); *see Genty v. Resolution Trust Corp.*, 937 F.2d 899, 908 (3d Cir. 1991).  The specific intent for mail and wire fraud is satisfied when the defendant is alleged to have "knowledge of the illicit objectives of the fraudulent scheme and willfully intend that those larger objectives be achieved." *Accord United States v. Tiller*, 302 F.3d 98, 101 (3d Cir. 2002) *and Genty*, 937 F.2d at 908.

Roche describes Alliance's purported scheme to defraud as obtaining NFR blood glucose test strips, and dispensing the test strips to beneficiaries of insurance plans. Compl. at ¶ 3. However, Roche fails to allege specific facts in the Complaint that any of the Moving Defendants directly committed any of these acts in the Complaint. Roche impermissibly supports these broadly worded and legalese-filled claims with conclusory allegations about the Moving Defendants so-called "knew of and implemented" Alliance's alleged scheme. Id. at ¶¶ 204-11.

Equally missing from the Complaint are specific facts that the Moving Defendants used the mail or wires to further the alleged scheme. Nat'l Sec. Sys. v. Iola, 700 F.3d at 105. The Complaint has allegations referencing Hadlock, Paoline and Smith's use of emails. All are internal emails between the Moving Defendants and other Alliance employees or the employees of alleged Alliance-related entities discussing questions about the sale of NFR strips and/or the fact that PBMs were cancelling contracts. Many simply recount that Hadlock, Paoline and Smith received emails.[6] *See, e.g.*, *Id.* at ¶¶ 93, 102, 124, 137, 140, 161, 163, 191, 226 & 266.

Critically, ***none*** of these allegations are pled with any sort of particularity regarding the purpose of the referenced wires within Alliance's alleged scheme. *Bonavitacola Elec. Contractor, Inc. v. Boro Developers, Inc.*, 87 F. App'x 227, 231 (3d Cir. 2003) (stating *Rule* 9(b) mandates that a RICO plaintiff "must identify the purpose of the mailing within the defendant's fraudulent scheme" (citation and internal quotation marks omitted)). Roche also does not specify how these

---

[6] In addition to referencing emails, Roche alleges that Paoline was a licensed New Jersey pharmacist who filled a prescription. Compl. at ¶ 211. The response is *so what* to this conclusory allegation since it adds nothing to the heightened pleading standard applied to fraud-based RICO claims or includes the date, time or even how the NFR strips were "dispensed." *See Lum*, 361 F.3d at 224 (citation and internal quotation marks omitted). Moreover, between 2014 and 2017 alone, Roche alleges that Alliance sold "*over 10 million*" diabetic test strips. Compl. at ¶ 29 (emphasis in original).

wires furthered the alleged scheme.  *See Tierney & Partners, Inc. v. Rockman*, 274 F. Supp. 2d 693, 698 (E.D. Pa. 2003).

Moreover, the emails referenced by Roche are innocent.  An "innocent" email must further an essential part of the alleged scheme to be mail or wire fraud.  Schmuck v. U.S., 489 U.S. 705, 710-11, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1954) (stating the use of a communication must be "incident to an essential part of the scheme, or a step in [the] plot." (citation and internal quotation marks omitted)).  "[It] must be for the purpose of executing the scheme, as the statute requires." U.S. v. Maze, 414 U.S. 395, 400, 94 S.Ct. 645, 38 L.Ed.2d 603 (1974) (citation and internal quotation marks omitted).

Roche fails to allege specific facts as to how the Moving Defendants' use of wires or mail furthered the execution of an essential part of Alliance's purported scheme.  Many of the alleged emails involving Paoline and Hadlock specifically reference PBMs canceling contracts, the "NDC issue" and asking questions like "[w]here do pharmacists stand on a liability standpoint?"  See Compl. at ¶¶ 104, 124 & 141.  These communications would reveal the alleged scheme and, therefore, cannot form the basis of a RICO claim.  *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 204 (2d Cir. 2013); *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 119 (2d Cir. 2013) (quoting *Maze*, 414 U.S. at 403)).

Finally, Roche's RICO claim against the Moving Defendants is also deficient because it fails to allege specific facts demonstrating that the Moving Defendants used wires with the specific intent necessary for a mail or wire fraud violation.  The Complaint, generally, and again in conclusory fashion, alleges that "Defendants" had industry knowledge and were Alliance's operators and managers.  Compl. at ¶¶ 174-77 & 198.  Those allegations are insufficient to show

the Moving Defendants used the referenced wires willfully, and with actual knowledge of Alliance's alleged scheme to defraud.  Genty, 937 F.2d at 908.

Accordingly, Roche's RICO claims against the Moving Defendants must be dismissed with prejudice.

### i.      No Aiding and Abetting Exists

Aiding and abetting under 18 U.S.C. § 2 is not "racketeering activity" or one of the predicate acts enumerated by the RICO statute.  *See* 18 U.S.C. § 1961(1); *Annulli*, 200 F.3d at 200. Aiding and abetting is also not explicitly prohibited by the mail and wire fraud statutes.  *See* 18 U.S.C. §§ 1341 & 1343; *Rolo v. City Investing Co. Liquidating Tr.*, 155 F.3d 644, 657 (3d Cir. 1998) (concluding that the text of the underlying statute must explicitly prohibit the alleged conduct for it serve as a predicate offense under RICO).  In fact, the Third Circuit has expressly held that no private cause of action exists for aiding and abetting a RICO violation.  *See Rolo*, 155 F.3d at 657; *Pennsylvania Ass'n of Edwards Heirs v. Rightenour*, 235 F.3d 839, 841 (3d Cir. 2000). Simply stated, the Moving Defendants "cannot be held liable for aiding and abetting another's predicate acts."  *In re Am. Inv'rs Life Ins. Co. Annuity Mktg. & Sales Practices Litig.*, 2006 WL 1531152, at *12 (E.D. Pa. June 2, 2006).  Accordingly, Roche's RICO claim against the Moving Defendants—to the extent it is based on a theory of aiding and abetting—cannot be maintained, and, therefore, must be dismissed with prejudice.

### ii.      Roche Lacks Standing to Bring a RICO Claim.

Roche lacks standing to bring a RICO claim because it cannot demonstrate any injury "flowing" from the conduct alleged in the Complaint.  Standing exists only where a RICO plaintiff alleges an injury to "his [or her] business or property by reason of" a 18 U.S.C. § 1962 violation. Accord 18 U.S.C. § 1964(c); Anderson v. Ayling, 396 F.3d 265, 268-69 (3d Cir. 2005).  This requires that a RICO injury "flow" from the defendant committing the alleged predicate acts.

Sedima, 473 U.S. at 497. The alleged injury must be both factually and proximately caused by the defendant's 18 U.S.C § 1962 violations. See Hemi Grp., LLC v. City of New York, 559 U.S. 1, 9, 130 S.Ct. 983, 175 L.Ed.2d 943 (2010) (citing Holmes, 503 U.S. at 268); see also Anza, 547 U.S. at 461.

Factual cause means that the alleged injuries would not have occurred "but for" the defendant's alleged RICO violation. See Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 346-47, 133 S.Ct. 2517, 186 L.Ed.2d 503 (2013) (citing Restatement (First) of Torts § 431 cmt. a (1934)). The absence of factual causation is fatal to a RICO claim. *See, e.g.*, *Walters v. McMahen*, 684 F.3d 435, 444 (4th Cir. 2012); *McEvoy Travel Bureau, Inc. v. Heritage Travel, Inc.*, 904 F.2d 786, 794 (1st Cir. 1990). Proximate cause "requires some direct relation between the injury asserted and the injurious conduct alleged. A link that is too remote, purely contingent, or indirect is insufficient." *Hemi*, 559 U.S. at 9 (brackets, citations and internal quotation marks omitted)). There is no proximate causation if a RICO plaintiff's alleged injuries "could have resulted from factors other than [the defendant's] alleged acts of fraud." *Anza*, 547 U.S. at 459.

Here, Roche failed to allege specific facts showing that the Moving Defendants engaged in any predicate acts—that they used the mail or wires to directly engage in or further Alliance's alleged scheme. The failure to do so is fatal to Roche's standing to bring RICO claim because it cannot demonstrate any injury flowing from a predicate act. Sedima, 473 U.S. at 497; see also Town of Kearny v. Hudson Meadows Urban Renewal Corp., 829 F.2d 1263, 1268 (3d Cir. 1987).

Roche has also failed to plead specific facts that its alleged injuries were caused "by reason of" the conduct allegedly undertaken by the Moving Defendants. 18 U.S.C. 1964(c). Roche fails to allege specific facts showing it would not have paid rebates or sold retail strips to others but for" the Moving Defendants' alleged use of mails or wires or that the use of those mails and wires

by Defendants "led directly to [Roche's] injuries."  Anza, 547 U.S. at 461.  As noted above, the Moving Defendants are only alleged to have engaged in the circulation and discussion of internal emails with Alliance employees and/or employees of alleged Alliance-related entities concerning the sale of NFR strips and/or that PBMs were cancelling contracts.  *See* Compl. at ¶¶ 93, 102, 124, 137, 140, 161, 163, 191, 226 & 266.  Fatally missing from the Complaint is a specifically pled factual and legal nexus between Roche's injuries and the Moving Defendants' alleged conduct. *See Hemi*, 559 U.S. at 9.

Accordingly, Roche's federal RICO claim against the Moving Defendants must be dismissed with prejudice.

### 2.    *Roche does not have a New Jersey Racketeering Claim.*

Roche asserts an identical, fraud-based racketeering claim against the Moving Defendants under the New Jersey RICO statute ("NJRICO").  Compl. at ¶¶ 369-83.

N.J.S.A. 2C:41–2(c) makes it "unlawful for any person employed by or associated with any enterprise engaged in or activities of which affect trade or commerce to conduct or participate, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity . . . ."  NJRICO has five elements: (1) the enterprise existence; (2) the enterprise engaged in or its activities affected trade or commerce; (3) the defendant was employed by or associated with the enterprise; (4) the defendant participated in the conduct of the affairs of the enterprise; and (5) the defendant participated through a pattern of racketeering activity.  See Marina Dist. Dev. Co., LLC v. Ivey, 216 F. Supp. 3d 426, 436 (D.N.J. 2016).  NJRICO is modeled on and guided by the federal statute.  See State v. Cagno, 211 N.J. 488, 508, 49 A.3d 388 (N.J. 2012); see also State v. Ball, 141 N.J. 142, 156, 661 A.2d 251 (N.J. 1995); and see Cetel v. Kirwan Fin. Grp., Inc., 460 F.3d 494, 510 (3d Cir. 2006).

A fraud-based NJRICO claim is subject to the same heightened pleading requirements as its federal counterpart.  *See Galicki v. New Jersey*, 2016 WL 4950995, at *22 (D.N.J. Sept. 15, 2016) (citing Lum, 361 F.3d at 223); *Fimbel v. Fimbel Door Corp.*, 2014 WL 6992004, at *6 (D.N.J. Dec. 10, 2014)).  Therefore, a NJRICO plaintiff must also plead specific factual allegations establishing ***each*** element of its claim as to ***each*** defendant.  *See Southward v. Elizabeth Bd. of Educ.*, 2017 WL 4392038, at *13 (D.N.J. Oct. 2, 2017).  NJRICO also requires that the plaintiff allege specific facts that the defendant engaged in ***actual*** racketeering activity.  *See Cagno*, 409 N.J. Super. at 598.  "Racketeering activity" under NJRICO is any predicate act listed by the statute, as well any "equivalent crime" under the law of "any other jurisdiction."  N.J.S.A. 2C:41–1(a)(1), (2); *Fairfax Fin. Holdings Ltd. v. S.A.C. Capital Mgmt., LLC*, 450 N.J. Super. 1, 37 (App. Div. 2017).  Finally, NJRICO is subject to the same causation analysis as its federal counterpart: the alleged predicate acts by the defendant must be both the factual and proximate cause of the plaintiff's alleged injury.  *See Interchange State Bank v. Veglia*, 286 N.J. Super. 164, 178-81 (App. Div. 1995).  Here, Plaintiffs fail to allege a NJRICO claim against the Moving Defendants.

For the same reasons as described above, the same fatal flaws in Roche's RICO claim— no "racketeering activity" and no standing—dispatch its NJRICO claim.  Further, aiding and abetting cannot serve as the basis for liability on a NJRICO claim.  See Rightenour, 235 F.3d 841; Rolo, 155 F.3d at 657 (holding that no private right of action for aiding and abetting exists under RICO); see also Maxim Sewerage Corp. v. Monmouth Ridings, 273 N.J. Super. 84, 91 (Law. Div. 1993).  The Complaint simply fails to allege specific facts establishing that the Moving Defendants used mails or wires to directly engage in or further Alliance's alleged scheme, or that they held the requisite specific intent at the time the mails or wires were sent to commit a mail or wire fraud violation.  Roche also lacks standing to bring a NJRICO claim against the Moving Defendants.

There can be no injury caused "by reason of" a RICO violation (or even a RICO violation itself) without specific allegations demonstrating the commission of a predicate act or where there is a direct relation between the asserted injuries and the predicate acts alleged with respect to each Moving Defendants.

Finally, Roche's attempt to maintain a NJRICO claim based on purported allegations of insurance fraud is equally unavailing. There are no specific allegations in the Complaint that any Moving Defendant ever submitted or attempted to submit a reimbursement claim—let alone used the mail or wires in connection the submission or attempted submission of a reimbursement claim. Compl. at ¶ 376. Accordingly, Roche's NJRICO claim must be dismissed with prejudice.

### 3.    *Roche has no RICO or NJRICO Conspiracy Claim.*

To state a claim for RICO conspiracy, a plaintiff must show that the defendant (1) knew about and (2) agree to facilitate the operation of an enterprise through a pattern of racketeering activity. Salinas v. U.S., 522 U.S. 52, 66, 118 S.Ct. 469, 139 L.Ed.2d 352 (1997); Smith v. Berg, 247 F.3d 532, 538 (3d Cir. 2001). New Jersey has adopted the federal standard that governs RICO conspiracies. Mayo, Lynnch & Assoc., Inc. v Pollack, 351 N.J. Super. 486, 503 (App. Div. 2002) (citing Ball, 141 N.J. at 180).

RICO's agreement requirement is satisfied where the Complaint plausibly suggests a "meeting of the minds" between alleged conspirators to engage in conduct that would violate RICO. Great W. Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 179 (3d Cir. 2010); Banks v. Wolk, 918 F.2d 418, 421 (3d Cir. 1990). Moreover, a plaintiff must "set forth allegations that address the period of the conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose." *Shearin v. E.F. Hutton Group, Inc.*, 885 F.2d 1162, 1166 (3d Cir. 1989), *abrogated  on other grounds by Beck v. Prupis*, 529 U.S. 494 (2000); and FRCP 8(a)(2).

Importantly, "[e]mployees of a corporation acting within the scope of their employment cannot conspire with a corporation or with each other, as they are all considered one entity. Reese v. Horizon Blue Cross Blue Shield of New Jersey, 2008 WL 5188853, at *3 (D.N.J. Dec. 10, 2008); United Nat. Ins. Co. v. Equip. Ins. Managers, Inc., 1995 WL 631709, at *6 (E.D. Pa. Oct. 27, 1995).7  Roche alleges in support of its RICO and NJRICO conspiracy claims that each Moving Defendant "agreed and conspired to violate 18 U.S.C. § 1962(c)" and acted in further of Alliance's purported scheme. See Compl. at ¶¶ 387-88; see id. at ¶¶ 396-97.  Roche's statutory conspiracy claims are legally untenable against the Moving Defendants because all were Alliance employees at the time of the supposed alleged conspiracy.  Compl. at ¶¶ 10-11; Reese, 2008 WL 5188853, at *3; United Nat. Ins. Co., 1995 WL 631709, at *6.  Thus, Roche also cannot maintain viable RICO and NJRICO conspiracy claims on such conclusory and specious allegations.

Further, Roche does not allege facts in the Complaint—save for one conclusory allegation in Paragraph 387 that supposedly all the Defendants agreed to conspire—that there was ever any agreement by and between Paoline, Hadlock, Smith or any of the other Defendants to engage in RICO violations.  At best, Roche's allegations directed at the Moving Defendants state that they engaged in certain actions during their employment—almost all being "innocent" emails. Accordingly, Roche's RICO and NJRICO conspiracy claims must be dismissed with prejudice.

---

[7] It is also the case that a RICO conspiracy claim cannot stand on its own. *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1191 (3d Cir. 1993) ("Any claim under section 1962(d) based on a conspiracy to violate the other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient."); *see Eli Lilly & Co. v. Roussel Corp.*, 23 F. Supp. 2d 460, 497 (D.N.J. 1998) ("A conspiracy is not actionable absent an independent wrong.").  Roche's RICO and NJRICO claims must be dismissed if it fails to plead a substantive RICO offense against any of the Moving Defendants as is the case in the instant matter.

### 4. *Roche Has No Punitive Damages under RICO or NJRICO*

Roche seeks punitive damages as part of a general prayer for relief. *See* Compl. (Prayer for Relief). Punitive damages are not recoverable under RICO. *See Standard Chlorine of Delaware, Inc. v. Sinibaldi*, 821 F. Supp. 232, 252-53 (D. Del. 1992); *Moravian Dev. Corp. v. Dow Chem. Co.*, 651 F. Supp. 144, 149–50 (E.D.Pa. 1986); *Korman v. Trusthouse Forte PLC*, 1990 WL 83353, at *8 (E.D. Pa. June 15, 1990). Accordingly, Roche's punitive damages claims under RICO and NJRICO must be stricken.

### B. Plaintiffs Failed to Plead Any Claim Sounding in Fraud with the Requisite Specificity.

Count V of the Complaint purports to assert three theories of fraud as part of a single cause of action, but each theory—individually or combined—is wholly deficient and should be dismissed. Additionally, Plaintiffs' various fraud claims are replete with general allegations when specificity is required. *See Frederico*, 507 F.3d at 200. "When multiple defendants are involved the complaint must plead with particularity by specifying the allegations of fraud applying to each defendant." *Zodda v. Nat'l Union Fire Ins. Co.*, 2015 WL 926221, at *9 (D.N.J. Mar. 4, 2015). Accordingly, for the reasons set forth below, each of fraud theory rejected and Count V dismissed in its entirety.

### 1. *Plaintiffs failed to specifically plead their fraud claim with particularity.*

To state a claim for fraud in New Jersey, a plaintiff must allege (1) a material false representation; (2) made with defendant's knowledge of its falsity; (3) with the intention that the other party rely on the representation; (4) reasonable reliance on that representation by plaintiff; and (5) injury as a result of the reliance. *Frederico*, 507 F.3d at 200 (citing *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 610 (1997)). To meet the heightened pleading standard for a fraud

claim, a complaint must allege with particularity "who made a misrepresentation to whom and the general content of the misrepresentation." *Lum*, 361 F.3d at 224.

As described above, Plaintiffs do not make any specific allegation of fraudulent conduct by any Moving Defendant— not a single statement attributed to the Moving Defendants in the 427-paragraph Complaint is identified as fraudulent.   Plaintiffs only make broad sweeping statements alleging the collective Defendants "made and caused to be made false insurance reimbursement claims to insurance companies."  Compl. at ¶ 403.  There are also no specific circumstances —"the date, time and place"— of Moving Defendants' alleged fraud.[8]   *See Frederico*, 507 F.3d at 200.  An ambiguous attribution of the fraudulent statements to "defendants" is insufficient to survive a motion to dismiss. *See Naporano Iron & Metal Co. v. Am.  Crane Corp.*, 79 F. Supp. 2d 494, 511 (D.N.J. 1999).  "Collectivized allegations that generally allege fraud as against multiple defendants, without informing each defendant as to the specific fraudulent acts he or she is alleged to have committed, do not satisfy Rule 9(b)."  *Arlandson v. Hartz Mt. Corp.*, 792 F. Supp. 2d 691, 710 (D.N.J. 2011) (quotation omitted).  Plaintiffs' bald accusations lack sufficient detail and particularity "to put Defendants on notice of the precise misconduct of which they are charged."   *See Seville Indus. Machinery Corp. v. Southmost Machinery Corp.*, 742 F.2d 786, 791 (3d Cir. 1984).  Plaintiffs have, therefore, failed to meet the stringent standards of stating a claim for fraud under FRCP  9(b), and this Court must dismiss the claim with prejudice.

---

[8] Roche's attempt to rely on similarly non-individualized allegations of fraud in *Roche Diagnostics Corporation v. Binson's  Hospital Supplies, Inc.*, 2017 WL 4123050 (S.D. Ind. Sep. 18, 2017), was comprehensively rejected by the United States District Court of the Southern District of Indiana. The court succinctly disposed of the fraud-related claims holding that: "it is not sufficient to lump together all the defendants; instead the Amended Complaint must specify who was involved in what activity." *Roche*, 2017 WL 4123050, at *8.

### 2.   *Plaintiffs' aiding and abetting fraud claim also fails.*

"To plead aiding and abetting fraud under New Jersey common law, '(1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; [and] (3) the defendant must knowingly and substantially assist the principal violation.'"  Fagan v. Fischer, 2016 WL 347318, at *15 (D.N.J. Jan. 28, 2016) (quoting State of N.J., Dep't of Treasury, Div. of Inv. ex rel. McCormac v. Qwest Commc'ns Int'l, Inc., 387 N.J. Super. 469, 484-85 (App. Div. 2006)).  The heightened pleading standard of FRCP 9(b) applies to common law claims of aiding and abetting fraud. *Prudential Ins. Co. of Am. v. Bank of Am.*, 14 F. Supp. 3d 591, 616 (D.N.J. 2014).

Again, the Complaint only makes general allegations against the Moving Defendants, along with the other "executives, principals, directors, owners, and financiers of Alliance and/or the Alliance Pharmacies."  *See* Compl. at ¶ 405.  Plaintiffs' claim of aiding and abetting fraud does not expand upon these vague statements, and simply relies on the previous allegations of the Complaint, without detail or specificity.  *See e.g., id.* at ¶ 408.  Plaintiffs purport to allege conduct by the Moving Defendants that evidences their involvement in the alleged fraud, however, the conduct alleged is not itself fraudulent or illegal and – when read without Plaintiffs' wholly conclusory characterization – does not evidence any misconduct or wrongdoing whatsoever.

For example, Plaintiffs allege that Hadlock somehow implemented a billing system and trained Alliance's pharmacists on the software as part of his purported efforts to knowingly advance the allegedly fraudulent scheme.  *See* Compl. at ¶ 205.  When stripped of Plaintiffs' conclusory assertion that the software purportedly facilitated a fraud, the only factual allegation is that Hadlock implemented and trained pharmacists to use a computer system – neither a fraudulent nor an illegal act.  Further, Plaintiffs' allegation that Hadlock attempted to stop emplpoyees from

communicating certain objections from or by pharmacists is nothing more than an allegation that Hadlock spoke with pharmacists as part of his position at Alliance that Plaintiffs have attempted to cloak as an act of fraud. *Id.* at ¶ 206. *See GSC Partners CDO Fund*, 368 F.3d at 240.

The allegations asserted against Paoline are similarly innocuous when separated from Plaintiffs' conclusory assertions. As with Hadlock, Paoline's communications with pharmacists as part of her position at Alliance do not evidence any fraud or illegal conduct. Similarly, Plaintiffs' scheme to contort Paoline's purported efforts to "mitigate" genuine business risks— including the unreasonable and arbitrary cancellation of contracts by PBMs (who are conspicuously absent as defendants in this action since they are most likely friendly to Plaintiffs)— into alleged acts of fraud are factually baseless.

The few individualized allegations against Smith similarly do not contain any specific facts to support Plaintiffs' wholly conclusory assertions of fraud. For instance, Plaintiffs summarily assert that Smith "participated in the Board's decision to continue the fraud" Compl. at ¶ 227, and that he was "personally involved in Alliance's decision to submit doctored and misleading invoices," *id.* at ¶ 299. These statements of personal involvement do not contain any allegation of Smith's individual conduct demonstrating his alleged "involvement."

Aiding and abetting claims are inextricably tied to successfully pleading the underlying tort—i.e., the "principal violation"—and reliance is an essential element to a common law fraud claim. *See Banco Popular N. Am. v. Gandi*, 876 A.2d 253, 261, 184 N.J. 161, 175 (2005); *see also State, Dep't of Treasury, Div. of Inv. ex rel. McCormac v. Qwest Commnc's Int'l, Inc.*, 387 N.J. Super. 469, 484 (App. Div. 2006). Importantly, the "reliance" necessary to establish a common law fraud claim is ***first-party reliance***. *See Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 656, 128 S.Ct. 2131170, L.Ed.2d 1012 (2008); *see also Kaufman v. i-Stat Corp.*, 754 A.2d 1188,

1195-96, 165 N.J. 94, 109 (2000). Stated differently, third-party reliance is insufficient to establish a *prima facie* common law fraud claim. *See Tonkinson v. Byrd*, 2018 WL 1919829, at *5 (D.N.J. Apr. 24, 2018) (rejecting an argument that third-party reliance is sufficient to establish a claim for fraudulent misrepresentation and dismissing that claim because the plaintiff "has not alleged that she relied to her detriment on" the defendants' alleged conduct.).

Here, Plaintiffs' allege that "Defendants knowingly and intentionally made and caused to be made false insurance reimbursement claims to insurance companies," who are third-parties to this action. Compl. at ¶ 403. There are no allegations made by Plaintiffs, other than conclusory assertions, that Roche ever relied upon any of the misrepresentations purportedly made by Defendants—let alone the alleged statements made and/or actions taken by the Moving Defendants.

Moreover, the Complaint fails to articulate, in specific and non-conclusory terms, a prima facie claim as to how the Moving Defendants provided substantial assistance to others in advancing the fraud, how the Moving Defendants could not have perpetrated their fraud without the assistance of the other Moving Defendants, and how each of the Moving Defendants had actual knowledge of the fraudulent scheme.  As such, the claim must be dismissed.

> 3.    *Plaintiffs' fail to articulate a colorable cause of action for of conspiracy to commit fraud.*

In New Jersey, civil conspiracy requires "'a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage." *Am. Corp. Soc'y v. Valley Forge Ins. Co.*, 424 F. App'x 86, 90 (3d Cir. 2011) (quoting *Banco Popular N. Am. v. Gandi*, 184 N.J. 161, 177 (N.J. 2005)).  "Under New Jersey law, a claim for civil conspiracy cannot survive without a viable

underlying tort." *Dist. 1199P Health & Welfare Plan v. Janssen, L.P.*, 784 F. Supp. 2d 508, 533 (D.N.J. 2011).  A plaintiff's failure to state an independent tort claim for which relief can be granted requires the dismissal of the civil conspiracy claim.  *Valley Forge*, 424 F. App'x at 90; *Janssen*, 784 F. Supp. 2d at 533.

Plaintiffs have failed to plead a valid underlying tort claim.  As discussed above, Plaintiffs have failed to state a claim for common law fraud, and that count should be dismissed.  As a result, the conspiracy to commit fraud claim must be dismissed for the same reasons.  *See Cafaro v. HMC*, 2008 WL 4224801, at *8 (D.N.J. Sep. 5, 2008) ("Having already dismissed Plaintiffs' common law fraud claim for failure to comply with Rules 8(a) and 9(b), Plaintiffs' claim for civil conspiracy must likewise be dismissed for the same reasons.").

Moreover, under the "intracorporate-conspiracy doctrine," an agreement between or among agents of the same legal entity, when the agents act in their official capacities, is not an unlawful conspiracy. *Ziglar v. Abbasi*, 137 S. Ct. 1843, 198 L. Ed. 2d 290 (2017) (holding that "[w]hen two agents of the same legal entity make an agreement in the course of their official duties … there has not been an agreement between two or more separate people"). Roche alleges "Defendants unlawfully, knowingly and willfully combined, conspired, confederated, and agreed with others to defraud Roche." Compl. at ¶408. However, Moving Defendants, all former employees of Alliance, cannot "conspire" with either one another, or Alliance and its subsidiaries, while acting within the course of their official duties.

For these reasons, the Court must dismiss Plaintiffs' civil conspiracy claim.

### C.     There is No Unjust Enrichment Claim.

Plaintiffs have failed to state an unjust enrichment against any of the Moving Defendants. Unjust enrichment is a quasi-contractual claim.  *Canadian Nat'l Ry. v. Vertis, Inc.*, 811 F. Supp. 2d 1028, 1034 (D.N.J. 2011).  To state a claim for unjust enrichment under New Jersey law, a

plaintiff must show that (1) the defendant received a benefit; (2) at plaintiff's expense; (3) under circumstances that would make it unjust for defendant to retain benefit without paying for it. *Maniscalco v. Brother Int'l Corp. (USA)*, 627 F. Supp. 2d 494, 505 (D.N.J. 2009); *In re K-Dur Antitrust Litigation*, 338 F. Supp. 2d 517, 544 (D.N.J. 2004). A plaintiff must demonstrate that it "'expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." *Maniscalco*, 627 F. Supp. 2d at 505 (quoting *VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 554 (N.J. 1994)).

Purchasing an item through an intermediate distributor does not establish a direct relationship between the purchaser and a manufacturer. *Cooper v. Samsung Elecs. Am., Inc.*, 2008 WL 4513924, at *10 (D.N.J. Sep. 30, 2008). An unjust enrichment claim must fail in such a situation because the manufacturer did not confer a direct benefit on the purchaser. *Id.*; *Alin v. Am. Honda Motor Co.*, 2010 WL 1372308, at *14-17 (D.N.J. Mar. 31, 2010); *Maniscalco*, 627 F. Supp. 2d at 506 ("New Jersey law requires a direct relationship between the parties.").

Alliance has no relationship with Roche. Moreover, the Moving Defendants themselves, as individual employees, certainly did not have a direct relationship with Roche, and Plaintiffs admit to not having a direct relationship with Alliance. Plaintiffs' Complaint does not contain a single allegation that Roche ever transacted directly with Alliance, let alone with any of the Defendants. In fact, according to Plaintiffs, Alliance is removed from a direct relationship with Roche through layers of distributors and PBMs. *See* Compl. at ¶¶ 69-70. Plaintiffs have not shown anything close to resembling a "direct relationship," let alone alleged how they "performed or conferred a benefit" on any of the Moving Defendants given the degrees of separation between them. *See Maniscalco*, 627 F. Supp. 2d at 506.

Plaintiffs have sued the Moving Defendants where they acknowledge no direct relationship, no contractual relationship, and no transactional relationship with the Moving Defendants in their individual capacities in the Complaint. Thus, no set of facts could ever support an unjust enrichment claim, and this Court must dismiss the unjust enrichment claim with prejudice because any further amendment to the Complaint would be futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002); *Gretzula v. Camden Cty. Tech. Sch. Bd. of Educ.*, 965 F. Supp. 2d 478, 488, 491 (D.N.J. 2013); *Hoffman v. Liquid Health, Inc.*, 2014 WL 29999280, at \*11 (D.N.J. July 2, 2014); *Hemy v. Perdue Farms, Inc.*, 2011 WL 6002463, at \*22-23 (D.N.J. Nov. 30, 2011).

### D.       Plaintiffs Have No Claim for Negligent Misrepresentation.

To state a claim of negligent representation under New Jersey law, a plaintiff must allege "(1) the defendant negligently provided false information; (2) the plaintiff was a reasonably foreseeable recipient of that information; (3) the plaintiff justifiably relied on the information; and 4) the false statements were a proximate cause of the plaintiff's damages." *Princeton Ophthalmic, LLC v. Corinthian Ophthalmic, Inc.*, 2017 WL 4543688, at \*13 (D.N.J. Oct. 10, 2017).

Negligent misrepresentation "shares all the components of fraud," but, additionally, requires that "the misrepresentation must be made by a person with a duty to the plaintiff." *Roll v. Singh*, 2008 WL 3413863, at \*20 (D.N.J. June 26, 2008) (citation and internal quotation marks omitted). Accordingly, a plaintiff seeking to recover for negligent misrepresentation must plead that the defendant owed it a duty of care. *Kronfeld v. First Jersey Nat. Bank*, 638 F. Supp. 1454, 1465 (D.N.J. 1986). Under either the heightened pleading standard or the general pleading standard, Plaintiffs have failed to state a claim for negligent misrepresentation.[10]

---

[10] "[T]here is disagreement among the courts in this District regarding the pleading standard that applies to claims of negligent misrepresentation. Some courts have required plaintiffs to plead

Plaintiffs have not demonstrated that any of the Moving Defendants, owed a duty of care to Roche. There is no "special relationship" between the Moving Defendants and Plaintiffs that would justify the imposition of liability for negligent misrepresentation. *See People Express Airlines*, 100 N.J. at 256-57; *Westmont Dev. Grp., LLC v. Twp. of Haddon*, 625 F. Supp. 2d 178, 198 (D.N.J. 2009).

Plaintiffs have not pled a misstatement or omission by each Moving Defendant that Plaintiffs received. Plaintiffs have the burden of pleading a misstatement or omission by each and every defendant, and they have failed to do so. *See Johnson v. Draeger Safety Diagnostics, Inc.*, 2013 WL 3788937, at *7 (D.N.J. July 19, 2013) ("'The actual receipt and consideration of any misstatement remains central to the case of any plaintiff seeking to prove that he or she was deceived by the misstatement or omission." (quoting *Kaufman v. i-Stat Corp.*, 165 N.J. 94, 109 (2000))).

To the extent that Plaintiffs allege that Defendants' negligent misrepresentation were based on material omissions, Compl. at ¶¶ 418-420, Defendants had no "independent duty to disclose" any facts to Plaintiffs. *Eberhart v. LG Elecs. USA, Inc.*, 188 F. Supp. 3d 401, 410 (D.N.J. 2016). A duty to disclose under New Jersey law only arises when "(1) a fiduciary relationship exists between the parties, (2) the transaction is intrinsically fiduciary in nature in that it calls for good faith and full disclosure, or (3) one party expressly reposes a special trust or confidence in the other." *Id.* None of the Moving Defendants had an independent duty to Plaintiffs, and Plaintiffs

---

negligent misrepresentation in accordance with Federal Rule of Civil Procedure 9(b). Other courts have declined to apply Rule 9(b) to negligent misrepresentation claims." *Rapid Models & Prototypes, Inc. v. Innovated Sols.*, 71 F. Supp. 3d 492, 505-06 (D.N.J. 2014) (collecting cases, but resolving the matter on other grounds without determining which standard to apply).

made no such allegations. Plaintiffs have, therefore, not asserted a claim for negligent misrepresentation based upon omissions.

Moreover, "[t]he element of reliance is the same for fraud and negligent misrepresentation." *Kaufman v. i-Stat Corp.*, 165 N.J. 94, 109 (2000); *see Petit-Clair v. Attorney General for New Jersey*, 730 Fed. Appx. 120, 123 n. 2 (3d Cir. 2018). Plaintiffs' conclusory allegations that "the pharmacy plans and Roche reasonably relied upon Defendants' misrepresentations and material omissions and were unaware that they were false" are woefully insufficient. Compl. at ¶ 421. Once again, there are no allegations made by Plaintiffs, other than conclusory assertions, that Roche ever relied upon any of the misrepresentations purportedly made by Defendants—let alone the alleged statements made and/or actions taken by Paoline, Hadlock and Smith.

No amendment to the pleadings can change the fact that Plaintiffs have already acknowledged that they had no direct relationship with the Moving Defendants.  Without a relationship between Plaintiffs and each Moving Defendant, the claim for negligent misrepresentation must be dismissed with prejudice.

### E.      Plaintiffs Have Failed to State a Claim for Tortious Interference.

To prove tortious interference with prospective economic advantage under New Jersey law, a plaintiff must show:

> (1) the plaintiff had a reasonable expectation of an economic benefit or advantage; (2) the defendant knew of Plaintiff's expectancy; (3) the defendant intentionally and maliciously interfered with this expectancy; (4) there was a reasonable probability that the plaintiff would have realized the economic benefit in the absence of interference; and (5) the plaintiff suffered injury as a result of the defendant's conduct.

*Van v. Borough of N. Haledon*, 2009 WL 1811727, at *9 (D.N.J. June 22, 2009) (citing Lightning Lube, 4 F.3d at 1167).

"[T]he prospective economic advantage must be rooted in some specific, identifiable, commercial relationship (either existing or prospective) that is disrupted by the alleged tortfeasor." Barr Labs., Inc. v. Bolar Pharm. Co., 1992 U.S. Dist. LEXIS 22882, at *7 (D.N.J. Dec. 23, 1992); see also Trans USA Prods. v. Howard Berger Co., 2008 WL 3154753, at *8 (D.N.J. Aug. 4, 2008). Plaintiffs have not identified any prospective business relationship or economic advantage that was lost. Plaintiffs allege that the Moving Defendants interfered with some nebulous relationship between Plaintiffs and unspecified parties. Plaintiffs have not alleged that, absent Defendants' purported interference, they would have entered into other business relationships or contracts. Plaintiffs are simply seeking redress for direct losses from the alleged conduct.

Further, Plaintiffs are required to allege that each Moving Defendant knew of these expected relationships and economic advantages. *See Lightning Lube*, 4 F.3d at 1167; *Eli Lilly*, 23 F. Supp. 2d at 493. Plaintiffs have not done so because Plaintiffs cannot assert that each Defendant knew of these relationships, when Plaintiffs themselves have not even specified or identified any of these relationships. Moreover, Plaintiffs have not alleged any facts in support of their allegation that each Moving Defendant acted with intent and malice. For all these reasons, Plaintiffs have not plead a claim of tortious interference with a prospective economic advantage upon which relief may be granted. The claim must be dismissed with prejudice.

## **CONCLUSION**

For the foregoing reasons, the Moving Defendants respectfully request that this Court must

dismiss with prejudice the Complaint, pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(2),

12(b)(3), and 12(b)(6), for lack of personal jurisdiction, improper venue, failure to state a claim,

or plead fraud with particularity.

Respectfully submitted,

**FOX ROTHSCHILD LLP**

/s/ Ernest Edward Badway, Esq.
Stephanie Resnick, Esq.
Ernest E. Badway, Esq.
John C. Fuller, Esq.
FOX ROTHSCHILD LLP
49 Market Street
Morristown, New Jersey 07960-5122
Telephone: (973) 994-7530
Fax: (973) 992-9125
E-mail: sresnick@foxrothschild.com
E-mail: ebadway@foxrothschild.com
E-mail: jfuller@foxrothschild.com

*Attorneys for defendants Sahily Paoline,*
*Steven L. Hadlock, and Blaine Smith*

35