VEDDER PRICE P.C.

Daniel C. Green
Ashley B. Huddleston
dgreen@vedderprice.com
ahuddleston@vedderprice.com
1633 Broadway, 31st Floor
New York, New York 10019
T: +1 212 407 7700
F: +1 212 407 7799

Thomas P. Cimino, Jr. (admitted *pro hac vice*)
Brian W. Ledebuhr (admitted *pro hac vice*)
tcimino@vedderprice.com
bledebuhr@vedderprice.com
222 North LaSalle Street
Chicago, Illinois 60601
T: +1 312 609 7500
F: +1 312 609 5005

*Attorneys for Defendant TRAVIS HUGHES*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ROCHE DIAGNOSTICS CORP. and ROCHE DIABETES CARE, INC., | |
| Plaintiffs, | Case No. 2:19-cv-08761-CCC-CLW |
| -against- | **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT TRAVIS HUGHES' MOTION TO DISMISS PLAINTIFFS' COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(2), 12(b)(3) AND 12(b)(6)** |
| JEFFREY C. SMITH, et al., | **Oral Argument Requested** |
| Defendants. | **(Motion Day: July 1, 2019)** |

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................... 1

RELEVANT ALLEGATIONS REGARDING TRAVIS......................................................... 4

LEGAL ARGUMENT ............................................................................................... 5

1.  Each of Roche's claims against Travis fails because the Complaint is replete
with impermissible group pleading allegations and legal conclusions........................... 5

2.  This Court has no personal jurisdiction over Travis..................................................... 8

3.  Venue is not proper before this Court....................................................................... 10

4.  Roche cannot sustain its racketeering-related claims against Travis........................... 11

    A.  Roche lacks standing to assert any racketeering claims because neither
Travis, the Other Defendants nor the alleged conduct directly caused
its injuries................................................................................................. 11

    B.  Roche's allegations fail to state RICO-related claims against Travis
with the specificity required under Rule 9(b) ................................................. 15

        (i)  Roche fails to allege any predicate acts of mail or wire fraud
by Travis ........................................................................................ 16

        (ii) Roche fails to state racketeering-related conspiracy claims
against Travis ................................................................................. 18

5.  Roche cannot state its remaining common law claims against Travis........................... 19

    A.  Roche's fraud-related claims against Travis fail on the face of the
pleadings ................................................................................................ 19

    B.  Roche cannot assert an unjust enrichment claim against Travis.................... 22

    C.  Roche's negligent misrepresentation claim fails against Travis.................... 24

    D.  Roche's tortious interference claim against Travis fails on its face .............. 25

CONCLUSION.................................................................................................... 26

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aliev v. Borukhov*,
   No. 15-6113, 2016 WL 3746562 (E.D.N.Y. July 8, 2016)....................................................11

*Allstate N.J. Ins. Co. v. Summit Pharm., Inc.*,
   No. 13-5809, 2014 WL 1767528 (D.N.J. May 2, 2014)........................................................19

*Am. Corp. Soc'y v. Valley Forge Ins. Co.*,
   424 Fed. App'x 86 (3d Cir. 2011)...........................................................................................22

*Anza v. Ideal Steel Supply Co.*,
   547 U.S. 451 (2006)...........................................................................................12, 13, 14, 15

*Arlandson v. Hartz Mountain Corp.*,
   792 F. Supp. 2d 691 (D.N.J. 2011) .................................................................................20, 23

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).................................................................................................................6

*Badrinauth v. Metlife Corp.*,
   No. 04-2552, 2006 WL 288098 (D.N.J. Aug. 17, 2005) ......................................................26

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)............................................................................................................5, 7

*Bockman v. First Am. Mktg. Corp.*,
   459 Fed. App'x 157 (3d Cir. 2012)........................................................................................10

*C.O. Truxton, Inc. v. Blue Caribe, Inc.*,
   No. 14-4231, 2014 WL 6883145 (D.N.J. Dec. 5, 2014)........................................................10

*Cafaro v. HMC*,
   No. 07-2793, 2008 WL 4224801 (D.N.J. Sept. 5, 2008)........................................................22

*Cerciello v. Canale*,
   563 Fed. App'x 924 (3d Cir. 2014).........................................................................................8

*Cetel v. Cmmw. Life Ins. Co.*,
   460 F.3d 494 (3d Cir. 2006)...................................................................................................11

*Cooper v. Samsung Elecs. Am., Inc.*,
   No. 07-3853, 2008 WL 4513924 (D.N.J. Sept. 30, 2008)......................................................23

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Dana Transp., Inc. v. Ableco Fin., LLC*,
  No. 04-2781, 2005 WL 2000152 (D.N.J. Aug. 17, 2005) ......................................25

*Diebold, Inc. v. Cont'l Cas. Co.*,
  No. 07-1991, 2008 WL 1372948 (D.N.J. April 10, 2008) ....................................24

*Digital Wholesale of N.Y., LLC v. Am. Eagle Trading Group, LLC*,
  No. 16-3487, 2016 WL 5660462 (D.N.J. Sept. 29, 2016) ....................................17

*Dist. 1199P Health & Welfare Plan v. Janssen*,
  784 F. Supp. 2d 508 (D.N.J. 2011) .................................................11, 15, 22

*Eli Lilly & Co. v. Roussel Corp.*,
  23 F. Supp. 2d 460 (D.N.J. 1998) .......................................................25, 26

*Emcore Corp. v. PricewaterhouseCoopers LLP*,
  102 F. Supp. 2d 237 (D.N.J. 2000) ...........................................................18

*Empire Merchs., LLC v. Reliable Churchill LLLP*,
  902 F.3d 132 (2d Cir. 2018) ..............................................................13, 14

*Fagan v. Fischer*,
  No. 14-7013, 2016 WL 347318 (D.N.J. Jan. 28, 2016) ........................................21

*Falat v. County of Hunterdon*,
  No. 12-6804, 2013 WL 1163751 (D.N.J. Mar. 19, 2013) .........................................7

*Frederico v. Home Depot*,
  507 F.3d 188 (3d Cir. 2007) .................................................................20

*Goodyear Dunlop Tires Operations. S.A. v. Brown*,
  564 U.S. 915 (2011) ..........................................................................8

*Guers v. Jones Lang LaSalle Am., Inc.*,
  No. 13-7734, 2014 WL 4793021 (D.N.J. Sept. 25, 2014) .......................................21

*H2O Plus, LLC v. Arch Pers. Care Prods., L.P.*,
  No. 10-3089, 2011 WL 2038775 (D.N.J. May 22, 2011) ..........................................7

*Hawk Mountain LLC v. Mirra*,
  No. 13-2083, 2016 WL 3182778 (D. Del. June 3, 2016) .........................................7

*Hemi Grp., LLC v. City of New York*,
  559 U.S. 1 (2010) ...........................................................................12

## TABLE OF AUTHORITIES
(continued)

Page(s)

*Hemy v. Perdue Farms, Inc.*,
No. 11-888, 2011 WL 6002463 (D.N.J. Nov. 30, 2011) .......................................23

*Holmes v. Sec. Inv. Prot. Corp.*,
503 U.S. 258 (1992) ........................................................................................12, 15

*IMO Indus., Inc. v. Kiekert AG*,
155 F.3d 254 ...........................................................................................................9

*Ingris v. Borough of Caldwell*,
No. 14-855, 2015 WL 3613499 (D.N.J. Aug. 10, 2012) .......................................7

*James v. City of Wilkes-Barre*,
700 F.3d 675 (3d Cir. 2012) ..................................................................................6

*Japhet v. Francis E. Parker Mem'l Home, Inc.*,
No. 14-01206, 2014 WL 3809173 (D.N.J. July 31, 2014) ....................................7

*KBZ Commc'ns Inc. v. CBE Techs. LLC*,
634 Fed. App'x 908 (3d Cir. 2015) .....................................................................20

*Kolar v. Preferred Real Estate Invs., Inc.*,
361 Fed. App'x 354 (3d Cir. 2010) ................................................................16, 18

*Lubart v. Riley & Fanelli, P.C.*,
No. 97-6392, 1998 WL 398253 (E.D. Pa. June 22, 1998) ...................................16

*Luzerne Cty. Ret. Bd. v. Makowski*,
627 F. Supp. 2d 506 (M.D. Pa. 2007) ............................................................17, 23

*Maniscalco v. Brother Int'l Corp. (USA)*,
627 F. Supp. 2d 494 (D.N.J. 2009) ......................................................................23

*Mellon Bank (East) PSFS, N.A. v. DiVeronica Bros., Inc.*,
983 F.2d 551 (3d Cir. 1992) ..................................................................................8

*Miller v. P.G. Lewis & Assoc.*,
No. 05-5641, 2007 WL 316446 (D.N.J. Jan. 30, 2007) .......................................17

*Munsif v. Cassel*,
331 Fed. App'x 954 (2009) ...................................................................................15

*Naporano Iron & Metal Co. v. Am. Crane Corp.*,
79 F. Supp. 2d 494 (D.N.J. 1999) ........................................................................20

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*New York Pipeline Tech. Contractors, LLC v. Sabena Plumbing & Heating Co.*,
No. 10-148, 2012 WL 209349 (D.N.J. Jan. 24, 2012)............................................24

*Nicholas v. Saul Stone & Co. LLC*,
No. 97-860, 1998 WL 34111036 (D.N.J. June 30, 1998)........................................9

*Pa. Ass'n of Edwards Heirs v. Rightenour*,
235 F.3d 839 (3d Cir. 2000)..................................................................................17

*Parness v. Christie*,
751 Fed. App'x 277 (3d Cir. 2018)..........................................................................6

*People Express Airlines v. Consol. Rail Corp.*,
100 N.J. 246 (1985) ..............................................................................................24

*Rapid Models & Prototypes, Inc. v. Innovated Sols.*,
71 F. Supp. 3d 492 (D.N.J. 2014) .........................................................................24

*Reese v. Horizon Blue Cross Blue Shield of N.J.*,
No. 08-1382, 2008 WL 5188853 (D.N.J. Dec. 10, 2008)......................................18

*Rehrer v. Atiyeh*,
No. 14-8031, 2015 WL 5680104 (D.N.J. Sept. 25, 2015)........................................8

*Roche Diagnostics Corp. v. Binson's Hosp. Supplies, Inc.*,
No. 17-cv-00949, 2017 WL 4123050 (S.D. Ind. Sept. 18, 2017)..............1, 7, 9, 21

*Rothberg v. Marger*,
No. 11-5497, 2013 WL 1314699 (D.N.J. Mar. 28, 2013) .....................................11

*Sander v. HR Trust Services, LLC*,
No. 08-1383, 2009 WL 3055368 (D.N.J. Sept. 21, 2009).....................................22

*Schmuck v. U.S.*,
489 U.S. 705 (1989)...............................................................................................17

*Smith v. Jones, Gregg, Creehan & Gerace*,
No. 08-365, 2008 WL 5129916 (W.D. Pa. Dec. 5, 2008) .....................................18

*Synder v. Dietz & Watson, Inc.*,
837 F. Supp. 2d 428 (D.N.J. 2011) .......................................................................15

*Trans USA Prods. v. Howard Berger Co.*,
No. 07-5924, 2008 WL 3154753 (D.N.J. Aug. 4, 2008) ..................................25, 26

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Trisvan v. Heyman*,
   305 F. Supp. 3d 381 (E.D.N.Y. 2018) ....................................................19

*Varughese v. Robert Wood Johnson Med Sch.*,
   No. 16-02828, 2017 WL 4270523 (D.N.J. Sept. 26, 2017)....................17

*Victory Int'l (USA) v. Perry Ellis Int'l, Inc.*,
   No. 07-0375, 2008 WL 65177 (D.N.J. Jan. 2, 2008).............................10

*Zodda v. Nat'l Union Fire Ins. Co.*,
   No. 13-7738, 2015 WL 926221 (D.N.J. Mar. 4, 2015) .........................20

**Statutes**

18 U.S.C. § 1961 *et. seq.*.................................................................... *passim*

18 U.S.C. § 1964(c) .................................................................................12

28 U.S.C. § 1367(c)(3)..............................................................................19

**Rules and Other Authorities**

Fed. R. Civ. P. 8.........................................................................................7

Fed. R. Civ. P. 8(a) ............................................................................ *passim*

Fed. R. Civ. P. 9(b) ............................................................................ *passim*

Fed. R. Civ. P. 12(b)(2)..............................................................1, 3, 8, 26

Fed. R. Civ. P. 12(b)(3)............................................................1, 3, 10, 26

Fed. R. Civ. P. 12(b)(6)..................................................................1, 3, 26

Pursuant to Federal Rules of Civil Procedure ("Rules") 12(b)(2), 12(b)(3) and 12(b)(6), Defendant Travis Hughes ("Travis") submits this Memorandum of Law in support of his Motion to Dismiss the Complaint ("Complaint" or "Compl.") of Plaintiffs Roche Diagnostics Corp. and Roche Diabetes Care, Inc. (collectively, "Roche"), with prejudice and in its entirety.

## PRELIMINARY STATEMENT

Roche filed a lengthy and hopelessly convoluted Complaint in an attempt to cobble together eight claims against Travis—a former member of the Board of Directors ("Board") of bankrupt nonparty Alliance Medical Holdings, LLC—and twenty-six (26) other individual and corporate defendants (the "Other Defendants"). The Complaint is fundamentally flawed because it impermissibly seeks to impose liability against Travis and the Other Defendants (collectively, the "Defendants") for the alleged conduct of a non-party, Alliance Medical Holdings, LLC and its various related predecessors, subsidiaries and affiliates (collectively, "Alliance").

The Complaint also makes clear that, in bringing this suit, Roche is essentially seeking to recover for the acts of its own customers, including pharmacy benefit managers ("PBMs") who sold Roche's blood glucose test strips ("test strips") in the secondary market. However, for obvious reasons, Roche elected not to sue its own customers. Instead, Roche attempts to recover from Alliance's former employees, officers, directors and shareholders.

A similarly flawed strategy by Roche was rejected by another federal district court. *See Roche Diagnostics Corp. v. Binson's Hosp. Supplies, Inc.*, No. 17-cv-00949, 2017 WL 4123050 (S.D. Ind. Sept. 18, 2017). In *Roche Diagnostics Corp.*, the United States District Court for the Southern District of Indiana dismissed similar claims by Roche against certain corporate and individual defendants concerning the distribution of Roche test strips. In its holding, the Court ruled that it lacked personal jurisdiction over those defendants and the claims were improperly based on group pleading and conclusory allegations. The same result is warranted here.

As alleged in the Complaint, Roche manufactures test strips for patients with diabetes. (Compl. ¶ 1.)  Roche packages and sells identical test strips which are predominantly distributed in two different ways—through retail pharmacies and via mail order.  (*Id.* ¶ 42.)  Roche concedes that this dual sales and distribution model allows it to engage in the ethically questionable practice of selling the same test strips at drastically different prices, which is entirely dependent on the diabetic patient's insurance coverage, if any.

For instance, Roche's retail test strips sell for anywhere between $51.25 and $78.07 per vial, while its mail order test strips—which are provided as a benefit under certain health insurance plans—are sold for under $20 per vial.  (Compl. ¶¶ 4, 46.)  The result of this sales and distribution model is two-fold.  First, the model imposes a severe financial hardship on uninsured and under-insured diabetics, by drastically inflating the retail price of the same test strips that are significantly cheaper via insurance mail order programs.  Second, the model grossly enriches Roche and its direct customers—PBMs who contract with Roche to purchase, distribute and adjudicate insurance claims for the sale of Roche's retail test strips.

The inflated prices of retail test strips led to the creation of a secondary market for mail order test strips.  This secondary market provides needed test strips to diabetics at an affordable price.  Importantly, while Roche may have contractual claims against its own customers, with whom it contracts to sell its mail order test strips, it is not unlawful for third parties such as Alliance to acquire these test strips in the secondary market.  Nevertheless, in an effort to further enrich itself, Roche now asserts this lawsuit.  Roche brings these claims notwithstanding the fact that it never had a contract with Alliance and never sold <u>any</u> of its test strips directly to Alliance.

Roche's claims have no merit whatsoever.  As an initial matter, Roche cannot establish that this Court:  (i) has personal jurisdiction over Travis, an Illinois resident; or (ii) is the proper venue

for the claims asserted in the Complaint.  Moreover, the Complaint fails to state a claim against Travis.  First, Roche lacks standing to assert any racketeering-related claims against Travis—under the Racketeer Influenced and Corrupt Organizations Act ("RICO") in Counts I and III, or under New Jersey's corresponding RICO statute ("NJRICO") in Counts II and IV.  Specifically, Roche's damages theory is simply too attenuated, as Roche cannot demonstrate that its purported injuries were directly caused by any of the Defendants' conduct, let alone by Travis.  Second, Roche fails to allege the necessary elements for each of the RICO and NJRICO claims with the requisite specificity under Rule 9(b).  For instance, Roche cannot allege that Travis engaged in any predicate acts of mail or wire fraud, nor can Roche allege that Travis conspired to engage in any type of racketeering activity.[1]  Third, Roche cannot assert claims against Travis for fraud (Count V), unjust enrichment (Count VI), negligent misrepresentation (Count VII) or tortious interference (Count VIII) because Roche's allegations fail to demonstrate any wrongful acts, omissions or other misconduct by Travis.  For these reasons, as set forth herein and in the Other Defendants' Motions to Dismiss, which Travis joins and incorporates by reference, Roche's Complaint should be dismissed, with prejudice, pursuant to 12(b)(2), 12(b)(3) and 12(b)(6).[2]

---

[1] Notably absent from the Complaint is a single substantive allegation of actionable conduct on the part of Travis.  To the contrary, the few allegations directly related to Travis demonstrate his attempts to ensure Alliance's compliance with PBM audits and all laws related to the industry.  Roche egregiously mischaracterizes these facts and related documents, while otherwise loading the Complaint with improper group pleading and conclusory allegations.

[2] Concurrently with this Motion, certain of the Other Defendants filed their own Motions to Dismiss and Memoranda in Support.  *See*, *e.g.*, Motions to Dismiss and Memoranda in Support filed on behalf of:  (i) the Hughes Entities, Mercato Partners and the Pritzker Group, as those groups of Defendants are defined in the Complaint; (ii) Alison Wistner and Adam Koopersmith; (iii) Steven Hadlock, Sahily Paoline and Blaine Smith; and (iv) Zions Bancorporation, N.A. (collectively, the "Motions to Dismiss").  Travis hereby joins, and incorporates herein by reference, each of the Other Defendants' Motions to Dismiss in their entirety and to the fullest extent applicable to Travis, including but not limited to the legal bases and arguments concerning personal jurisdiction, venue, the application of the first sale doctrine and Roche's failure to state any of its RICO, NJRICO or common law claims.

## <u>RELEVANT ALLEGATIONS REGARDING TRAVIS</u>

Notwithstanding that Roche's Complaint is ninety-six (96) pages in length and has four hundred twenty-seven (427) paragraphs, there are markedly few allegations directly related to Travis and/or any acts or omissions purportedly committed by him.  Rather, Roche lumps all of the Defendants together throughout the Complaint, and often claims that Travis merely received communications concerning certain non-parties' supposed wrongdoing.

After discarding Roche's improper attempt at group pleading, extensive hyperbole and inappropriate legal conclusions, the relevant factual allegations (and corresponding paragraphs) concerning acts or omissions by Travis are as follows:[3]

15.  Travis is an Illinois resident and principal of certain investment companies (the "Hughes Entities"), and he was a member of Alliance's Board.

31.  In 2016, Alliance's Board—including Travis—approved Alliance's acquisition of Peterson Pharmacy in New Jersey.

176.  In late 2013 and early 2014, Alliance's officers and directors—including Travis—discussed creating or acquiring an "in-house" PBM for Alliance.

265.  Travis signed a Unit Purchase Agreement similar to those signed by Defendants Wistner and Koopersmith (as external members of Alliance's Board), on behalf of, and as representatives for, their respective investor entities.

266.  On February 7, 2012, Travis sent an e-mail to Defendant Jeff Smith (as Alliance's Chief Executive Officer), asking whether Alliance received audit materials from a PBM.  The e-mail specifically stated as follows:  "Jeff - did you receive audit

---

[3] The Complaint's factual allegations are assumed to be true for purposes of this Motion only.

materials from cvs [sic] yesterday afternoon?  We heard they were coming but no indication on what they say."

271.   On October 26, 2015, Travis sent an e-mail stating that the "issues outlined" in Koopersmith's e-mails were "not new" and Alliance previously considered them. Travis also stated that the allegations of illegality were more "specific" and that "[t]here are internal processes to address such concerns," which he "hope[d]" had been used.  Travis concluded by stating:  "**Given the escalation to the Board, the Board will need to seek counsel as how best to address the concerns, ensuring that the Company's practices meet compliance guidelines**" (emphasis added).

272.   Before Defendant Grant (as Alliance's General Counsel) circulated a November 4, 2015 memorandum to the Board in response to Koopersmith's e-mail, Grant sought Travis' input on a preliminary draft of said memorandum.

273.   Travis did not respond to Grant's request for feedback in writing.

304.   Travis conducted business as a member of Alliance's Board through an e-mail address with the @hughes-co.com domain.

(Compl. ¶¶ 15, 31, 176, 265, 271–73, 304.)  None of these allegations are sufficient to state a claim against Travis under RICO, NJRICO or for common law fraud, unjust enrichment, negligent misrepresentation or tortious interference.

## LEGAL ARGUMENT

1.   **Each of Roche's claims against Travis fails because the Complaint is replete with impermissible group pleading allegations and legal conclusions.**

The Complaint does not comply with Rule 8(a) or Rule 9(b) and fails to meet the basic pleading requirements set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) and

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  These deficiencies are fatal to Roche's Complaint and require dismissal for two reasons.

First, many of the allegations in the Complaint are broad legal conclusions which: (i) proclaim that personal jurisdiction exists or venue is proper in this District; or (ii) regurgitate the elements of a cause of action.  (*See*, *e.g.,* Compl. ¶¶ 25–26.)  In order to properly allege jurisdiction or state a claim, Roche is required to go beyond "[t]hreadbare recitals" of legal principles "supported by mere conclusory statements."  *Iqbal*, 556 U.S. at 678.  Here, Roche's allegations are based on impermissible group pleading, and are laden with legal conclusions bereft of any facts whatsoever.  *See*, *e.g.*, Compl. ¶¶ 230, 266, 268, 274.  To the extent Roche attempts to plead facts specifically directed to Travis, those allegations are entirely benign and fail to support a claim.  *See*, *e.g.*, pp. 4-5 above.  Accordingly, Roche's conclusory allegations are insufficient to state a cause of action.  *James v. City of Wilkes-Barre*, 700 F.3d 675, 679 (3d Cir. 2012) ("disregard[ing] rote recitals of the elements of a cause of action, legal conclusions, and mere conclusory statements" on motion to dismiss); *Parness v. Christie*, 751 Fed. App'x 277, 280 (3d Cir. 2018) (in affirming the dismissal of a complaint alleging a RICO claim held that "legal conclusions are disregarded.").

Second, the Complaint often improperly groups Travis with the Other Defendants by making broad allegations against all twenty-seven (27) "Defendants," or twenty-six (26) "RICO Defendants," or ten (10) "Individual Defendants," or four (4) "Director Defendants."  (Compl. ¶¶ 2–4, 6, 25–30, 53, 58, 89, 100, 102–03, 107, 122, 151, 154, 157–59, 162–65, 168, 170, 173–78, 182–83, 187, 190, 192, 195–96, 230–31, 233–36, 268, 351, 353, 357–67, 371, 373–82, 387–91, 396–400, 403–10, 413–15, 418–22 and 424–27.)  Group pleading allegations such as these are patent violations of Rules 8(a) and 9(b), and Travis, like any defendant, should not be forced "to

guess who did what to whom when." *Ingris v. Borough of Caldwell*, No. 14-855, 2015 WL 3613499, at *6 (D.N.J. Aug. 10, 2012) (denying motion to amend complaint asserting claims under RICO and NJRICO).  Roche fails to allege the facts necessary to avoid this guessing game.

Roche's effort to lump all Defendants together represents a conscious effort to hide its lack of factual support for any claim against Travis by making broad, generalized allegations against over two dozen individuals and entities.  However, this type of pleading "undermines the notice pleading regime of Rule 8." *Japhet v. Francis E. Parker Mem'l Home, Inc.*, No. 14-01206, 2014 WL 3809173, at *2 (D.N.J. July 31, 2014) (citing *Twombly*, 550 U.S. at 555); *Ingris*, 2015 WL 3613499, at *6 ("Such speculation is anathema to contemporary pleading standards."). Moreover, the prohibition against group pleading relates with even greater force to the heightened pleading standard under Rule 9(b), which applies to most of Roche's purported claims.  *See Hawk Mountain LLC v. Mirra*, No. 13-2083, 2016 WL 3182778, at *16 (D. Del. June 3, 2016) (finding group pleading allegations "deficient" under Rule 9(b) and unable to support a RICO claim); *Falat v. County of Hunterdon*, No. 12-6804, 2013 WL 1163751, at *3 (D.N.J. Mar. 19, 2013) (holding that, when the complaint named sixteen (16) separate defendants who held different positions, "[p]laintiffs cannot merely state that '*Defendants* did x'—they must specifically allege *which* Defendants engaged in what wrongful conduct").  Because group pleading routinely results in the dismissal of complaints—under either Rule 8(a) or Rule 9(b)—this Court should similarly dismiss Roche's Complaint for this reason alone.  *See*, *e.g.*, *H2O Plus, LLC v. Arch Pers. Care Prods., L.P.*, No. 10-3089, 2011 WL 2038775, at *2 (D.N.J. May 22, 2011) (dismissing claims of fraud and negligent misrepresentation); *Roche Diagnostics Corp.*, 2017 WL 4123050, at *27 (dismissing fraud-based claims).

2.      **This Court has no personal jurisdiction over Travis.**

The Complaint fails to include any allegations sufficient to establish general or specific jurisdiction as to Travis, an Illinois resident.  Because Roche does not allege any facts to support this Court having personal jurisdiction over Travis, the claims against him must be dismissed pursuant to Rule 12(b)(2).

Completely absent from the Complaint is a single allegation to demonstrate that Travis maintained "continuous and systematic" contacts with the State of New Jersey, unrelated to the subject matter of this lawsuit.  *Mellon Bank (East) PSFS, N.A. v. DiVeronica Bros., Inc.*, 983 F.2d 551, 554 (3d Cir. 1992).  Thus, Roche cannot establish general jurisdiction as to Travis.  *See also Cerciello v. Canale*, 563 Fed. App'x 924, 927 n.7 (3d Cir. 2014) (holding that a finding of "general" personal jurisdiction "involves showing significantly more than mere minimum contacts.") (citation and quotation omitted).[4]

Regarding specific jurisdiction, Roche fails to allege how its claims "arose specifically from [Travis'] particular activities in [New Jersey]."  *Mellon Bank (East)*, 983 F.2d at 554.  *See also Rehrer v. Atiyeh*, No. 14-8031, 2015 WL 5680104, at *2 (D.N.J. Sept. 25, 2015) ("Because the existence of specific jurisdiction depends on a link between the defendant's activity and the resulting harm, specific jurisdiction is necessarily claim—and defendant—specific.").  In wholly conclusory fashion, Roche alleges that Travis and the rest of the Board "were expressly aware of Alliance's fraudulent billing practices and approved Alliance's acquisition of Peterson Pharmacy because doing so would improve Alliance's ability to perpetrate and profit from those fraudulent

---

[4] Notably, the Supreme Court has never applied general jurisdiction to nonresident individuals. *Goodyear Dunlop Tires Operations. S.A. v. Brown*, 564 U.S. 915, 924 (2011) ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home.").

practices in New Jersey."  (Compl. ¶ 31.)   However, the Complaint fails to allege any facts to

support this allegation, or to identify any conduct by Travis *in New Jersey*, much less that any

conduct by Travis was purposefully directed "toward the residents of [New Jersey] such that [New

Jersey] can be said to be *the focal point*" of the conduct."  *IMO Indus., Inc. v. Kiekert AG*, 155

F.3d 254, 261 (emphasis added).

      This precise theory for personal jurisdiction was recently asserted by Roche and rejected

by a federal district court in a near-identical case.  *Roche Diagnostics Corp.*¸ 2017 WL 4123050,

at *5–7.  In that case, Roche made similar allegations in Indiana (the state in which Roche has its

headquarters) against various nonresident corporations and individual officers and directors.  *Id.*

at *2.  There the court concluded that Roche failed to allege "any direct contacts" with Indiana by

the moving defendants.  *Id.* at *6.  Instead, the court rejected the same argument for personal

jurisdiction that Roche makes here—namely, that the Defendants "had sufficient contacts with

Indiana because they participated in a fraudulent scheme" in Indiana.  *Id.*  The court instead held

that "Roche fails to make any allegations that clearly allege any wrongful conduct by [the

individual defendants] *in their personal capacities*."  *Id.* (emphasis added).

      The same analysis applies in this case and defeats Roche's argument for personal

jurisdiction against Travis.  Indeed, to the extent Roche alleges any facts concerning Travis, they

were strictly in his capacity as a member of Alliance's Board.  These allegations, without more,

cannot suffice to establish personal jurisdiction.  *See Nicholas v. Saul Stone & Co. LLC*, No. 97-

860, 1998 WL 34111036, at *10 (D.N.J. June 30, 1998) (holding that personal jurisdiction over

individual defendants "does not exist simply because they are agents or employees of organizations

which presumably are amenable to personal jurisdiction in this Court" and, thus, "absent

allegations that the corporate shield is a sham, jurisdiction over the corporation does not subject

9

officers, directors and shareholders of the corporation to personal jurisdiction") (citation omitted); *Victory Int'l (USA) v. Perry Ellis Int'l, Inc.*, No. 07-0375, 2008 WL 65177, at *8 (D.N.J. Jan. 2, 2008) (refusing to "bootstrap jurisdiction" over an individual defendant when allegations are based upon the actions of the company). Because the Complaint focuses on the conduct of Alliance and fails to demonstrate how Travis had any specific contacts with New Jersey relating to the subject matter of this case, Roche cannot establish specific jurisdiction as to any of them.

3.   <u>**Venue is not proper before this Court.**</u>

Because Travis is a nonresident and lives in Illinois—more than 800 miles away from New Jersey—it would be unjust and inequitable to allow this matter to proceed against him here. Significantly, and as confirmed by Roche's own allegations, the only relation that Travis has to this venue is that he was a member of Utah-based Alliance's Board of Directors, which approved of Alliance's acquisition of a single pharmacy based in New Jersey. (*See* Compl. ¶¶ 25–27, 31.) This allegation falls far short of justifying venue in this District, particularly in light of: (i) the fact that neither Roche nor any of the twenty-seven (27) Defendants resides in New Jersey; and (ii) Roche's failure to allege that any substantial events or omissions relating to the claims in the Complaint. *See Bockman v. First Am. Mktg. Corp.*, 459 Fed. App'x 157, 160 (3d Cir. 2012) (holding that Rule 12(b)(3) "favors the defendant in a venue dispute by requiring that the events or omissions supporting a claim be *substantial*") (emphasis added). Moreover, Roche fails to allege any specific facts to show that the actions of Travis—or any of the Defendants, as purported agents of Alliance—took place anywhere other than Alliance's headquarters in Utah. *See C.O. Truxton, Inc. v. Blue Caribe, Inc.*, No. 14-4231, 2014 WL 6883145, at *4-7 (D.N.J. Dec. 5, 2014) (holding that, absent allegations to the contrary, acts or omissions by a company's agents are presumed to have occurred at the company's principal place of business). Accordingly, venue is improper and Roche's Complaint should be dismissed pursuant to Rule 12(b)(3).

4. **Roche cannot sustain its racketeering-related claims against Travis.**

Roche's conclusory allegations against Travis cannot support its RICO claims—a cause of action described as "the litigation equivalent of a thermonuclear device." *Aliev v. Borukhov*, No. 15-6113, 2016 WL 3746562, at *4 (E.D.N.Y. July 8, 2016). "Because the mere assertion of a RICO claim . . . has an almost stigmatizing effect on those named as defendants . . . courts should strive to flush out frivolous RICO allegations at an early stage of the litigation." *Rothberg v. Marger*, No. 11-5497, 2013 WL 1314699, at *10 (D.N.J. Mar. 28, 2013).

Roche's RICO claims against Travis in Counts I and III are deficient for several reasons, and the same principles apply to defeat Roche's NJRICO claims in Counts II and IV. *See*, *e.g.*, *Cetel v. Cmmw. Life Ins. Co.*, 460 F.3d 494, 510 (3d Cir. 2006) ("[T]he New Jersey Supreme Court believe[s] the New Jersey RICO statute was and should be consistent with the federal RICO statute"); *Dist. 1199P Health & Welfare Plan v. Janssen*, 784 F. Supp. 2d 508, 518 n.17 (D.N.J. 2011) (holding that, because the NJRICO and federal RICO statutes are nearly identical, courts analyze them in the same way). First, Roche's purported injury is too remote to establish RICO standing based on an alleged scheme by any of the Defendants, let alone Travis. Second, Roche's allegations fall well short of pleading any specific facts against Travis to support its RICO claims under any standard, and certainly not under Rule 9(b). Finally, Roche's racketeering-related conspiracy claims fails because Roche cannot plead either a substantive RICO violation or any facts demonstrating that Travis entered into an agreement with any of the Other Defendants.

A. **Roche lacks standing to assert any racketeering claims because neither Travis, the Other Defendants nor the alleged conduct directly caused its injuries**.

Roche's own allegations conclusively establish that there is no direct relationship or harm that flows directly between Roche and any of the Defendants, let alone Travis. As a result, Roche

11

did not suffer any direct injury to warrant standing under RICO, and its racketeering claims must be dismissed with prejudice.

Roche has standing to assert a RICO claim only if it is "injured in [its] business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c). When interpreting this statute, the Supreme Court has long required RICO plaintiffs to demonstrate a "direct relation between the injury asserted and the injurious conduct alleged." *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992). Thus, Roche must plausibly allege that the "defendant's violation not only was a 'but for' cause of [its] injury, but the proximate cause as well." *Id.* When "a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries." *Anza v. Ideal Steel Supply Co.*, 547 U.S. 451, 461 (2006). Particularly "in the RICO context, the focus is on the directness of the relationship between the conduct and the harm." *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 12 (2010).

As the Supreme Court held in *Holmes*, there are three primary considerations for the requirement of a directness of relationship between the injury and the alleged wrongful conduct. First, indirect injuries make it difficult "to ascertain the amount of a plaintiff's damages attributable to the violation, as distinct from other, independent factors." 503 U.S. at 269. Second, indirect injuries may present a risk of multiple recoveries, and courts would have to adopt complicated rules and analyses apportioning damages to guard against the risk. *Id.* Third, indirect claims may be unjustified because "directly injured victims can generally be counted on to vindicate the law as private attorneys general." *Id.* at 269-70.

Here, Roche's own allegations demonstrate that the three considerations above weigh in favor of finding that Roche's injuries are indirect. First, the allegations in the Complaint demonstrate that Roche's supposed injuries were not directly caused by Travis or the Other

12

Defendants, but rather flowed between and through a number of non-Defendant entities.  For instance, Roche alleges that Alliance "owned, controlled or were affiliated with a large network of companies used to defraud Roche and other test strip manufacturers." (Compl. ¶ 2.)  Alliance's purchasing entities bought Roche's NFR strips and then sold them to Alliance's pharmacies. (*Id.* ¶ 58.)  The pharmacies dispensed the strips to their beneficiaries (i.e., consumer patients) and sought reimbursement by supposedly submitting false reimbursement claims not to Roche, but to pharmacy-benefit insurance companies and PBMs. (*Id.* ¶¶ 3, 58.)  As Roche itself concedes, the adjudication data was then passed from "pharmacy-benefit insurance companies and PBMs to Roche," and Roche supposedly paid them (and not Alliance) "millions of dollars in rebates" and lost corresponding sales of retail strips. (*Id.* ¶¶ 364, 365, 413.)

The Supreme Court's decision in *Anza* is instructive here.  In *Anza*, the plaintiff alleged that its competitor failed to charge New York sales taxes to cash-paying customers, which allowed the competitor to reduce prices without lowering its profit margin and, as a result, increase its market share to the plaintiff's detriment. *Id.* at 454.  The Court held that the plaintiff's alleged injury was too attenuated to satisfy RICO's standing requirements because the direct victim of the alleged scheme was the State of New York, and not the plaintiff. *Id.* at 458.  Instead, the plaintiff's alleged injuries were caused by "a set of actions (offering lower prices) entirely distinct from the alleged RICO violation (defrauding the State)." *Id.*  The Court elaborated that the plaintiff's purported damages "would require a complex assessment to establish what portion of [the plaintiff's] lost sales were the product of [the competitor's] decreased prices," and held that RICO's direct injury requirement was intended to "prevent these types of intricate, uncertain inquiries from overrunning RICO litigation." *Id.* at 459–60.  *See also Empire Merchs., LLC v. Reliable Churchill LLLP*, 902 F.3d 132, 143-44 (2d Cir. 2018) (affirming the dismissal of the

plaintiffs' complaint after noting the importance of applying skepticism to claims brought by economic competitors and holding that the plaintiff's purported injuries were not directly tied to defendant's conduct, because the plaintiffs' supposed lost sales were "speculative in the extreme" and "businesses lose and gain customers for many reasons") (internal citations quotations omitted).

As in *Anza* and *Empire*, where the plaintiffs were not the direct victims of the alleged RICO scheme, Roche is not the direct victim of the supposed RICO scheme alleged in its Complaint. In fact, Roche fails to allege any direct relationship—contractual or otherwise—with Alliance's network of companies. Moreover, Roche fails to allege any actionable conduct on the part of Travis that is in any way proximately related to the injury Roche attempts to claim. Roche simply cannot demonstrate that it was directly harmed by Alliance's alleged conduct, much less any purportedly "injurious conduct" of Travis. *Holmes*, 503 U.S. at 268. Therefore, it is difficult "to ascertain the amount of [Roche's] damages attributable to the violation, as distinct from other, independent factors." *Id*. at 269.

Regarding the second and third considerations, Roche's own allegations recognize that its indirect injuries would present a risk of multiple recoveries, and the directly injured victims already recovered from Reliance. Specifically, the PBMs—and not Roche—had direct contractual relationships with Alliance's pharmacies, and the PBMs performed the various audits related to the pharmacies' claims adjudications. (Compl. ¶¶ 77, 81, 100, 107–109, 113, 119.) During the course of these audits, the PBMs—and not Roche—would issue chargebacks, withhold payments and/or terminate contracts as they deemed necessary. (*Id*. ¶ 159.) Thus, if anyone, the PBMs would be the direct victims of the purported scheme alleged in Roche's Complaint, and the PBMs already exercised their own recourse. Based on these allegations alone, Roche's RICO claims necessarily involve a "complex assessment" requiring "intricate, uncertain inquiries" to establish

what portion of Roche's lost sales and supposed overpayments of rebates were the product of the alleged scheme. *Anza*, 547 U.S. at 459–60. Indeed, this Court would have to adopt complicated rules and analyses apportioning damages to guard against the risk of multiple recoveries here, while the "directly injured victims" (i.e., the PBMs) already served as their own "private attorneys general" to recover its purported damages from Alliance. *Holmes*, 503 U.S. at 269-70. Because all three of the Supreme Court's considerations in *Holmes* require a finding that there is no "direct relation between the injury asserted and the injurious conduct alleged," Roche lacks standing to assert its RICO claims, and they should be dismissed with prejudice. *Id.* at 268.

**B.    Roche's allegations fail to state RICO-related claims against Travis with the specificity required under Rule 9(b).**

Roche also cannot sustain its RICO claims against Travis because Roche relies on conclusory allegations that fail to establish each element of a RICO cause of action.[5] Critically, because RICO claims are subject to the heightened pleading standard under Rule 9(b), Roche must allege specific facts to establish *each* element of its RICO claim against *each* applicable Defendant, including Travis. *See*, *e.g.*, *Munsif v. Cassel*, 331 Fed. App'x 954, 958 (2009) ("To plead a pattern of racketeering activity, a plaintiff must aver, among other things, that *each defendant* committed at least two acts of prohibited racketeering activity…") (emphasis added); *Synder v. Dietz & Watson, Inc.*, 837 F. Supp. 2d 428, 450 (D.N.J. 2011) (dismissing RICO claims because plaintiff "lumps all three defendants together as having engaged in wrongful conduct without specifying which defendant was responsible for which actions").

---

[5] To state a RICO claim, Roche must allege:  (i) conduct; (ii) of an enterprise; (iii) through a pattern; (iv) of racketeering activity. *Dist. 1199P Health & Welfare Plan*, 784 F. Supp. 2d at 519.

(i)     <u>Roche fails to allege any predicate acts of mail or wire fraud by Travis.</u>

In an attempt to plead "racketeering activity" against Travis, Roche claims that Travis and the Other Defendants engaged in predicate acts of mail or wire fraud.  (Compl. ¶¶ 360–62.)  In order to allege such predicate acts with the requisite specificity under Rule 9(b)'s heightened pleading standard, Roche must show:  (i) the existence of a scheme to defraud; (ii) Travis' knowing participation in the scheme; and (iii) the use of interstate mails or transmission facilities in furtherance of the scheme.  *See Kolar v. Preferred Real Estate Invs., Inc.*, 361 Fed. App'x 354, 362 (3d Cir. 2010).  Importantly, "RICO claims premised on mail or wire fraud must be particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it."  *Id.* at 363.

Here, in addition to the several reasons that Roche's "mail and wire fraud" allegations fail against all Defendants (*see* the Motions to Dismiss filed by the Other Defendants), the few allegations directed to Travis hold no merit whatsoever.  Specifically, Roche's Complaint alleges the existence of just two e-mails from Travis.  (Compl. ¶¶ 266, 271.)  In the first e-mail, dated February 7, 2012, Travis merely asked Defendant Jeff Smith whether he received any audit materials from CVS.  (*Id.* ¶ 266.)  In the second e-mail, dated October 26, 2015, Travis responded to an e-mail from Defendant Koopersmith by stating that, given the elevation of certain allegations to the Board, "the Board will need to seek counsel as how best to address the concerns, ensuring that the Company's practices meet compliance guidelines."  (*Id.* ¶ 271.)

Besides Roche's inability to allege the existence of a scheme to defraud, the communications from Travis upon which Roche relies in its Complaint cannot constitute mail or wire fraud because Roche fails to allege how either communication advances an essential part of the alleged scheme.  *See*, *e.g.*, *Lubart v. Riley & Fanelli, P.C.*, No. 97-6392, 1998 WL 398253, at *3 (E.D. Pa. June 22, 1998) (finding futile plaintiff's request to amend RICO claim and stating the

16

use of a communication must be "incident to an essential part of the scheme, or a step in [the] plot") (quoting *Schmuck v. U.S.*, 489 U.S. 705, 710–11 (1989)).   In fact, the October 26, 2015 e-mail from Travis expressly defeats Roche's claim that Travis was engaged in any kind of fraudulent scheme whatsoever.   To the contrary, Roche's allegations concerning Travis demonstrates that he properly performed as a member of Alliance's Board by taking affirmative measures to ensure Alliance's compliance with all applicable laws.

Roche simply cannot plead *any* specific facts to support its baseless allegation that Travis engaged in mail or wire fraud, let alone a "pattern of racketeering activity" required to state a RICO claim against him.   *See Luzerne Cty. Ret. Bd. v. Makowski*, 627 F. Supp. 2d 506, 545 (M.D. Pa. 2007) (holding that, to establish a pattern of racketeering activity, "the predicate acts must be related to one another (the relationship prong) and pose a threat of continued criminal activity (the continuity prong)").[6]   For these reasons, the allegations related to Travis are patently deficient, and Roche's RICO-related claims against him fail as matter of law.[7]

---

[6] Roche's allegations appear focused on the purported predicate acts of Alliance, and not Travis. However, to state a RICO claim, Alliance cannot serve as both the enterprise and a person at the same time.   *See Varughese v. Robert Wood Johnson Med Sch.*, No. 16-02828, 2017 WL 4270523, at *13 (D.N.J. Sept. 26, 2017) ("A claim that the corporation is the 'person' and the corporation together with its employees and agents is the 'enterprise,' will not withstand a motion to dismiss.").

[7] The same applies for Roche's aiding and abetting claims under RICO and NJRICO.   First, the Third Circuit has "clearly and unequivocally rejected a civil RICO aiding and abetting claim." *Digital Wholesale of N.Y., LLC v. Am. Eagle Trading Group, LLC*, No. 16-3487, 2016 WL 5660462, at *5 (D.N.J. Sept. 29, 2016) (citing *Pa. Ass'n of Edwards Heirs v. Rightenour*, 235 F.3d 839, 844 (3d Cir. 2000)).   While courts have allowed an aiding and abetting claim under NJRICO, Roche fails to allege any facts to show how Travis acted in a "concerted effort" to assist any of the Other Defendants.   *See Miller v. P.G. Lewis & Assoc.*, No. 05-5641, 2007 WL 316446, at *6 (D.N.J. Jan. 30, 2007) (dismissing aiding and abetting claim under NJRICO because the plaintiff failed to allege facts to show "a concerted effort … to assist the existing defendants").

17

(ii)    <u>Roche fails to state racketeering-related conspiracy claims against Travis.</u>

Based entirely on its RICO allegations, Roche also attempts to assert racketeering-related conspiracy claims against Travis (Counts II and IV).  (Compl. ¶¶ 384–392.)  Roche's conspiracy claims fail for several reasons.

First, "[a]ny claim under section 1962(d) based on a conspiracy to violate the other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient."  *Kolar v. Preferred Real Estate Invs., Inc.*, 361 Fed. App'x 354, 366 (3d Cir. 2010).  Second, Roche's conspiracy claims fail because Travis was acting within the scope of his role as a member of Alliance's Board.  *See*, *e.g.*, *Reese v. Horizon Blue Cross Blue Shield of N.J.*, No. 08-1382, 2008 WL 5188853, at *3 (D.N.J. Dec. 10, 2008) ("Employees of a corporation acting within the scope of their employment cannot conspire with a corporation or with each other, as they are all considered one entity.").  Third, Roche alleges no facts in its Complaint to show that Travis and any Other Defendant member of the alleged conspiracy had an agreement to engage in any purported predicate act.  Instead, Roche relies on conclusory allegations and group pleading, baselessly asserting that such allegations demonstrate the existence of an agreement to participate in the alleged conspiracy.  As noted above, group pleading and conclusory allegations cannot suffice to state a claim.  *See also Smith v. Jones, Gregg, Creehan & Gerace*, No. 08-365, 2008 WL 5129916, at *7 (W.D. Pa. Dec. 5, 2008) (dismissing complaint where it "merely contains sweeping generalizations as to an alleged conspiracy" and broadly claims that all defendants "agreed to engage in a pattern of racketeering activity"); *Emcore Corp. v. PricewaterhouseCoopers LLP*, 102 F. Supp. 2d 237, 264 (D.N.J. 2000) (ruling that the plaintiff "'must set forth allegations that address the period of the conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose,' as well as an

agreement to commit predicate acts and 'knowledge that the acts were part of a pattern of racketeering activity'"). Thus, Roche cannot state either of its conspiracy claims against Travis.

**5.**     **Roche cannot state its remaining common law claims against Travis.**

Similar to Roche's inability to assert any RICO-related claims against Travis, it cannot state its remaining claims against him for fraud (Count V), unjust enrichment (Count VI), negligent misrepresentation (Count VII) and tortious interference (Count VIII).   Setting aside Roche's improper group pleading and conclusory allegations, the very few allegations specifically related to Travis do not satisfy the applicable pleading requirements.   Roche cannot rely on Travis' role as an external director of Alliance in order to create an assumption that he engaged in any actionable conduct.   *See Trisvan v. Heyman*, 305 F. Supp. 3d 381, 407 (E.D.N.Y. 2018) ("Plaintiff attributed the alleged misconduct to [individual corporate officers] under the *assumption* that they must have been complicit based on their managerial positions.   [The officers] cannot be held liable for any claim based on such bare assertions.").

The deficiencies of each of the remaining claims are addressed in greater detail below. However, the Court need not retain jurisdiction to evaluate these individual state law claims in light of Roche's failure to allege a viable RICO-related claim.   Because the Complaint does not allege diversity jurisdiction (*see* Compl. ¶ 24) and because Roche fails to state a federal claim, this Court may (and should) decline to exercise supplemental jurisdiction over Roche's state law claims.   *See* 28 U.S.C. § 1367(c)(3); *Allstate N.J. Ins. Co. v. Summit Pharm., Inc.*, No. 13-5809, 2014 WL 1767528, at \*13 (D.N.J. May 2, 2014) (declining to exercise supplemental jurisdiction over state law claims following dismissal of RICO claim).

**A.**     **Roche's fraud-related claims against Travis fail on the face of the pleadings.**

Roche's fifth cause of action is an amalgamation of three separate claims—fraud, aiding and abetting fraud and conspiracy to commit fraud—masquerading as a single cause of action.

(Compl. ¶¶ 402–11.)  As with its RICO-related claims, Roche fails to allege facts with sufficient particularity to support any of its fraud-related claims.[8]

As an initial matter, it is black-letter law that Roche must plead all of its fraud-related claims with particularity under Rule 9(b).  *See Naporano Iron & Metal Co. v. Am. Crane Corp.*, 79 F. Supp. 2d 494, 510 (D.N.J. 1999) (holding that Rule 9(b) "requires that all allegations of fraud state the circumstances constitute the fraud 'with particularity'").  As noted above, Rule 9(b)'s standard demands that Roche "plead the who, what, when, where and how:  the first paragraph of any newspaper story."  *KBZ Commc'ns Inc. v. CBE Techs. LLC*, 634 Fed. App'x 908, 912 n.7 (3d Cir. 2015).  Roche falls far short of this standard and principally relies upon conclusory allegations to lump all of the Defendants together.  However, Roche's tactic of group pleading allegations against all "Defendants" is improper, especially under the heightened pleading standards of Rule 9(b).  *Arlandson v. Hartz Mountain Corp.*, 792 F. Supp. 2d 691, 710 (D.N.J. 2011) ("Collectivized allegations that generally allege fraud as against multiple defendants, without informing each defendant as to the specific fraudulent acts he or she is alleged to have committed, do not satisfy Rule 9(b).") (quotation omitted); *Zodda v. Nat'l Union Fire Ins. Co.*, No. 13-7738, 2015 WL 926221, at *9 (D.N.J. Mar. 4, 2015) ("When multiple defendants are involved the complaint must plead with particularity by specifying the allegations of fraud applying to each defendant.").

With respect to Roche's claim against Travis for fraud, the claim fails because Roche does not allege that Travis made a single representation to Roche, or anyone else, that was materially

---

[8] To state a claim for fraud, Roche must allege:  (i) a material false representation; (ii) made with defendant's knowledge of its falsity; (iii) with the intention that the other party rely on the representation; (iv) reasonable reliance on that representation by plaintiff; and (v) injury as a result of the reliance.  *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007).

false.  Nor does Roche allege that it reasonably relied upon any representation made by Travis. *See  Guers v. Jones Lang LaSalle Am., Inc.*, No. 13-7734, 2014 WL 4793021, at *5 (D.N.J. Sept. 25, 2014) (dismissing fraud claim because the plaintiff "has not provided sufficient factual allegations to show that Plaintiff reasonably relied on the misrepresentation").  Rather, after scraping away Roche's conclusory and unsupported allegations against "Defendants" generally, the remaining allegations make clear that the supposedly false statements here—providing incorrect National Drug Codes ("NDCs")—were made by Alliance's pharmacies (i.e., as the sellers of the test strips), and not by Travis or the Other Defendants.  (*See*, *e.g.*, Compl. ¶ 50 ("the seller adjudicates the claim for reimbursement by submitting the NDC of the dispensed product to the patient's insurance").)  In sharp contrast, there is no allegation that Travis ever provided the incorrect NDCs, or any other supposedly false representations, to anyone.[9]

Regarding Roche's claim against Travis for aiding and abetting fraud, the Complaint fails to state a claim because none of Travis' alleged conduct provided substantial assistance with regard to any purported fraud.[10]  According to Roche, the bulk of Travis' conduct was passive in that he: (i) received memos (Compl. ¶¶ 89, 181); (ii) received e-mails (*id*. ¶¶ 152, 154, 180, 244–45, 254, 256, 269–70); (iii) engaged in discussions with other outside directors (*id*. ¶ 176); and (iv) received presentations (*id*. ¶ 232).  Setting aside the improper group pleading and the vague allegations of passive conduct, the handful of specific allegations concerning acts or omissions by Travis

---

[9] Remarkably, this obvious pleading deficiency is well known to Roche, as the United States District Court for the Southern District of Indiana dismissed Roche's similar claims for the same defect.  *See Roche Diagnostics Corp.*, 2017 WL 4123050, at *8.

[10] "To plead aiding and abetting fraud, '(1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; [and] (3) the defendant must knowingly and substantially assist the principal violation.'"  *Fagan v. Fischer*, No. 14-7013, 2016 WL 347318, at *15 (D.N.J. Jan. 28, 2016) (quotation omitted).

21

highlight the limited nature of his alleged conduct, such as:  (a) signing a Unit Purchase Agreement (Compl. ¶ 265); (b) inquiring about the receipt of audit materials from a PBM (*id*. ¶ 266); and (c) stating that Alliance's Board should "seek counsel" regarding allegations of improper conduct (*id*. ¶ 271).  None of this conduct rises to the level of providing knowing and substantial assistance with respect to any fraudulent conduct.  *See*, *e.g.*, *Sander v. HR Trust Services, LLC*, No. 08-1383, 2009 WL 3055368, at *4 (D.N.J. Sept. 21, 2009) (dismissing aiding and abetting claim because the plaintiff "failed to allege with particularity that Moving Defendants committed a wrongful act, were aware of any illegality, or provided knowing and substantial assistance").

Finally, Roche's claim against Travis for conspiracy to commit fraud must fail because there is no viable underlying claim for fraud.[11]  "Under New Jersey law, a claim for civil conspiracy cannot survive without a viable underlying tort."  *Dist. 1199P Health & Welfare Plan*, 784 F. Supp. 2d at 533.  Here, Roche cannot plead an underlying fraud claim and, as a result, the related conspiracy claim also fails as a matter of law.  *See Cafaro v. HMC*, No. 07-2793, 2008 WL 4224801, at *8 (D.N.J. Sept. 5, 2008) ("Having already dismissed Plaintiffs' common law fraud claim for failure to comply with Rules 8(a) and 9(b), Plaintiffs' claim for civil conspiracy must likewise be dismissed for the same reasons.").

### B.    Roche cannot assert an unjust enrichment claim against Travis.

Roche next attempts to state an unjust enrichment claim in Count VI.  (Compl. ¶¶ 412–16.) The core of an unjust enrichment claim is the plaintiff's expected remuneration from the defendant

---

[11] In order to state a civil conspiracy claim, Roche must allege "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage."  *Am. Corp. Soc'y v. Valley Forge Ins. Co.*, 424 Fed. App'x 86, 90 (3d Cir. 2011).

at the time plaintiff performed or conferred a benefit on the defendant.[12]  *Maniscalco*, 627 F. Supp.

2d at 505.  Here, Roche fails to allege the facts necessary to establish the basic tenants of this tort.

In support of its claim for unjust enrichment, Roche alleges that, due to the conduct of "the

Alliance Pharmacies," Roche paid various unnamed insurers "millions of dollars in rebates."

(Compl. ¶ 413.)  Roche's legal theory is fundamentally flawed.  Nowhere in the Complaint does

Roche allege that it conferred any benefit on Travis.  This omission is not inadvertent.  Rather,

these critical allegations do not exist because there is no relationship between Travis and Roche.

However, under New Jersey law, Roche is required to allege the existence of "a sufficiently direct

relationship with [Travis] to support the claim."  *Arlandson*, 792 F. Supp. 2d at 711; *Maniscalco*,

627 F. Supp. 2d at 506 ("New Jersey law requires a direct relationship between the parties.").

The presence of a single intermediary between the plaintiff and defendant dooms an unjust

enrichment claim, as the relationship between the parties is not sufficiently direct.  *Cooper v.

Samsung Elecs. Am., Inc.*, No. 07-3853, 2008 WL 4513924, at *10 (D.N.J. Sept. 30, 2008).  Here,

Roche alleges a convoluted series of disconnected transactions involving Roche, various unnamed

PBMs and insurance companies, unknown "third-party diverters," "Alliance Pharmacies" and

individual recipients of the test strips.  At bottom, nowhere does Roche allege *any* relationship

between itself and Travis, let alone the "sufficiently direct relationship" required to state a claim

for unjust enrichment.  Roche's failure to do so is fatal, and requires dismissal of Roche's unjust

enrichment claim against Travis.  *Hemy v. Perdue Farms, Inc.*, No. 11-888, 2011 WL 6002463, at

---

[12] To state a claim against Travis for unjust enrichment, Roche must allege that:  (i) Travis received a benefit; (ii) at Roche's expense; (iii) under circumstances that would make it unjust for Travis to retain the benefit without paying for it.  *Maniscalco v. Brother Int'l Corp. (USA)*, 627 F. Supp. 2d 494, 505 (D.N.J. 2009).

*22–23 (D.N.J. Nov. 30, 2011) (dismissing unjust enrichment claim with prejudice because plaintiff failed to plead a direct relationship).

### C.      Roche's negligent misrepresentation claim fails against Travis.

In Count VII of its Complaint, Roche attempts to plead a negligent misrepresentation claim.  (Compl. ¶¶ 417–22.)  Because Roche fails to allege two critical elements, its negligent misrepresentation claim should be dismissed on its face.[13]

First, Roche fails to allege that Travis "negligently provided false information."  Instead, the Complaint identifies the Alliance Pharmacies as the sellers of the test strips and the entities that allegedly made the false statements at issue in this case.  (*See*, *e.g.*, Compl. ¶ 50.)  The Complaint fails to include a single instance of Travis making a single statement that contained false information to anyone, let alone Roche.[14]

Second, even if Roche alleged a misrepresentation by Travis (and, to be clear, it has not done so), such a misrepresentation would not give rise to a claim unless a "special relationship" between Roche and Travis existed which gave rise to a "duty of care."  *Diebold, Inc. v. Cont'l Cas. Co.*, No. 07-1991, 2008 WL 1372948, at *7 (D.N.J. April 10, 2008) (quoting *People Express Airlines v. Consol. Rail Corp.*, 100 N.J. 246, 256–57 (1985)).  Here, *no relationship* exists between

---

[13] To state a claim for negligent misrepresentation, Roche must allege that:  (i) Travis negligently provided false information; (ii) Roche was a reasonably foreseeable recipient of that information; (iii) Roche justifiably relied on the information; and (iv) the false statements were a proximate cause of Roche's damages.  *New York Pipeline Tech. Contractors, LLC v. Sabena Plumbing & Heating Co.*, No. 10-148, 2012 WL 209349, at *4 (D.N.J. Jan. 24, 2012).

[14] While this omission is fatal to Roche's claim under Rule 8(a), it is all the more glaring under the heightened pleading standard of Rule 9(b).  *See Rapid Models & Prototypes, Inc. v. Innovated Sols.*, 71 F. Supp. 3d 492, 505–06 (D.N.J. 2014) (identifying a disagreement among courts in this District regarding the appropriate pleading standard for a negligent misrepresentation claim).

24

Roche and Travis, let alone a "special relationship" giving rise to a "duty of care." Therefore, Roche's negligent misrepresentation claim against Travis fails as a matter of law.

### D.    Roche's tortious interference claim against Travis fails on its face.

In its eighth and final claim, Roche broadly alleges that all "Defendants" tortiously interfered with Roche's prospective business relationships. (Compl. ¶¶ 423–27.) This claim fails because Roche has not, and cannot, plead facts sufficient to satisfy the elements of a tortious interference claim in three critical respects.[15] First, Roche fails to allege any facts indicating that it has a continuing or prospective relationship with any particular customer. Instead, Roche merely alleges the vague and unsupported conclusion that the conduct of the Alliance Pharmacies "deprived Roche of the sale of millions of dollars' worth of retail strips." (Compl. ¶ 425.) Roche's claim cannot survive because Roche fails to identify anyone with whom it would have entered into business. *See Eli Lilly & Co.*, 23 F. Supp. 2d at 494 (dismissing tortious interference claim where plaintiff did not allege existing or potential business relationship); *Trans USA Prods. v. Howard Berger Co.*, No. 07-5924, 2008 WL 3154753, at *8 (D.N.J. Aug. 4, 2008) (dismissing tortious interference claim because plaintiff failed to "allege that it had a reasonable expectation in a continuing business relationship with certain customers").

Second, the Complaint is utterly devoid of any allegation that any purported interference by Travis was performed intentionally or with malice. Indeed, Roche has failed to allege any specific instance in which Travis interfered with any relationship between Roche and a third party. For this additional reason, this defective claim must be dismissed. *See Dana Transp., Inc. v.*

---

[15] To state a claim for tortious interference, Roche must allege that: (i) it had a reasonable expectation of an economic benefit; (ii) Travis knew of Roche's expectancy; (iii) Travis intentionally and maliciously interfered with this expectancy; (iv) there was a reasonable probability that Roche would have realized the economic benefit in the absence of interference; and (v) Roche suffered injury as a result of Travis' conduct. *Eli Lilly & Co. v. Roussel Corp.*, 23 F. Supp. 2d 460, 493–94 (D.N.J. 1998).

*Ableco Fin., LLC*, No. 04-2781, 2005 WL 2000152, at *5 (D.N.J. Aug. 17, 2005) (claim dismissed because plaintiff failed to allege specific lost business opportunities); *Badrinauth v. Metlife Corp.*, No. 04-2552, 2006 WL 288098, at *5 (D.N.J. Aug. 17, 2005) (dismissing tortious interference claim where no specific allegations of interference were made).

Finally, Roche has not asserted any factual allegations to suggest that, but for Travis' conduct (whatever that may be), it was reasonably probable that Roche would have been awarded a specific contract or other economic advantage. Rather, Roche relies upon the mere allegation of overpaid rebates and lost business. (Compl. ¶ 425.) Roche's vague and conclusory allegation is not sufficient to state a claim for tortious interference. *See Trans USA Prods.*, 2008 WL 3154753, at *8 ("Plaintiff cannot sustain a tortious interference cause of action bases solely on the loss of customers."); *Eli Lilly*, 23 F. Supp. 2d at 494 (dismissing a tortious interference claim because "a mere allegation of lost business does not suffice."). For these reasons, this Court should dismiss Roche's tortious interference claim against Travis as a matter of law.

## CONCLUSION

As set forth herein and in the Other Defendants' Motions to Dismiss, which Travis joins and incorporates in full, Travis respectfully submits that his Motion to Dismiss should be granted because Roche has failed to allege sufficient facts in the Complaint to establish: (i) the existence of personal jurisdiction over him; (ii) that venue in the District of New Jersey is proper; and (iii) any of the claims for relief. Travis therefore requests that this Court dismiss Roche's Complaint, with prejudice, pursuant to Rules 12(b)(2), 12(b)(3) and 12(b)(6).

Dated: June 4, 2019

Respectfully submitted,

VEDDER PRICE P.C.

By:  _s/Daniel C. Green_
     Daniel C. Green
     Ashley B. Huddleston
     dgreen@vedderprice.com
     ahuddleston@vedderprice.com
     1633 Broadway, 31st Floor
     New York, New York 10019
     T: + 1 212 407 7700
     F: + 1 212 407 7799

     Brian W. Ledebuhr (admitted *pro hac vice*)
     Thomas P. Cimino, Jr. (admitted *pro hac vice*)
     bledebuhr@vedderprice.com
     tcimino@vedderprice.com
     222 North LaSalle Street
     Chicago, Illinois 60601
     T: +1 312 609 7500
     F: +1 312 609 5005

     *Attorneys for Defendant TRAVIS HUGHES*