# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROCHE DIAGNOSTICS CORP. and ROCHE DIABETES CARE, INC.,<br><br>                                        Plaintiffs,<br><br>vs.<br><br>JEFFREY C. SMITH; STEVEN L. HADLOCK; SAHILY PAOLINE; DAVID GRANT; JUSTIN LEAVITT; BLAINE SMITH; TRAVIS HUGHES; ALISON WISTNER; ADAM KOOPERSMITH; LEE H. ROSEBUSH; ZB, N.A.; HUGHES & COMPANY; HUGHES & COMPANY INVESTMENT PARTNERS, LLC; KESMAN HUGHES & COMPANY, LLC; HS MEDSOURCE HOLDCO, LLC; MERCATO MANAGEMENT, LLC; MERCATO PARTNERS, LLC; MERCATO PARTNERS GROWTH II GP, LLC; MERCATO PARTNERS GROWTH II, L.P.; MERCATO PARTNERS GROWTH AFFILIATES II, L.P.; MERCATO PARTNERS AI II, L.P.; MERCATO PARTNERS INGRAM, LLC; MERCATO PARTNERS INGRAM CO-INVEST, LLC; JABODON PT COMPANY; PRITZKER GROUP VENTURE CAPITAL LLC; NWV-ALLIANCE LLC; and NWV-ALLIANCE-2LL,<br><br>                                        Defendants. | Case No. 2:19-CV-08761-CCC-CLW<br><br><br>Motion Day:     April 6, 2020<br><br><br>**ORAL ARGUMENT REQUESTED** |

---

## DEFENDANT LEE ROSEBUSH'S BRIEF IN SUPPORT OF HIS MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

---

**MARGOLIS EDELSTEIN**
Paul A. Carbon, Esq.
Attorney ID: 02440-1995
400 Connell Drive, Suite 5400
Berkeley Heights, NJ  07922-2775
(908) 790-1401
pcarbon@margolisedelstein.com
*Attorneys for Defendant, Lee H. Rosebush*

**ROBERTS  MARKEL  WEINBERG  BUTLER
HAILEY PC**
Rick V. Anderson, Esq.
*Pro Hac Vice Counsel*
Fed. No. 986458
TBA No. 24159047
Caitlin E. Booker, Esq.
*Pro Hac Vice Counsel*
Fed. No. 1882750
TBA No. 24085212
2800 Post Oak Boulevard, 57th Floor
Houston, TX 77056
Tel: (713) 840-1666
Fax: (713) 840-9404
randerson@rmwbh.com
cbooker@rmwbh.com
*Attorneys for Defendant, Lee H. Rosebush*

**On the Brief:** Rick V. Anderson, Esq.
                Caitlin E. Booker, Esq.
                Paul A. Carbon, Esq.

**<u>TABLE OF CONTENTS</u>**

**Page**

TABLE OF AUTHORITIES……………………………………………………………...ii

PRELIMINARY STATEMENT.................................................................................... 1

FACTUAL BACKGROUND ......................................................................................... 2

     A.     The Alleged Scheme ............................................................................ 2

     B.     Allegations Against Lee Rosebush ..................................................... 3

     C.     Allegations as to Personal Jurisdiction and Venue ............................. 4

LEGAL ARGUMENT ................................................................................................... 5

I.     ROCHE FAILS TO ALLEGE FACTS SUFFICIENT TO STATE A RICO
CLAIM................................................................................................................ 5

II.    THE COURT LACKS PERSONAL JURISDICTION OVER LEE
ROSEBUSH........................................................................................................ 7

     A.     General Jurisdiction Over Lee Rosebush is Lacking Because
Plaintiffs Fail to Allege That Rosebush Had Continuous and
Systematic Contacts with New Jersey ................................................ 8

     B.     Plaintiff's Complaint Fails To Allege That They Had Sufficient
Minimum Contacts With New Jersey ................................................. 9

III.   THE DISTRICT OF NEW JERSEY IS AN IMPROPER VENUE ............................... 11

IV.   ROCHE'S COMMON LAWS CLAIMS FAIL TO STATE A CLAIM ......................... 13

     A.     Plaintiffs' Fraud-Based Claims Lack Particularity. ............................. 13

     B.     The Court Should Dismiss Plaintiffs' Claim for Unjust Enrichment. ................. 15

     C.     Plaintiffs' Claim for Negligent Misrepresentation Should be
Dismissed ........................................................................................... 16

     D.     Plaintiffs' Claim for Tortious Interference with Prospective
Business Relations Should be Dismissed ............................................ 18

CONCLUSION.............................................................................................................. 19

i

## TABLE OF AUTHORITIES

**Cases**                                                                                 **Page(s)**

*Allstate N.J. Ins. Co. v. Summit Pharm., Inc.*,
   No. 13-5809, 2014 WL 1767528, at *13 (D.N.J. May 2, 2014).................................................7

*Ameripay, LLC v. Ameripay Payroll, Ltd.*,
   334 F. Supp. 2d 629 (D.N.J. 2004) .....................................................................................8

*Arlandson v. Hartz Mt. Corp.*,
   792 F. Supp. 2d 691 (D.N.J. 2011) ..................................................................................14

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)........................................................................................................13

*Badrinauth v. Metlife Corp.*,
   No. 04-2552, 2006 WL 288098, at *5 (D.N.J. Aug. 17, 2005) .............................................17

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007).......................................................................................................13

*C.O. Truxton, Inc. v. Blue Caribe, Inc.*,
   2014 WL 6883145 (D.N.J. Dec. 5, 2014) ........................................................................12

*CLP Packaging Solutions, Inc. v. Sports Pouch Beverage Co., Inc.*,
   2008 WL 2095774 ........................................................................................................12

*Cooper v. Samsung Elec.*,
   2008 WL 4513924 (D.N.J. Sept. 29, 2008) .....................................................................14

*Cottman Transmission Systems, Inc. v. Martino*,
   36 F.3d 291 (3d Cir. 1994)..............................................................................................12

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014).........................................................................................................8

*Digital Wholesale of New York, LLC v. Am. Eagle Trading Group, LLC*,
   16-3487, 2016 WL 5660462 (D.N.J. Sept. 29, 2016).............................................................7

*Dist 1199P Health and Welfare Plan v. Janssen, L.P.*,
   784 F. Supp. 2d 508 (D.N.J. 2011) ....................................................................................6

*Eli Lilly & Co. v. Roussel Corp.*,
   23 F. Supp. 2d 460, 494 (D.N.J. 1998) ..............................................................................7

*Emcore Corp. v. Pricewaterhouse Coopers LLP*,
   102 F. Supp. 2d 237 (D.N.J. 2000) ..................................................................7

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
   466 U.S. 408 (1984)...................................................................................8, 9

*Hemy v. Perdue Farms, Inc.*,
   2011 WL 6002463 (D.N.J. Nov. 30, 2011) ..................................................15

*Henderson v. Volvo Cars of N. Am., LLC*,
   2010 WL 2925913 (D.N.J. July 21, 2010)..............................................15, 16

*In re K-Dur Antitrust Litig.*,
   338 F. Supp. 2d 517 (D.N.J. 2007) ............................................................14

*Keeton v. Hustler Magazine, Inc.*,
   465 U.S. 770 (1984)....................................................................................9

*Kolar v. Preferred Real Estate Invs., Inc.*,
   361 Fed. App'x 354, 366 (3d Cir. 2010).....................................................6

*Kronfeld v. First Jersey Nat. Bank*,
   638 F. Supp. 1454 (D.N.J. 1986) ..............................................................15

*Lum v. Bank of America*,
   361 F.3d 217 (3d Cir. 2004)..................................................................6, 13

*Miller v. Burt*,
   2019 WL1219977 (3d Cir. Mar. 14, 2019) ..............................................7

*Morse v. Lower Merion Sch. Dist.*,
   132 F.3d 902 (3d Cir. 1997).......................................................................13

*Naporano Iron & Metal Co. v. American Crane Corp.*,
   79 F. Supp. 2d 494 (D.N.J. 2011) .........................................................6, 14

*Nelson v. Xacta 3000 Inc.*,
   2009 WL 4119176 (D.N.J. Nov. 24, 2009) ..............................................14

*O'Connor v. Sandy Lane Hotel Co., Ltd.*,
   496 F.3d 312 (3d. Cir. 2007)......................................................................9

*People Express Airlines v. Consol. Rail Corp.*,
   100 N.J. 246 (1985) ..................................................................................16

*Phillips v. County of Allegheny*,
   515 F.3d 224 (3d Cir. 2008).......................................................................13

*Printing Mart-Morristown v. Sharp Elec. Corp.*,
    116 N.J. 739 (N.J. 1989) ...........................................................................17

*Reese v. Horizon Blue Cross Blue Shield of N.J.*,
    Civ. 08-1382, 2008 WL 5188853, at *3 (D.N.J. Dec. 10, 2008) ................................6

*Reliance Steel Prods. Co. v. Watson, Ess, Marshall & Enggas*,
    675 F.2d 587 (3d. Cir. 1982).......................................................................8

*Roche Diagnostics Corp. v. Binson's Hosp. Supplies, Inc.*,
    No. 1:17-CV-00949, 2017 WL 4123050 (S.D. Ind. Sept. 18, 2017)................................10, 11

*S. Broward Hosp. Dist. v. MedQuist Inc.*,
    516 F. Supp. 2d 370 (D.N.J.), *aff'd in part*, 258 F. App'x 466 (3d Cir. 2007).......................16

*In re Schering-Plough Crop. Intron/Temodar Consumer Class Action*,
    2009 WL 2043604 (D.N.J. July 10, 2009) ...............................................................15

*Smith v. Jones, Gregg, Creehan & Gerace*,
    No. 2:08-cv-365, 2008 WL 5129916, at *7 (W.D. Pa. Dec. 5, 2008) .....................................6

*Snyder v. Dietz & Watson, Inc.*,
    837 F. Supp. 2d 428 (D.N.J. 2011) ...................................................................6

*Snyder v. Farnam Companies, Inc.*,
    792 F. Supp. 2d 712 (D.N.J. 2011) ...................................................................15

*Stranahan Gear Co., Inc. v. NL Industries, Inc.*,
    800 F.2d 53 (3d Cir. 1986)..........................................................................10

*Torres-Hernandez v. CVT Prepaid Sols., Inc.*,
    No. 3:08-CV-1057-FLW, 2008 WL 5381227, at *9 (D.N.J. Dec. 17, 2008) .........................14

*Trans USA Prods. v. Howard Berger Co.*,
    No. 07-5924, 2008 WL 3154753, at *8 (D.N.J. Aug. 4, 2008) .................................17

*Vibra-Tech Engineers, Inc. v. Kavalek*,
    849 F. Supp. 2d 462 (D.N.J. 2012) ...................................................................17

*Victory Int'l (USA) Inc. v. Perry Ellis Int'l, Inc.*,
    No. CIV.A. 07-0375WHW, 2008 WL 65177 (D.N.J. Jan. 2, 2008)......................................11

*Zodda v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*,
    No. CIV. 13-7738 FSH, 2015 WL 926221 (D.N.J. Mar. 4, 2015) .........................................13

**Statutes**

18 U.S.C. § 1961(1) and 1962(c) ...............................................................................6

28 U.S.C. § 1367(c)(3) ........................................................................................7

28 U.S.C. §1406(a), (b) ......................................................................................11

28 U.S.C. §1391(b)(1) ........................................................................................11

28 U.S.C. §1391(b)(2) ........................................................................................11

**Other Authorities**

Fed. R. Civ. P. 8(a) ............................................................................... 13-14, 16

Fed. R. Civ. P. 12(b)(6) .....................................................................................12

Fed. R. Civ. P. 9(b) ..................................................................................... *passim*

Pursuant to Federal Rules of Civil Procedure 12(b)(6), 12(b)(3) and 12(b)(6), defendant Lee Rosebush respectfully submits this memorandum of law in support of his motion to dismiss Plaintiffs Roche Diagnostic Corp. and Roche Diabetes Care, Inc.'s (collectively, "Plaintiffs" or "Roche") First Amended Complaint ("First Amended Complaint").

## PRELIMINARY STATEMENT

The Roche First Amended Complaint details an alleged scheme by which subsidiaries of Alliance Medical Holdings, LLC (Alliance) purchased products from third-parties that were manufactured by Plaintiffs, then sold at retail with reimbursements from pharmacy benefit managers (PBMs).  Plaintiffs allege that they were damaged by this supposed scheme due to their own exercise of making kickbacks to PBMs for every retail sale in order to keep Roche's products on the PBMs' preferred list.  Plaintiffs now seek to recover the bribes they paid to their PBMs from a non-executive director of Alliance who served a limited five (5) month tenure on Alliance's board in 2016 without any compensation.  As explained herein, and briefs submitted by the other defendants,[1] Plaintiffs cannot make a RICO claim or the various misguided state law claims asserted against Lee Rosebush.  Respectfully, this Court lacks personal jurisdiction over Lee Rosebush, and this is the wrong venue for resolution of this dispute.

---

[1] Lee Rosebush joins in, and incorporate herein by reference, the briefs submitted by Travis Hughes, Sahily Paoline, Steven Hadlock, Blane Smith, Zions Bancorporation N.A.,   HS Medsource Holdco, LLC, Kesman Hughes & Company, LLC, Hughes & Company, and Hughes & Company Investment Partners, LLC; (2) "Mercato Partners" – Mercato Management, LLC, Mercato Partners, LLC, Mercato Partners Growth II GP, LLC, Mercato Partners Growth II, L.P., Mercato Partners Growth Affiliates II, L.P., Mercato Partners AI II, L.P., Mercato Partners Ingram, LLC, and Mercato Partners Ingram Co-Invest, LLC; and (3) the "Pritzker Group" – Jabodon PT Company, Pritzker Group Venture Capital LLC, NWV-Alliance LLC, and NWV-Alliance-2 LLC, Alison Wistner and Adam Koopersmith.

## FACTUAL BACKGROUND[2]

**A.      The Alleged Scheme.**

According to the First Amended Complaint, Roche manufactures diabetic testing strips which it sells at different prices depending on the intended consumer. The strips that were intended to be sold to people without insurance, or with insurance that provides a pharmacy benefit, the strips were sold to wholesalers "at list prices ranging from about $51.25 to $78.07 per 50-strip vial." (First Am. Compl. at ¶ 50.) The wholesalers then mark-up the price and sell the retail strips to retail pharmacies. (*Id.*)  Pursuant to the contracts between Roche and the PBMs, Roche would then pay the PBM a rebate between $30-70 per box when the PBM reimbursed a pharmacy for retail strips on behalf of an insured patient. (*Id.*)

Roche sells these same diabetic testing strips at a lower list price if they are intended to be sold to a consumer with insurance that provides a durable medical equipment ("DME") benefit. These strips "are packaged and labeled as 'not for retail sale' (or 'NFR')" and sold to mail-order DME distributors, (*id.* ¶ 48) "for under $20 per 50-strip vial," (*id.* ¶ 51).  The mail-order DME distributor then marks them up and ships them to consumers with a DME insurance benefit.  Roche does not pay rebates to PBMs on NFR strips sold under a DME benefit. (*Id.* ¶ 51.) Therefore, the end result is that Roche makes approximately the same amount of money on sales of NFR strips as it does on retail strips after the rebates are paid.

Roche's First Amended Complaint alleges that Alliance acquired NFR strips and dispensed them through a network of pharmacies to consumers with pharmacy-benefit insurance. (*Id.* ¶ 63.) The First Amended Complaint alleges that Plaintiffs suffered a loss each time it paid a rebate to the PBM for what were actually NFR strips "because the rebate that Roche pays on each claim for

---

[2] The facts herein are taken from the Complaint and assumed true for argument of this motion.

a box of retail strips is higher than the total price that Roche receives on the sale of a box of NFR strips." (*Id.* ¶ 56.)

Essentially, Roche alleges that Alliance indirectly caused Plaintiffs to pay rebates to PBMs that they should not have paid.  Nevertheless, despite Alliance's bankrupt status, Plaintiffs now name more than two dozen defendants who were former officers, outside directors, lenders and investors in Alliance and attempts to hold them liable under the federal and New Jersey RICO statutes, as well as for common law fraud, unjust enrichment, negligent misrepresentation, and tortious interference with prospective business relations (*id.* ¶¶ 387-460).

**B.    Allegations Relating to Lee Rosebush.**

Defendant Lee Rosebush is alleged to be a "Maryland resident," and "director of Alliance." (First Am. Compl. at ¶ 19).  Although the First Amended Complaint overflows with generalized and unsupported allegations that Rosebush was aware of and approved the purported fraudulent activity at Alliance, such conclusory allegations are insufficient to state a claim as described further herein.  At most, the First Amended Complaint alleges that Rosebush (and the other outside directors) were "aware" that claims for NFR test strips were being submitted for reimbursement under the retail rate and failed to stop the practice. Instead, Rosebush is alleged to have approved the company's continued operations, including acquisition of a pharmacy in New Jersey.

Specifically, Roche alleges that Rosebush allegedly learned of investigations relating to Alliance. (First Am. Compl. at ¶¶ 298, 300).  Roche also alleges the Rosebush was informed of a "draft First Amended Complaint … alleging fraud and RICO." (First Am. Compl. at ¶302). In 2015, Rosebush allegedly learned from an employee that Alliance "had a practice of submitting fraudulent insurance claims," approved a funding plan that "would help expand and conceal Defendants fraudulent enterprise," and "did not disclose Alliance's fraud to anyone." (*Id.* at ¶¶ 298, 306, 307.)

The only affirmative action that Rosebush is alleged to have taken in support of the purported scheme to defraud is that he negotiated "to secure a contract for the Alliance-owned New Life Pharmacy." (*Id*. at ¶ 299).  Without offering any support or explanation, Plaintiffs allege that the "Director Defendants," including Rosebush, "approved Alliance's acquisition of Peterson Pharmacy knowing and intending that doing so would improve Alliance's ability to perpetrate and profit from those fraudulent practices in New Jersey." (*Id.* ¶ 35)

## C.   Allegations as to Personal Jurisdiction and Venue.

Roche alleges that this Court has personal jurisdiction generally over "each Defendant," including Lee Rosebush, "pursuant to Fed. R. Civ. P. 4(k) and 18 U.S.C. § 1965(d), and/or 18 U.S.C. § 1965(b)," because: (1) one or more defendants resides in, is found, has an agent, or transacts his affairs in New Jersey (under the federal RICO statute); (2) the defendants regulatory transact business in New Jersey by selling products there and receiving reimbursements from insurance companies in New Jersey; and (3) the defendants directed or conducted tortious acts in New Jersey, and the conspiracy took place in substantial part in New Jersey.  (First. Am. Compl. at ¶¶ 25-35.)  The only specific allegations intended to support personal jurisdiction in New Jersey over Lee Rosebush boils down to Rosebush's alleged approval of the acquisition of a New Jersey pharmacy (which would allegedly be used to commit fraud) in his capacity as a member of the Board of Directors of Alliance. (*Id*. at ¶¶ 35, 248)

As to venue, Roche claims that venue is proper in New Jersey under the federal RICO statute, as well as because a substantial part of the events giving rising to the claim occurred in New Jersey, or because one or more defendants is subject to personal jurisdiction in New Jersey. (*Id*. at  ¶¶ 28-29.)

## LEGAL ARGUMENT

### I.  ROCHE FAILS TO ALLEGE FACTS SUFFICIENT TO STATE A RICO CLAIM

Lee Rosebush incorporates and adopts the legal analysis set forth in Section I.C. of the Shareholder Entity Defendants' memorandum of law in support of their motion to dismiss Plaintiffs' original complaint, as well as, Section 4 of Defendant Travis Hughes' memorandum of law in support of his motion to dismiss Plaintiffs' original complaint, both of which address the fatal flaws in Plaintiffs' racketeering claims alleged in Plaintiffs' original and First Amended Complaint. As explained therein, Roche must plead factual allegations sufficient to demonstrate that Lee Rosebush conducted the affairs of an enterprise through a pattern of racketeering activity—specifically, at least two acts of racketeering (such as mail or wire fraud) within a ten-year period.  *See* 18 U.S.C. § 1961(1) and 1962(c); *Dist 1199P Health and Welfare Plan v. Janssen, L.P.*, 784 F. Supp. 2d 508, 518-19 (D.N.J. 2011).  Each element of a RICO claim must be established as to each defendant individually, *see Naporano Iron & Metal Co. v. American Crane Corp.*, 79 F. Supp. 2d 494, 511 (D.N.J. 2011), and the allegations of mail or wire fraud must be plead with specificity as to each individual defendant under Rule 9(b), *see Lum v. Bank of America*, 361 F.3d 217, 223 (3d Cir. 2004). Roche has not done this.

Roche lumps all defendants together without specifying each individual act allegedly committed by each defendant. Roche alleges only that all defendants "committed and/or aided and abetted the commission of two or more of these racketeering acts" (First Am. Compl. ¶ 395), without specifying what act of wire fraud was purportedly committed by Rosebush.  Such conclusory allegations do not satisfy the rigorous standard dictated by Rule 9(b).  *See Snyder v. Dietz & Watson, Inc.*, 837 F. Supp. 2d 428, 450 (D.N.J. 2011) (dismissing RICO claim where allegations against three defendants were impermissibly lumped together).

Moreover, Roche's allegations are not specific and fail to state a claim for which relief can be granted. At best, Roche alleges that Lee Rosebush was aware of and approved the purported fraudulent activity at Alliance and failed to stop it.  This is not sufficient. However, a federal RICO claim must be based on actual racketeering activity, not "aiding and abetting" the commission of racketeering acts.  *See Digital Wholesale of New York, LLC v. Am. Eagle Trading Group, LLC*, 16-3487, 2016 WL 5660462, at *5 (D.N.J. Sept. 29, 2016)[3].  Moreover, such "aiding and abetting" allegations cannot on their own properly state a claim for conspiracy to violate RICO.  Instead, Roche would have to allege that Lee Rosebush agreed to commit predicate acts with knowledge that the acts were part of a pattern of racketeering activity—but Roche has not done so here.  *See Emcore Corp. v. Pricewaterhouse Coopers LLP*, 102 F. Supp. 2d 237, 264 (D.N.J. 2000).  Roche has fallen far short of the requirement of pleading sufficient facts to plausibly suggest a meeting of the minds between the purported conspirators to violate RICO.  *See Miller v. Burt*, 2019 WL1219977 at *7-8 (3d Cir. Mar. 14, 2019)[4].

It follows that Roche's conspiracy-related racketeering claims fail because "[a]ny claim under section 1962(d) based on a conspiracy to violate the other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient." *Kolar v. Preferred Real Estate Invs., Inc*. 361 Fed. App'x 354, 366 (3d Cir. 2010)[5]. Further, to the extent Roche alleges that Rosebush committed acts of conspiracy involving other Alliance board members and Alliance during his time on the board of Alliance, those claims should also be dismissed. *See, e.g., Reese v. Horizon Blue Cross Blue Shield of N.J.*, Civ. 08-1382, 2008 WL 5188853, at *3 (D.N.J. Dec. 10,

---

[3] A complete copy of the unreported decision is attached as Exhibit A to the December 20, 2019 Certification of Paul A. Carbon, Esq.

[4] A complete copy of the unreported decision is attached as Exhibit B to the December 20, 2019 Certification of Paul A. Carbon, Esq.

[5] A complete copy of the unreported decision is attached as  Exhibit R to the December 20, 2019 Certification of Paul A. Carbon, Esq.

2008)[6] ("Employees of a corporation acting within the scope of their employment cannot conspire with a corporation or with each other, as they are all considered one entity."). Moreover, Roche has not alleged a single predicate act. *See also Smith v. Jones, Gregg, Creehan & Gerace,* No. 2:08-cv-365, 2008 WL 5129916, at *7 (W.D. Pa. Dec. 5, 2008)[7] (dismissing complaint where it "merely contains sweeping generalizations as to an alleged conspiracy" and broadly claims that all defendants "agreed to engage in a pattern of racketeering activity").

Accordingly, and for the additional reasons set forth in the briefs in which Lee Rosebush joins, the federal and state RICO claims against Lee Rosebush in the First through Fourth Counts should be dismissed.

## II.   THE COURT LACKS PERSONAL JURISDICTION OVER LEE ROSEBUSH

This Court cannot exercise personal jurisdiction over Lee Rosebush absent a viable RICO claim. As discussed herein, because Roche fails to state a federal claim, this Court may (and should) decline to exercise supplemental jurisdiction over Roche's state law claims. *See* 28 U.S.C. § 1367(c)(3); *Allstate N.J. Ins. Co. v. Summit Pharm., Inc.*, No. 13-5809, 2014 WL 1767528, at *13 (D.N.J. May 2, 2014)[8] (declining to exercise supplemental jurisdiction over state law claims following dismissal of RICO claim).

Further, Lee Rosebush is a Maryland resident and has no minimum contacts with New Jersey.  Rosebush is not alleged to have maintained continuous and systematic contacts with the state of New Jersey, unrelated to this lawsuit, sufficient to establish general jurisdiction.  Likewise,

---

[6] A complete copy of the unreported decision is attached as Exhibit C to the December 20, 2019 Certification of Paul A. Carbon, Esq.

[7] A complete copy of the unreported decision is attached as Exhibit D to the December 20, 2019 Certification of Paul A. Carbon, Esq.

[8] A complete copy of the unreported decision is attached as Exhibit E to the December 20, 2019 Certification of Paul A. Carbon, Esq.

Plaintiffs have failed to describe how Lee Rosebush has availed himself of the privilege of conducting activities within New Jersey. Instead, Plaintiffs engage in group pleading in which they assert that all defendants committed or caused the commission of torts in New Jersey, purposely confusing Alliance with the individual defendants. (First Am. Compl. at ¶ 30). The best Plaintiffs can allege in support of the exercise of personal jurisdiction over Lee Rosebush is that he was aware of Alliance's fraud and approved plans to acquire a pharmacy located in New Jersey. (First Am. Compl. ¶¶ 34-.35) As set forth below, this singular allegation involving New Jersey, as part of an extensive First Amended Complaint involving activity unrelated to New Jersey, is insufficient to establish personal jurisdiction over Lee Rosebush.

### A.   General Jurisdiction Over Lee Rosebush Is Lacking Because Plaintiffs Fail to Allege That Rosebush Had Continuous and Systematic Contacts with New Jersey.

There are two kinds of personal jurisdiction that allow a district court to hear a case involving a non-resident defendant: general and specific. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–15 & n. 9 (1984). General jurisdiction exists where, even though the cause of action "does not arise out of or relate to the [defendant]'s activities in the forum State," the plaintiff nevertheless shows that a defendant has "continuous and systematic contacts" with the forum state. *Id*; *see also Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) ("[O]nly a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there"). As this Court has explained, "general jurisdiction requires 'a very high threshold of business activity.'" *Ameripay, LLC v. Ameripay Payroll, Ltd.*, 334 F. Supp. 2d 629, 633 (D.N.J. 2004), (quoting *Compagnie des Bauxites de Guinea v. Ins. Co. of N. Am.*, 651 F.2d 877, 891 (3d Cir. 1981)). Indeed, the allegations required to establish sufficient contacts for general jurisdiction must be extensive and persuasive. *Reliance Steel Prods. Co. v. Watson, Ess, Marshall*

& *Enggas*, 675 F.2d 587, 589 (3d. Cir. 1982). In other words, the plaintiff must demonstrate "significantly more than minimum contacts." *Provident Nat'l Bank*, 819 F.2d at 437.

Roche's First Amended Complaint does not allege facts suggesting that this Court has general jurisdiction over Lee Rosebush. For general jurisdiction to attach, Plaintiffs must prove that Rosebush had ongoing, continuous, and systematic contacts with New Jersey. *See Helicopteros*, 466 U.S. at 414. Instead, the First Amended Complaint alleges a single instance in which Lee Rosebush "approved" Alliance's acquisition of a pharmacy in New Jersey. (First Am. Compl. ¶ 35.) One alleged act does not constitute the type of continuous and systematic contact required for the Court to exercise general jurisdiction. *Provident Nat'l Bank*, 819 F.2d at 437 (explaining that general jurisdiction requires conduct that is "significantly more than minimum contacts").

**B.    Plaintiffs' First Amended Complaint Fails To Allege That Rosebush Had Sufficient Minimum Contacts With New Jersey.**

To establish specific jurisdiction, a plaintiff must make a three-part showing: (1) the defendant purposefully directed its activities at the forum; (2) the litigation arises out of or relates to at least one of the contacts; and (3) the exercise of jurisdiction otherwise comports with traditional notions of fair play and substantial justice. *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 317 (3d. Cir. 2007).   Moreover, group pleading is wholly insufficient.   An individualized analysis must be undertaken to determine whether the Court may exercise specific jurisdiction over each respective defendant.  *See Keeton v.  Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984) (citing *Rush v. Savchuk*, 444 U.S. 320, 332 (1980)).

Roche's First Amended Complaint fails to make any specific allegation that Lee Rosebush as an individual purposefully directed any activities at New Jersey.  Instead, Roche asserts that all defendants sold diabetic testing strips in New Jersey and received insurance reimbursement from

insurance companies in New Jersey.  (First Am. Compl. at ¶¶ 25-35.)  Plaintiffs, however, confuse Alliance with the defendants.  Alliance allegedly sold testing strips and received reimbursements, not Lee Rosebush.  Roche is not permitted to impute the actions of the corporate entity to the outside directors.  *See Roche Diagnostics Corp. v. Binson's Hosp. Supplies, Inc.*, No. 1:17-CV-00949, 2017 WL 4123050, \*22-24 (S.D. Ind. Sept. 18, 2017)[9].

Plaintiffs' only New Jersey-specific allegation against Lee Rosebush is that he "approved Alliance's acquisition of Peterson Pharmacy." (First Am. Compl. ¶ 35.) The First Amended Complaint offers no explanation of how or where Lee Rosebush "approved" the acquisition, and this single, conclusory allegation is insufficient to satisfy Plaintiffs' burden of alleging establishing minimum contacts. *See Stranahan Gear Co., Inc. v. NL Industries, Inc.,* 800 F.2d 53, 58 (3d Cir. 1986) (cursory allegation reiterated in a sworn affidavit is insufficient to satisfy the plaintiff's burden of proof). Indeed, Plaintiffs allege that Alliance also acquired, or was in the process of acquiring, pharmacies in 17 states outside New Jersey, including in "Florida, Utah, … North Carolina, Maryland, Virginia, Georgia, Pennsylvania, Michigan, Nebraska, New York, Texas, Ohio, Kentucky, Tennessee, Indiana, Louisiana, and California." (First Am. Compl. ¶ 247.) Thus, the First Amended Complaint fails to demonstrate that Lee Rosebush "purposefully directed [his] activities toward the residents of [New Jersey] such that [New Jersey] can be said to be ***the focal point*** of the … activity[.]" *IMO Indus.*, 155 F.3d at 261 (emphasis added).

However, even if this one allegation established that Lee Rosebush had purposefully directed his activities at New Jersey, the Court would still lack personal jurisdiction over Lee Rosebush as a matter of law because such conduct would have been in his official capacity as a

---

[9] A complete copy of the unreported decision is attached as Exhibit F to the December 20, 2019 Certification of Paul A. Carbon, Esq.

director of Alliance. On this point, *Roche Diagnostics Corp. v. Binson's Hosp. Supplies, Inc.*, No. 1:17-CV-00949, 2017 WL 4123050, *7 (S.D. Ind. Sept. 18, 2017), is instructive. There, the Indiana-based plaintiff alleged that two individual defendants directly deceived it in contract negotiations and directly participated in the purported scheme to divert Roche's diabetic testing strips. The district court concluded that it lacked personal jurisdiction over the non-resident individuals because all of their purported contacts with the state of Indiana were undertaken in their official capacity as employees of the corporate defendant. "Roche fails to make any allegations that clearly allege any wrongful conduct by [the individual defendants] in their personal capacities. As such, Roche has not made a prima facie showing that this Court has personal jurisdiction over any of the [individual defendants]." *Id*; *see also Victory Int'l (USA) Inc. v. Perry Ellis Int'l, Inc.*, No. CIV.A. 07-0375WHW, 2008 WL 65177, at *8 (D.N.J. Jan. 2, 2008)[10] (rejecting attempt to "bootstrap jurisdiction" over an individual defendant based upon the actions of the corporation). Here, the only particularized allegation against Lee Rosebush was undertaken in his capacity as a director of Alliance, and not in his personal capacity.

Accordingly, the First Amended Complaint should be dismissed as to Lee Rosebush for lack of personal jurisdiction.

## III.    THE DISTRICT OF NEW JERSEY IS AN IMPROPER VENUE

If a suit is filed in an improper judicial district, a court may dismiss the suit upon timely objection or, in the interest of justice, may transfer the case to a district where the suit could have been brought. 28 U.S.C. §1406(a), (b). This Court should dismiss this case against Lee Rosebush because Defendant does not reside in New Jersey and a substantial part of Plaintiffs' alleged claims

---

[10] A complete copy of the unreported decision is attached as Exhibit G to the December 20, 2019 Certification of Paul A. Carbon, Esq.

did not occur in New Jersey. 28 U.S.C. §1391(b)(1); 28 U.S.C. §1391(b)(2). The only connection Lee Rosebush is alleged to have to this venue is that he was a member of the board of directors of a Utah based Delaware corporation that owned subsidiary corporations that may have made sales into and/or received payments from New Jersey.  Absent a viable RICO claim, venue is improper in New Jersey.

Beginning with § 1391(b)(2), "[t]he test for determining venue is not the defendant's 'contacts' with a particular district, but rather the location of those 'events or omissions giving rise to the claim." *Cottman Transmission Systems, Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994). Plaintiffs assert that "the Peterson Pharmacy in New Jersey was thus a location of a substantial part of the tortious acts giving rise to the claims in this Complaint" and "directed the Peterson Pharmacy and other pharmacies in New Jersey to carry out the tortious and predicate acts/incidents described herein." (First Am. Compl. at ¶ ¶ 32-34.) *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994). Instead, the First Amended Complaint describes in hundreds of paragraphs events that presumably occurred in Utah where Alliance was based and the majority of the defendants reside.  An alleged misrepresentation is deemed to have occurred in the district where the statement was made—even if the statement concerned distributing or selling a product into another state. *See C.O. Truxton, Inc. v. Blue Caribe, Inc.*, 2014 WL 6883145, at *5 (D.N.J. Dec. 5, 2014)[11]. Here, Plaintiffs do not even allege that Lee Rosebush made specific misrepresentations that involved selling products in New Jersey; Plaintiffs merely allege that Lee Rosebush gave authorization from outside the state for others to make misrepresentations. Such allegations plainly do not establish New Jersey as the proper venue. *See id.*  Further, although in-

---

[11] A complete copy of the unreported decision is attached as Exhibit H to the December 20, 2019 Certification of Paul A. Carbon, Esq.

person meetings can be substantial events, electronic and telephonic negotiations do not necessarily create a substantial event. *See, e.g.*, *CLP Packaging Solutions, Inc. v. Sports Pouch Beverage Co., Inc.*, 2008 WL 2095774, at *3 (finding no venue in New Jersey where email and telephone negotiations occurred in New Jersey and Pennsylvania, and face-to-face meetings occurred in California, Nevada, and Florida).

## IV.      ROCHE'S COMMON LAW CLAIMS FAIL TO STATE A CLAIM

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a First Amended Complaint "for failure to state a claim upon which relief can be granted." To survive a motion to dismiss, a First Amended Complaint must allege facts that raise a right to relief above the speculative level. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also* Fed. R. Civ. P. 8(a)(2). While a court must accept as true all factual allegations in the plaintiff's First Amended Complaint, and view them in the light most favorable to the plaintiff, *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008), a court is not required to accept sweeping legal conclusions cast in the form of factual allegations, unwarranted inferences, or unsupported conclusions. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). The First Amended Complaint must state sufficient facts to show that the legal allegations are not simply possible, but plausible. *Phillips*, 515 F.3d at 234. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## A.      Plaintiffs' Fraud-Based Claims Lack Particularity Required by Rule 9(b).

Plaintiffs' claims for common law fraud, aiding and abetting fraud, and conspiracy to commit fraud against Lee Rosebush should be dismissed for failing to plead fraud with particularity.  Plaintiffs fail to describe what Lee Rosebush did that was fraudulent.

"In order to satisfy Rule 9(b), plaintiffs must plead with particularity 'the circumstances of the alleged fraud …' by pleading the 'date, place or time' of the fraud, or through 'alternative means of injecting precision and some measure of substantiation into their allegations of fraud.'" *Lum v. Bank of Am.*, 361 F.3d 217, 223–24 (3d Cir. 2004).  Moreover, when multiple defendants are involved, the First Amended Complaint must plead with particularity by specifying the allegations of fraud applying to each defendant.  *Zodda v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, No. CIV. 13-7738 FSH, 2015 WL 926221, at \*9 (D.N.J. Mar. 4, 2015)[12].

Plaintiffs allege that all defendants "made or caused to be made false insurance reimbursement claims to insurance companies." (First Am Compl. ¶ 436.) Plaintiffs further assert that "[e]ach Defendant intentionally provided substantial assistance to the others and to Alliance and the Alliance Pharmacies in advancing the fraud against Roche." (*Id*. ¶ 439). Plaintiffs, however, fail to state exactly what statements Rosebush made, and how they were false. Plaintiffs allege, for example, that Rosebush negotiated "to secure a contract for the Alliance-owned New Life Pharmacy" (*Id.* ¶ 299), but the First Amended Complaint never specifies how the alleged negotiations were fraudulent.  The First Amended Complaint fails to identify any particular fraudulent statement made by Lee Rosebush, to whom the statement was made, what precisely was stated or when such statement was made.  Such failure is fatal.  *See Arlandson v. Hartz Mt. Corp.*, 792 F. Supp. 2d 691, 710 (D.N.J. 2011) ("Collectivized allegations that generally allege fraud as against multiple defendants, without informing each defendant as to the specific fraudulent act he or she is alleged to have committed do not satisfy Rule 9(b)"); *Naporano Iron &*

---

[12] A complete copy of the unreported decision is attached as Exhibit I to the December 20, 2019 Certification of Paul A. Carbon, Esq.

*Metal Co. v. Am. Crane Corp.*, 79 F. Supp. 2d 494, 511 (D.N.J. 1999) (rejecting ambiguous attribution of fraud generally to "defendants").

**B.     The Court Should Dismiss Plaintiffs' Claim for Unjust Enrichment.**

To adequately plead an unjust enrichment claim, a plaintiff must satisfy the Rule 8(a) pleading standard and sufficiently allege that "(1) at plaintiff's expense (2) defendant received benefit (3) under circumstances that would make it unjust for defendant to retain benefit without paying for it." *In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517, 544 (D.N.J. 2007). Since a plaintiff must confer a benefit on the defendant to support an unjust enrichment claim, New Jersey courts have required that "the plaintiff allege a sufficiently direct relationship with the defendant to support the claim." *Nelson v. Xacta 3000 Inc.*, 2009 WL 4119176, at *3 (D.N.J. Nov. 24, 2009)[13]; *see also Cooper v. Samsung Elec.*, 2008 WL 4513924, at *10 (D.N.J. Sept. 29, 2008)[14] (dismissing an unjust enrichment claim where consumer's purchase was through a retailer, as there was no relationship conferring any direct benefit on the manufacturer).

Since Plaintiffs have failed to allege that they sold their products directly to Lee Rosebush, they cannot rightfully expect any remuneration from Rosebush, as Plaintiffs never directly conferred a benefit to him. *See Snyder v. Farnam Companies, Inc.*, 792 F. Supp. 2d 712, 724 (D.N.J. 2011). Plaintiffs concede that "Roche sold retail strips to wholesalers" or "Roche [sold] its NFR strips primarily to mail-order distributors[.]" (First Am. Compl. ¶¶ 50-51.) There is no direct relationship between Plaintiffs and Alliance, much less Plaintiffs and Rosebush who is even further removed from a direct relationship with Roche. Because Plaintiffs have failed to allege a sufficiently direct relationship between themselves and Lee Rosebush, their unjust enrichment

---

[13] A complete copy of the unreported decision is attached as Exhibit J to the December 20, 2019 Certification of Paul A. Carbon, Esq.

[14] A complete copy of the unreported decision is attached as Exhibit K to the December 20, 2019 Certification of Paul A. Carbon, Esq.

claim should be dismissed with prejudice. *See, e.g.*, *Hemy v. Perdue Farms, Inc.*, 2011 WL 6002463, at *22 (D.N.J. Nov. 30, 2011)[15] (dismissing with prejudice plaintiffs' unjust enrichment claim for failing to plead a direct relationship).

Likewise, unjust enrichment claims must be dismissed where "allegations sound[] in tort and not in quasi-contract." *Torres-Hernandez v. CVT Prepaid Sols., Inc*., No. 3:08-CV-1057-FLW, 2008 WL 5381227, at *9 (D.N.J. Dec. 17, 2008)[16]. The allegations that comprise Roche's claim for unjust enrichment are the same allegations that relate to the alleged tortious activity sounding in fraud and negligent misrepresentation. Accordingly, this claim must be dismissed.

## C.     Plaintiffs' Claim for Negligent Misrepresentation Should be Dismissed

To prevail on a negligent misrepresentation claim, a plaintiff must "establish that [the] defendant made an incorrect statement, upon which he or she justifiably relied, causing economic loss." *Henderson*, 2010 WL 2925913, at *11[17] (citing *McClellan v. Feit*, 376 N.J. Super. 305, 317 (App. Div. 2005)). "The strict pleading requirements of Rule 9(b) apply to [such] claims." *In re Schering-Plough Crop. Intron/Temodar Consumer Class Action*, 2009 WL 2043604, at *32 (D.N.J. July 10, 2009)[18].

While "a fiduciary duty between the parties is not an element of a claim for negligent misrepresentation," a plaintiff seeking to recover for negligent misrepresentation must plead that the defendant owed it a duty of care. *Kronfeld v. First Jersey Nat. Bank*, 638 F. Supp. 1454, 1465 (D.N.J. 1986). Courts have found liability in cases where there was "a special relationship between

---

[15] A complete copy of the unreported decision is attached as Exhibit L to the December 20, 2019 Certification of Paul A. Carbon, Esq.

[16] A complete copy of the unreported decision is attached as Exhibit M to the December 20, 2019 Certification of Paul A. Carbon, Esq.

[17] A complete copy of the unreported decision is attached as Exhibit N to the December 20, 2019 Certification of Paul A. Carbon, Esq.

[18] A complete copy of the unreported decision is attached as Exhibit O to the December 20, 2019 Certification of Paul A. Carbon, Esq.

the negligent tortfeasors and the foreseeable plaintiffs who relied on the quality of defendants' work or services, to their detriment." *People Express Airlines v. Consol. Rail Corp.*, 100 N.J. 246, 256–57 (1985). A negligent misrepresentation claim may also be based on an omission where plaintiff adequately pleads a duty to disclose. *S. Broward Hosp. Dist. v. MedQuist Inc.*, 516 F. Supp. 2d 370, 397 (D.N.J.), *aff'd in part*, 258 F. App'x 466 (3d Cir. 2007). *See also Henderson v. Volvo Cars of N. Am., LLC*, 2010 WL 2925913, at *11 (D.N.J. July 21, 2010) ("A plaintiff may not bring an omission-based claim 'unless the breaching party owes him or her an independent duty imposed by law' requiring disclose.") (quotation and alterations omitted).

Here, Plaintiffs have not demonstrated how Lee Rosebush owed a duty of care to Roche, and Plaintiffs have certainly not met the stringent pleading requirements of Rule 9(b). There is no "special relationship" between Rosebush and Plaintiffs that would justify the imposition of liability for negligent misrepresentation. Indeed, there is no direct relationship between any of the Defendants and Plaintiffs at all. Moreover, Plaintiffs have failed to allege a fiduciary relationship as required to assert an omission-based negligent misrepresentation claim. Courts in this District have dismissed omission-based negligent misrepresentation claims where plaintiffs failed to allege a fiduciary duty between a remote manufacturer and product purchases or that plaintiffs reposed special trust in defendant prior to purchase. *See, e.g.*, *Henderson*, 2010 WL 2925913, at *12. Plaintiffs only argue that Defendants had an alleged "duty to provide the pharmacy plans with accurate information" and that the pharmacy plans relied "on their false representations and material omissions." (First Am. Compl. ¶ 453). Plaintiffs provide no authority establishing a duty to disclose between Plaintiffs and Rosebush based on the allegations in the First Amended Complaint. This Court should therefore dismiss Plaintiffs' negligent misrepresentation claim.

Further, Roche does not allege a single, specific instance where Lee Rosebush made a single statement—with false information or otherwise—to Roche. This constitutes a fatal omission to Roche's claim under Rule 8(a) and does not meet the heightened pleading standard of Rule 9(b). Accordingly, this Court should dismiss Plaintiffs' negligent misrepresentation claim.

## D.   Plaintiffs' Claim for Tortious Interference with Prospective Business Relations Should Also be Dismissed

To prove tortious interference with prospective economic advantage under New Jersey law, a plaintiff must show:

> (1) a plaintiff's reasonable expectation of economic benefit or advantage, (2) the defendant's knowledge of that expectancy, (3) the defendant's wrongful, intentional interference with the expectancy, (4) in the absence of interference, the reasonable probability that the plaintiff would have received the anticipated economic benefit, and (5) damages resulting from the defendant's interference.

*Printing Mart-Morristown v. Sharp Elec. Corp.*, 116 N.J. 739 (N.J. 1989). In other words, plaintiff must show that there was a "reasonable expectation of economic advantage that was lost as a direct result of defendants' malicious interference, and that it suffered losses thereby." *Vibra-Tech Engineers, Inc. v. Kavalek*, 849 F. Supp. 2d 462, 491–92 (D.N.J. 2012) (quoting *Lamorte Burns & Co., Inc. v. Walters*, 176 N.J. 285, 302 (2001)). Further, "where there is proof that if there had been no interference there was a reasonable probability that [plaintiff] would have received the anticipated economic benefit" then causation is established. *Id.* at 492.

Here, Plaintiffs have not alleged a reasonable expectation of economic advantage that was lost as a "direct result" of Lee Rosebush's purported interference. Roche has not alleged a specific act of interference as to Rosebush.  *Badrinauth v. Metlife Corp.*, No. 04-2552, 2006 WL 288098, at *5 (D.N.J. Aug. 17, 2005)[19] (dismissing tortious interference claim where no specific allegations

---

[19] A complete copy of the unreported decision is attached as Exhibit P to the December 20, 2019 Certification of Paul A. Carbon, Esq.

of interference were made). Plaintiffs fail to allege any specific business relationship or economic advantage, such as a specific customer in which it had a continuing or prospective relationship,[20] that was lost through Lee Rosebush's purported interference, much less knowing and intentional conduct of Rosebush. Moreover, vague, conclusory statements of lost business, like Roche's allegations here, cannot survive dismissal. *See Trans USA Prods*., 2008 WL 3154753, at *8 ("Plaintiff cannot sustain a tortious interference cause of action bases solely on the loss of customers."); *Eli Lilly,* 23 F. Supp. 2d at 494 (dismissing a tortious interference claim because "a mere allegation of lost business does not suffice."). Accordingly, Plaintiffs' claims for tortious interference with prospective business relations should be dismissed.

## **CONCLUSION**

For the reasons set forth above, the Court should grant Lee Rosebush' motion to dismiss the First Amended Complaint.

Respectfully submitted,
**MARGOLIS EDELSTEIN**


_____*s/ Paul A. Carbon*_____
Paul A. Carbon, Esq.
Attorney ID: 02440-1995
400 Connell Drive, Suite 5400
Berkeley Heights, NJ  07922-2775
(908) 790-1401
pcarbon@margolisedelstein.com
***Attorneys for Defendant, Lee H. Rosebush***

**ROBERTS  MARKEL  WEINBERG  BUTLER
HAILEY PC**

---

[20] *See Eli Lilly & Co. v. Roussel Corp.,* 23 F. Supp. 2d 460, 494 (D.N.J. 1998) (dismissing tortious interference claim where plaintiff did not allege existing or potential business relationship); *Trans USA Prods. v. Howard Berger Co.*, No. 07-5924, 2008 WL 3154753, at *8 (D.N.J. Aug. 4, 2008) (dismissing tortious interference claim because plaintiff failed to "allege that it had a reasonable expectation in a continuing business relationship with certain customers").  A complete copy of the unreported decision is attached as Exhibit Q to the December 20, 2019 Certification of Paul A. Carbon, Esq.

Rick V. Anderson, Esq.
*Pro Hac Vice* Counsel
Fed. No. 986458
TBA No. 24159047
Caitlin E. Booker, Esq.
*Pro Hac Vice* Counsel
Fed. No. 1882750
TBA No. 24085212
2800 Post Oak Boulevard, 57th Floor
Houston, TX 77056
Tel: (713) 840-1666
Fax: (713) 840-9404
randerson@rmwbh.com
cbooker@rmwbh.com
***Attorneys for Defendant, Lee H. Rosebush***

DATED: December 20, 2019