**Patterson Belknap Webb & Tyler LLP**

1133 Avenue of the Americas   New York, NY 10036-6710   212.336.2000   fax 212.336.2222   www.pbwt.com

July 22, 2022

Peter C. Harvey
(212) 336-2810
pcharvey@pbwt.com

*By Email*
Honorable Dennis M. Cavanaugh
McElroy, Deutsch, Mulvaney & Carpenter LLP
1300 Mount Kemble Avenue, Morristown, NJ 07962

**Re:** *LifeScan, Inc. v. Smith et al.*, No. 17-cv-5552 (CCC) (JSA) (D.N.J.)
*Roche Diagnostics Corp. et al. v. Smith et al.*, No. 19-cv-08761 (CCC) (JSA) (D.N.J.)

Dear Judge Cavanaugh:

We represent Plaintiffs LifeScan, Inc. ("LifeScan"), Roche Diagnostics Corp., and Roche Diabetes Care, Inc. (together, "Roche," and with LifeScan, "Plaintiffs") in the above-captioned matters. Plaintiffs submit this reply letter-brief in further support of their motion seeking an order compelling Jeffrey Smith to produce discovery related to two issues.

**Introduction**

Smith has continued to fail in meeting his burden to show that the attorney-client privilege applies to his withheld text messages. The messages were exchanged between Smith, a non-lawyer, and his co-defendant, another non-

Honorable Dennis M. Cavanaugh
July 22, 2022
Page 2

lawyer, and Smith has not indicated that they were shared for the purpose of obtaining legal advice or in assisting counsel in providing legal advice. Plaintiffs request an order compelling Smith to produce the withheld text messages.

Smith has also failed to establish why he should not be compelled to answer LifeScan's Interrogatories 17 and 18, which are narrowly tailored to seek the identities of asset-protection trusts and entities that Smith created after he became involved with the Alliance fraud. LifeScan requests an order compelling Smith to answer these interrogatories as they are relevant to the fraud in this case, they do not seek personal or sensitive financial information, they will help Plaintiffs seek additional discovery about the purposes for which they were created, and they will help assess when the asset-protection plans went into effect.

**I.     Smith has failed to meet his burden to establish that his text messages are protected by the co-client privilege.**

In his Opposition, Smith concedes that the common interest privilege does not apply to his withheld text messages, but contends that his messages are "protect[ed] from disclosure" by the co-client privilege. Opp. at 2. They are not.

As Smith concedes, the co-client privilege is not an independent privilege conferring protection from disclosure on communications between co-clients. Rather, the co-client privilege doctrine provides an exception to the general rule that attorney-client privileged communications disclosed to a third party are no

Honorable Dennis M. Cavanaugh
July 22, 2022
Page 3

longer privileged, ensuring that the attorney-client privilege survives disclosure to one's co-client. *In re Teleglobe* confirms that it is communications between "co-clients *and their common attorneys*" that are privileged—not all communications between co-clients by virtue of their co-client relationship. *In re Teleglobe Commc'ns. Corp. v. BCE, Inc.*, 493 F.3d 345, 363 (3d Cir. 2007) (emphasis added); *see also* Restatement (Third) of the Law Governing Lawyers § 75 (2000) ("If two or more persons are jointly represented by the same lawyer in a matter, a communication of either co-client *that otherwise qualifies as privileged under §§ 68–72* and relates to matters of common interest is privileged as against third persons . . . ." (emphasis added)).

Jeffrey Smith's privilege log provides no basis to conclude that his text messages with Defendant Paoline are covered by the attorney-client privilege, because his log does not establish that the communication was made "between privileged persons" or "for the purpose of obtaining legal advice." *Teleglobe*, 493 F.3d at 359. Relying on *MGA Entm't., Inc. v. Nat'l Prods. Ltd.*, No. CV 10-07083 JAK (SSx), 2012 WL 3150532 at *1-3 (C.D. Cal. Aug. 2, 2012), Smith contends that his text messages with Paoline are in fact attorney-client privileged. Opp. at 3. But in *MGA*, unlike here, the communications in question were made for the purpose of seeking legal advice, and non-lawyers were merely acting as

Honorable Dennis M. Cavanaugh
July 22, 2022
Page 4

"conduit[s] through which messages between counsel and . . . employees were conveyed." *Id.* at *4 ("[A]lthough [the corporate client's] counsel was not personally involved in the communications, each of the [withheld] emails either explicitly conveyed a message from counsel by a corporate employee to another employee/agent in furtherance of the defense of this case, or was a request from an employee/agent to another corporate employee to forward a question to counsel, also in furtherance of the defense."). Smith has not established that the "purpose of the [withheld text messages] [was] to assist legal counsel in preparing a defense." *Id*. at *1. Rather, the log states only that Jeffrey Smith and Paoline discussed "litigation strategy" in these text messages—a topic that, without more, is not protected by the attorney-client privilege when discussed by two non-attorneys. *See Jones v. Carson*, No. 15-310 (CKK/GMH), 2018 WL 11410070 at *18 (D.D.C. March 18, 2018) ("[C]ourts have held 'that communications among non-lawyer corporate personnel are protected *if the dominant intent is to prepare the information in order to get legal advice from the lawyer*.'" (quoting *In re New York Renu with Moistureloc Prod. Liab. Litig.*, No. CA 2:06-MN-77777-DCN, 2008 WL 2338552, at *10 (D.S.C. May 8, 2008) (emphasis added)).

Having failed to establish a basis for invoking the attorney-client privilege over his ten text messages with Sahily Paoline, Jeffrey Smith should be ordered to

produce them. In the alternative, this Court should review the text messages *in camera* to evaluate whether any of them is protected by any applicable privilege.

## II. Smith must provide responses to Interrogatories 17 and 18.

Interrogatories 17 and 18 seek relevant information, and Smith's objections to providing that information are meritless.

First, the answers to Interrogatories 17 and 18 are relevant to the claims at issue. Opp. at 6. "Relevancy is broadly construed for discovery purposes and is not limited to the precise issues set out in the pleadings or to the merits of the case." *Shulman v. Chromatex, Inc.*, No. 3:08-CV-00229, 2009 WL 10685130, at *1 (M.D. Pa. Mar. 25, 2009) (internal citations omitted). The interrogatories at issue seek information related to Smith's creation of asset-protection entities during the period when the Alliance fraud was operational. (*See* Ex. 1). As laid out in Plaintiffs' opening brief, Smith's efforts to hide the proceeds of Alliance's fraud from the reach of a judgment or personal liability are highly relevant to his state of mind in committing the fraud and joining the Alliance conspiracy. *See, e.g.*, *United States v. Battle*, 473 F. Supp. 2d 1185, 1203 (S.D.Fla. 2006) (RICO enterprise "devoted itself to making money, protecting its ability to make money, and hiding the money so as to avoid detection by law enforcement").

Second, contrary to Smith's argument, the names of Smith's asset-protection entities are not solely relevant to a claim for punitive damages. Opp. at 7. Indeed, the interrogatories at issue do not yet ask for the *value* of these entities at all; rather, they seek to understand the structure of corporate entities that Smith has created to shield his assets, an issue that goes to his understanding that he was involved in illegal activity that would, if uncovered, give rise to significant personal liability, not to the availability of assets to satisfy a future judgment. Accordingly, cases addressing discovery aimed at a defendant's "financial condition," "personal financial status," or "net worth," or the "financial information of non-parties to the action," are irrelevant. Opp. at 7–9. To the extent the answers to Interrogatories 17 and 18 would reveal highly sensitive personal and financial information, Smith offers no reason why the confidentiality agreement in place is inadequate to protect that information. *See LifeScan* Dkt. 131; *Roche* Dkt. 139. The other defendants in these matters, Plaintiffs, and non-parties have produced numerous highly sensitive documents pursuant to these orders.

Finally, the interrogatories are not overly broad. They seek identification of only those entities created after Smith joined the Alliance fraud,[1] of which he is a beneficiary (if the entity is a trust) or for which he participated in, requested, or directed the creation. These entities must be identified before additional discovery can be sought to discover the purposes for which they were created, or before Smith can be questioned about their creation at his deposition.

## Conclusion

Smith has failed to prove that his withheld text messages are protected by the co-client privilege because he has not established that the messages were sent for the purpose of obtaining legal advice. Smith has also failed to meet his burden of showing that the harm of disclosure of the identities of asset-protection trusts and entities that he created after he was involved in the fraud at issue would outweigh the presumption of broad discovery. Accordingly, Plaintiffs respectfully request that Your Honor order Smith to produce his withheld text messages and to answer LifeScan's Interrogatories Nos. 17 and 18.

---

[1] As this Court noted in its March 22 Order rejecting Smith's claim of privilege over his exchange with Kevin Plumb, the timing of Smith's creation of the asset protection entities referenced in that exchange is unclear. *LifeScan* Dkt. 552 at 9 n.1 ("Presumably, the plans [to shield assets from judgment] went into effect (perhaps even years) before the [2013] email exchange, although neither of the litigants provides a time frame"). Interrogatories 17 and 18 will clarify that issue.

Honorable Dennis M. Cavanaugh
July 22, 2022
Page 8

                                                Respectfully submitted,

                                                /s/  *Peter C. Harvey*
                                                Peter C. Harvey

CC: All Counsel of Record