# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROCHE DIAGNOSTICS CORP. and ROCHE DIABETES CARE, INC.;<br><br>          Plaintiffs,<br><br>   v.<br><br>JEFFREY C. SMITH, et al.,<br><br>          Defendants. | Civil Action No. 2:19-cv-08761-CCC |
| LIFESCAN, INC.,<br><br>          Plaintiff,<br><br>   v.<br><br>JEFFREY C. SMITH, et al.,<br><br>          Defendants. | Civil Action No. 2:17-cv-05552-CCC |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' OPPOSITION TO THE HUGHES PARTIES' OBJECTION TO THE SPECIAL MASTER'S FEBRUARY 15, 2024 REPORT & RECOMMENDATION

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................ ii

INTRODUCTION AND BACKGROUND ....................................................................1

    A.    Plaintiffs' Claims and Defendants' Defenses. ...........................................1
    B.    The Special Master's Report and Recommendation Recommends that the Affirmative Defenses be Struck with Prejudice.........................................5

LEGAL STANDARD.....................................................................................................7

ARGUMENT ..................................................................................................................8

I.    THE SPECIAL MASTER CORRECTLY HELD THAT THE ALLEGED ILLEGALITY OF PLAINTIFFS' BUSINESS PRACTICES IS NO DEFENSE TO PLAINTIFFS' CLAIMS. .............................................................................8

II.    THE SPECIAL MASTER PROPERLY HELD THAT THE HUGHES ENTITIES' UNCLEAN HANDS DEFENSE IS LEGALLY INSUFFICIENT. ..............15

    A.    The Hughes Entities Cannot Establish the Requisite Unconscionable Act. ..........16
    B.    The Hughes Entities Cannot Allege the Necessary Immediate Relation Between the Alleged Unconscionable Act and Plaintiffs' Claims. ......................18

III.    THE SPECIAL MASTER CORRECTLY HELD THAT IN PARI DELICTO IS A LEGALLY INSUFFICIENT DEFENSE TO PLAINTIFFS' CLAIMS.......................21

IV.    THE HUGHES PARTIES HAVE FAILED TO DEMONSTRATE THAT THE SPECIAL MASTER'S DECISION HAS PREJUDICED THEM...................................25

CONCLUSION...............................................................................................................27

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abbott Laboratories v. Adelphia Supply USA*,
  2019 WL 5696148 (E.D.N.Y. Sept. 27, 2019) ..........................................................17, 18, 20

*Ace Am. Ins. Co. v. Wachovia Ins. Agency Inc.*,
  2008 WL 4630486 (D.N.J. Oct. 17, 2008), aff'd 306 F. App'x 727 (3d Cir.
  2009) ...............................................................................................................................21

*Ajax Enters. v. Fay*,
  2007 WL 2572324 (D.N.J. Aug. 31, 2007) ...........................................................................15

*Allergan USA, Inc. v. Sun Pharm. Indus. Ltd.*,
  2022 WL 16921800 (D. Del. Nov. 14, 2022) .......................................................................16

*Allstate Ins. Co. v. A & F Med. P.C.*,
  2017 WL 4350418 (E.D.N.Y. Apr. 24, 2017) .........................................................................9

*Apotex, Inc. v. Sanofi-Aventis*,
  2009 WL 10688058 (D.N.J. June 30, 2009)...........................................................................9

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
  472 U.S. 299 (1985)............................................................................................................22

*Brito v. Goodman Pine Creek LLC*,
  2021 WL 1265246 (D. Colo. Apr. 6, 2021)..........................................................................25

*Bruce's Juices, Inc. v. American Can Co.*,
  330 U.S. 743 (1947).....................................................................................................10, 11

*Ciba-Geigy Corp. v. Bolar Pharmaceutical Co., Inc.*,
  747 F.2d 844 (3d Cir. 1984)....................................................................................16, 17, 21

*Coca-Cola Co. v. Howard Johnson Co.*,
  386 F. Supp. 330 (N.D. Ga. 1974) .......................................................................................11

*Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*,
  2008 WL 2513806 (S.D. Ga. June 20, 2008).......................................................................11

*In re Direct Purchaser Insulin Pricing Litig.*,
  2021 WL 2886216 (D.N.J. July 9, 2021)...............................................................................9

*Doe v. Peterson*,
  2011 WL 1120172 (E.D. Mich. Mar. 24, 2011) ...................................................................25

**Page(s)**

*Donovan v. Schmoutey*,
    592 F. Supp. 1361 (D. Nev. 1984)........................................................................25

*Dr. Miles Med. Co. v. John D. Park & Sons Co.*,
    220 U.S. 373 (1911).................................................................................12, 13

*Dr. Zhu Inv. Trade Corp. v. Nat. Food Imp. USA, Inc.*,
    2012 WL 3236111 (N.J. Super. Ct. App. Div. July 12, 2012)...............................15

*Erickson Beamon Ltd. v. CMG Worldwide, Inc.*,
    2014 WL 3950897 (S.D.N.Y. Aug. 13, 2014)............................................9

*Erie Telecomms., Inc. v. City of Erie*,
    853 F.2d 1084 (3d Cir. 1988)...............................................................9

*Figaro v. Simon*,
    2015 WL 4171910 (D.N.J. July 9, 2015)............................................8

*In re Gabapentin Patent Litig.*,
    648 F. Supp. 2d 641 (D.N.J. 2009) .................................................7, 19

*Goldstein v. Firer*,
    2022 WL 2479237 (S.D. Fla. June 17, 2022), report and recommendation
    adopted by 2022 WL 2463733 (S.D. Fla. July 6, 2022)............................23

*Highmark, Inc. v. UPMC Health Plan, Inc.*,
    276 F.3d 160 (3d Cir. 2001).........................................................16, 19

*Howmedica Osteonics Corp. v. Zimmer, Inc.*,
    2012 WL 5554543 (D.N.J. Nov. 14, 2012) ...............................................17

*Kelly v. Kosuga*,
    358 U.S. 516 (1959)..............................................................10, 11

*Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*,
    551 U.S. 877 (2007)...................................................................13

*Liberty Lincoln-Mercury v. Ford Motor Co.*,
    134 F.3d 557 (3d Cir. 1998)...........................................................9

*Lowenschuss v. Kane*,
    520 F.2d 255 (2d Cir. 1975)...........................................................9

*McAdam v. Dean Witter Reynolds, Inc.*,
    896 F.2d 750 (3d Cir. 1990)..............................................22, 24, 25

*Monsanto Co. v. Hensel Seed Sols. LLC*,
    2019 WL 2173444 (E.D. Mo. May 20, 2019) ...............................................11

**Page(s)**

*Ne. Women's Ctr., Inc. v. McMonagle*,
  868 F.2d 1342 (3d Cir. 1989)...........................................................21

*In re New Valley Corp.*,
  181 F.3d 517 (3d Cir. 1999).......................................................19, 21

*Newborn Bros. Co. v. Albion Eng'g Co.*,
  299 F.R.D. 90 (D.N.J. 2014)........................................................8, 24

*In re Oakwood Homes Corp.*,
  356 F. App'x 622 (3d Cir. 2009) ...................................................21

*Pinter v. Dahl*,
  486 U.S. 622 (1988)....................................................................23, 24

*S.E.C. v. Thrasher*,
  1995 WL 456402 (S.D.N.Y. Aug. 2, 1995)..................................26

*Scherer Design Grp., LLC v. Ahead Eng'g LLC*,
  764 F. App'x 147 (3d Cir. 2019) .............................................16, 19

*Sevenson Env't Servs. Inc. v. Diversified Royalty Corp.*,
  2018 WL 5033749 (D.N.J. Oct. 16, 2018)...................................23

*Shulton, Inc. v. Optel Corp.*,
  1986 WL 15617 (D.N.J. Sept. 29, 1986) ..................................12, 13

*Television Educ., Inc. v. Contractors Intel. Sch., Inc.*,
  2016 WL 7212791 (E.D. Cal. Dec. 12, 2016) ..............................25

*Tonka Corp. v. Rose Art. Indus., Inc.*,
  836 F. Supp. 200 (D.N.J. 1993) .....................................................8

*Transamerica Life Ins. Co. v. Daibes Gas Holdings Atlanta, L.L.C.*,
  2021 WL 1541150 (D.N.J. Apr. 20, 2021) ..................................15

*United States v. Kramer*,
  757 F. Supp. 397 (D.N.J. 1991) ......................................................8

*United States v. Philip Morris Inc.*,
  300 F. Supp. 2d 61 (D.D.C. 2004)................................................24

*Video Serv. of Am., Inc. v. Maxwell Corp. of Am.*,
  2007 WL 2156359 (D.N.J. July 26, 2007)......................................8

**Statutes**

N.J.S.A. § 17:48–6j(a) ..........................................................................9

**Page(s)**

**Other Authorities**

Federal Rule of Civil Procedure 12(c) ................................................................1

Federal Rule of Civil Procedure 12(f) ...................................................1, 7, 25

Plaintiffs LifeScan, Inc. ("LifeScan") and both Roche Diagnostics Corp. and Roche Diabetes Care, Inc. (together, "Roche" and, with LifeScan, "Plaintiffs") moved pursuant to Federal Rules of Civil Procedure 12(f) and 12(c) to strike Affirmative Defenses Eight, Nine, Ten, and Thirty of Defendants Hughes & Company, Hughes & Company Investment Partners, LLC, Kesman Hughes & Company, LLC, and HS Medsource Holdco, LLC (together, the "Hughes Entities"). *LifeScan*, Dkt. 684; *Roche*, Dkt. 459. The motion was referred to the Special Master appointed to oversee pretrial proceedings in these cases, who subsequently issued a Report and Recommendation striking those defenses under Rule 12(f) with prejudice. *LifeScan*, Dkt. 838; *Roche*, Dkt. 590. The Report and Recommendation should be adopted in full.

## INTRODUCTION AND BACKGROUND

The Hughes Entities, along with their managing partner Defendant Travis Hughes (together with the Hughes Entities, the "Hughes Parties") defrauded Plaintiffs. The Hughes Parties have asserted that their fraud was a justified response to Plaintiffs' purported unlawful business practices—business practices that are, in fact, perfectly lawful and widely followed in the healthcare industry. As Special Master Cavanaugh correctly concluded, allegedly unlawful business practices do not justify fraud. The Special Master agreed with Plaintiffs that the Hughes Parties' specious defenses of illegality, unclean hands, and *in pari delicto* cannot defeat Plaintiffs' causes of action as a matter of law. Accordingly, these defenses were found to be legally insufficient under Federal Rule of Civil Procedure 12(f) and were appropriately struck with prejudice.

### A.     Plaintiffs' Claims and Defendants' Defenses.

Plaintiffs are manufacturers of diabetic test strips. *LifeScan*, Dkt. 245 ¶ 3; *Roche*, Dkt. 169 ¶ 1. As this Court laid out in its detailed opinion denying Defendants' motions to dismiss,

Plaintiffs have alleged that they were the victims of a fraudulent scheme to submit false insurance claims for diabetic test strips through numerous pharmacies associated with a Utah corporation, Alliance. *LifeScan* Dkt. 587; *Roche* Dkt. 364 at 3–7. As relevant here, the scheme involved purchasing non-retail diabetes test strips from the secondary market to dispense to patients, and falsely representing on insurance claims submitted to Pharmacy Benefit Managers ("PBMs") that the patients had received "retail" versions of Plaintiffs' diabetes test strips. *Id.* By misrepresenting the identity of the product dispensed to the patient, the pharmacies received higher retail reimbursements and were able to leverage the price difference between non-retail and retail test strips for their own profit. *Id.* at 6 (describing how the millions of false claims submitted by Alliance-affiliated pharmacies "produced a windfall for Alliance"). Profiting from this price differential was the core of the Alliance business model. *Id.* ("Alliance employees described this scheme as 'foundational[.]'").

Pursuant to their PBM contracts, Plaintiffs paid rebates to the PBMs for retail test strips (for which they initially received a higher list price), but not for non-retail test strips (for which they received a lower price from the outset). *Id.* at 4–5. Accordingly, for each box of non-retail test strips that Alliance pharmacies dispensed to patients and falsely claimed as a retail box of test strips, Plaintiffs paid an out-of-pocket rebate. *Id.* at 7. The millions of false insurance claims submitted over the years of the fraud caused Plaintiffs to pay tens of millions of dollars in unwarranted rebates. *Id.*

Conducting this fraudulent scheme on a nationwide scale required large infusions of capital, which was provided by its banks and its private equity investors, including the Hughes Entities and Travis Hughes. The Hughes Parties provided this capital infusion despite knowing that the Alliance business was premised on fraud. Defendant Travis Hughes also sat on the

Alliance Board of Directors as the Hughes Entities' representative, supervising the fraudulent activities of the entire enterprise. *Id*. at 8, 23–26. The Hughes Parties were privy to board communications which expressly acknowledged that Alliance's business model was based on fraud. *See, e.g.*, *LifeScan*, Dkt. 245 ¶ 287; *Roche*, Dkt. 169 ¶ 168 (Travis Hughes informed by email that Alliance was "illegally billing PBMs for products as if it was retail even though it is mail order"). They were actively involved in supervising the pharmacies that submitted fraudulent claims and in strategizing about how to protect the enterprise, even approving the creation of a reticulated "independent" pharmacy network designed to shield the fraud from discovery. *LifeScan*, Dkt. 245 ¶ 96; *Roche*, Dkt. 169 ¶ 83.

Based on these activities, Plaintiffs brought claims against the Hughes Parties based upon their knowing participation in the Alliance fraud, which the Hughes Parties moved to dismiss. This Court denied their motions, holding that Plaintiffs had pleaded facts sufficient to show that the Hughes Entities knew about the fraudulent activities and that Travis Hughes, acting on behalf of the Hughes Entities, "ratified numerous decisions to further the . . . fraud." *LifeScan*, Dkt. 587; *Roche*, Dkt. 364 at 24, 27.

After this Court's decision denying the motion to dismiss, the Hughes Entities filed their answers asserting a number of affirmative defenses to Plaintiffs' claims, including illegality, unclean hands, and *in pari delicto*. *LifeScan* Dkt. 602; *Roche*, Dkt. 380.[1] In particular, they

---

[1] Defendant Travis Hughes, who is represented by the same counsel as the Hughes Entities, filed a separate answer on his own individual behalf. *LifeScan* Dkt. 603; *Roche*, Dkt. 381. Like the Hughes Entities, Travis Hughes asserted the affirmative defenses of illegality, unclean hands, and *in pari delicto*. Plaintiffs moved to strike Travis Hughes' affirmative defenses alongside the Hughes Entities' affirmative defenses, and the Special Master recommended that Travis Hughes' affirmative defenses (at *LifeScan* Dkt. 603 and *Roche* Dkt. 381) be stricken with prejudice. *LifeScan* Dkt. 838, *Roche* Dkt. 590 at 27. Unlike the Hughes Entities, Travis Hughes did not object to the Special Master's R&R. *LifeScan* Dkt. 845, *Roche* Dkt. 598 (notice of motion from "Defendants HS Medsource Holdco, LLC, Kesman Hughes & Company, LLC, Hughes &

pleaded a lengthy set of allegations regarding Plaintiffs' sales and marketing of diabetes test strips.  They allege that Plaintiffs violated federal antitrust law, the Robinson-Patman Act, and state "any-willing-provider" laws by selling physically identical test strips in different packaging intended for different channels of distribution (such as retail and non-retail) at different prices, and paying rebates to PBMs on only the retail test strip product.  *LifeScan*, Dkt. 602 at 114–16; *Roche*, Dkt. 380 at 157–59.  The Hughes Entities have never disputed that Plaintiffs' business practices are common among diabetes test strip manufacturers (indeed, LifeScan and Roche are competitors and both sell non-retail and retail test strips); to the contrary, they argue that their affirmative defenses render this case particularly important, since they "call[] into question 'the entire business model of the blood glucose test strip market[.]'"  *LifeScan* Dkt. 835; *Roche* Dkt.

---

Company, and Hughes & Company Investment Partners, LLC"); *see also LifeScan* Dkt. 845-1, *Roche* Dkt. 598-1 at 6 (citing docket numbers for the Hughes Entities' answers in the *LifeScan* and *Roche* cases, but not Travis Hughes' answers).  By letter dated March 15, 2024, Travis Hughes purported to join the Hughes Entities' objections, saying that Travis Hughes had been "inadvertently omitted from the list of parties in the Notice of Objection, the definition of the parties . . ., and was not referenced in the shorthand reference to the parties throughout the brief and supporting materials."  *LifeScan* Dkt. 847, *Roche* Dkt. 599.

It would be unfair to excuse Mr. Hughes' inadvertent omission from the Notice of Objection, because Plaintiffs have been penalized for the same inadvertent omission.  When Plaintiffs moved to strike the illegality, unclean hands, and *in pari delicto* defenses, they sought relief not only as to the Hughes Entities and Travis Hughes, but as to all other defendants who had pleaded those defenses.  *See* R&R at 27; *LifeScan* Dkt. 684-1 (Proposed Order); *Roche* Dkt. 459-1 (Proposed Order).  In response, these Defendants submitted letters to the Court arguing that, because they had not been named in plaintiffs' Notice of Motion, their defenses should not be stricken.  *See, e.g.*, *LifeScan* Dkts. 725, 726; *Roche* Dkts. 495, 496.  In light of this, the Special Master declined to recommend the dismissal of the other Defendants' defenses (although he noticed that further litigation in pursuit of those defenses would likely be "a waste of both counsel and the Court's resources").  R&R at 28.

Plaintiffs were denied relief because they failed to name the relevant parties and docket numbers in their notice of motion.  The same rule should apply to Travis Hughes.  This Court should deny his request to make an untimely amendment to the Hughes Entities' objections by letter, and should adopt the R&R as to his insufficient defenses.  Alternatively, if the Court is going to excuse Mr. Hughes' inadvertent omission, it should also excuse Plaintiffs' identical omission, and strike the defenses of all Defendants for the reasons set forth in the R&R.

587 at 5 (quoting Hughes Entities' brief in support of a motion to compel discovery on these affirmative defenses).

The Hughes Entities did not bring counterclaims against Plaintiffs for these purported violations of law. Rather, they contend that if their allegations are true, it does not matter that they defrauded Plaintiffs; nor does it matter that they profited from their knowing operation, funding, and management of the Alliance scheme. *Id.* In the Hughes Parties' view, the alleged illegality of the Plaintiffs' business models immunizes fraudsters like them from liability. That view was properly rejected by the Special Master.

**B.    The Special Master's Report and Recommendation Recommends that the Affirmative Defenses be Struck with Prejudice.**

Plaintiffs moved to strike the Hughes Entities' (and Travis Hughes') illegality, "illegality for violation of antitrust laws," unclean hands, and *in pari delicto* affirmative defenses.[2] *LifeScan*, Dkt. 684; *Roche*, Dkt. 459. The parties subsequently consented to the referral of the motion to the Special Master appointed to oversee pretrial proceedings in these cases. *LifeScan*, Dkt. 772; *Roche*, Dkt. 538. On February 15, 2024, the Special Master issued a Report & Recommendation granting in full Plaintiffs' motion and striking each affirmative defense with prejudice. *LifeScan*, Dkt. 838; *Roche*, Dkt. 590 ("R&R").

First, the Special Master held that the Hughes Parties' illegality defense was a legally insufficient defense to Plaintiffs' claims. The Special Master noted that illegality is a defense to breach of contract claims, whereas Plaintiffs brought claims sounding in fraud. R&R at 15–17 (finding that none of the cases cited by the Hughes Parties "establish the applicability of the illegality affirmative defense to non-contract claims"). Because Plaintiffs' claims are not based

---

[2] The relevant defenses are affirmative defenses Eight, Nine, Ten, and Thirty.

on an illegal contract between Plaintiffs and the Hughes Parties (indeed, Plaintiffs have *no* contracts with any of the Defendants here), the Special Master held that the illegality defense is inapplicable to Plaintiffs' claims. *Id.* at 18. In addition, the Special Master rejected the Hughes Parties' argument that the contracts between *Plaintiffs and the PBMs* support the Hughes Parties' illegality defense. *Id.* The Special Master held that Plaintiffs are not seeking to enforce or enjoin a party from interfering with those contracts, and thus they cannot constitute a defense to the fraud perpetrated by the Hughes Parties. *Id.* ("Plaintiffs are not seeking enforcement of any contractual right, rather they seek damages for the Alliance fraud.").

Second, the Special Master struck the Hughes Parties' unclean hands affirmative defense with prejudice. As an initial matter, the Special Master held that the unclean hands defense is a defense only to equitable claims, and, thus, could be a defense only to Plaintiffs' unjust enrichment claim. *Id.* at 20. With respect to that claim, the Special Master held that the Hughes Parties failed to establish that Plaintiffs' alleged conduct, even accepting the allegations in the Hughes Parties' answers as true, could possibly sustain an unclean hands defense. *Id.* at 22–23. With respect to the first prong of the defense, the Special Master expressed doubt that Plaintiffs' alleged actions were clearly unconscionable, as required under the doctrine. *Id.* at 23. In addition, the Special Master held that, even if Plaintiffs' conduct was clearly unconscionable, the Hughes Parties' unclean hands defense was *still* legally deficient because Plaintiffs' alleged illegal behavior was unrelated to Plaintiffs' claims against the Hughes Parties. *Id.* at 23–24. Instead, the Special Master held that:

> [t]he Hughes Parties cannot wash their hands of their alleged fraud by alleging that the Plaintiffs were engaged in anticompetitive behavior that necessitated their fraud. Such a conclusion would make a mockery of the unclean hands defense. The Special Master finds it to be inequitable, indeed an undeserved windfall, to permit the Hughes Parties to negate liability for their alleged fraud by asserting that they would not have needed to commit a fraud if Plaintiffs and the PBMs did not engage in anticompetitive behavior.

*Id.* at 24.

Third, the Special Master held that *in pari delicto* was a legally insufficient defense to Plaintiffs' claims because, even accepting the Hughes Parties' allegations against Plaintiffs to be true, Plaintiffs would not be equally at fault for the injuries that they seek to vindicate through these lawsuits. *Id.* at 26. The Special Master noted that the Hughes Parties did not allege that Plaintiffs "were participants in the Alliance fraud," which forms the basis of Plaintiffs' claims. *Id.* at 26. In rejecting the Hughes Parties' argument that Plaintiffs were still at fault for being defrauded (even though they were not alleged to be a part of the Alliance scheme), the Special Master found "that any alleged environment created by Plaintiffs does not equate to being an active participant in the fraud of which Plaintiffs complain." *Id.* at 26. Accordingly, the Special Master struck the *in pari delicto* defense with prejudice.

The Hughes Entities, but not Travis Hughes, objected to the Special Master's Report and Recommendation. *LifeScan*, Dkt. at 845; *Roche*, Dkt. at 598 ("Objection"). The Court should overrule the Hughes Entities' Objection and adopt the Special Master's Report and Recommendation in full, striking affirmative defenses Eight, Nine, Ten, and Thirty from both Travis Hughes' and the Hughes Entities' answers. As set forth in the R&R and below, the Hughes Entities' affirmative defenses—whether characterized as illegality, unclean hands, or *in pari delicto*—are legally insufficient.

## LEGAL STANDARD

"The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike an affirmative defense are granted "when a defense is legally insufficient," *In re Gabapentin Patent Litig.*, 648 F. Supp. 2d 641, 648 (D.N.J. 2009), and the defense's "continuing presence in the

pleadings would prejudice the adverse party," *Figaro v. Simon*, 2015 WL 4171910, at *3 (D.N.J. July 9, 2015), or confuse the issues, *Tonka Corp. v. Rose Art. Indus., Inc.*, 836 F. Supp. 200, 217 (D.N.J. 1993). An affirmative defense is legally insufficient "[i]f it is not recognized as a defense to the cause of action or if the defense could not possibly prevent recovery under any pleaded or inferable set of facts." *Newborn Bros. Co. v. Albion Eng'g Co.*, 299 F.R.D. 90, 97–98 (D.N.J. 2014).[3] "All well-pleaded facts are taken as admitted on a motion to strike but conclusions of law or of fact do not have to be treated in that fashion." *United States v. Kramer*, 757 F. Supp. 397, 409 (D.N.J. 1991) (quotation marks and citation omitted).

## ARGUMENT

### I.   THE SPECIAL MASTER CORRECTLY HELD THAT THE ALLEGED ILLEGALITY OF PLAINTIFFS' BUSINESS PRACTICES IS NO DEFENSE TO PLAINTIFFS' CLAIMS.

The Hughes Entities assert that, if Plaintiffs' pricing practices are forbidden by the antitrust laws and the "any willing provider" statutes, the illegality doctrine bars Plaintiffs from recovering for the fraud the Hughes Entities and their co-conspirators perpetrated upon them. Objection at 13–14. The Hughes Entities are wrong: illegality in fact presents no bar to Plaintiffs' claims because it is an affirmative defense to claims that sound in contract, not fraud.[4]

---

[3] The Hughes Entities repeatedly argue throughout their Objection that their affirmative defenses exceed the "low pleading standards required for affirmative defenses" and that the *Twombly/Iqbal* standard does not apply to affirmative defenses. *See, e.g.*, Objection at 13–14. Plaintiffs have never argued that the *Twombly/Iqbal* standard applies to affirmative defenses, and the Special Master did not apply that standard in the R&R. To the contrary, the Special Master struck the affirmative defenses because the allegations, taken as true, "could not possibly prevent recovery under any pleaded or inferable set of facts." R&R at 15.

[4] Although it is unnecessary to decide this point, the Hughes Entities' defenses are also not cognizable because Plaintiffs have not violated any laws. The sale of products in different distribution channels, subject to different contractual restrictions and with different rebate eligibility, is simply not a violation of the Robinson-Patman Act. *See, e.g.*, *Video Serv. of Am., Inc. v. Maxwell Corp. of Am.*, 2007 WL 2156359, at *3–7 (D.N.J. July 26, 2007) (no Robinson-Patman claim for sales of videos at different list prices to different buyers under different

*See* R&R at 15; *Apotex, Inc. v. Sanofi-Aventis*, 2009 WL 10688058, at \*3 (D.N.J. June 30, 2009) (noting that "the classic affirmative defense of illegality" applies to a claim for breach of contract); *Erie Telecomms., Inc. v. City of Erie*, 853 F.2d 1084, 1090 n.12 (3d Cir. 1988) ("Illegality . . . is an affirmative defense which may be interposed by a party seeking to avoid its obligations under a contract alleged to be unenforceable."); *Lowenschuss v. Kane*, 520 F.2d 255, 266 (2d Cir. 1975) ("Under the doctrine of illegality a party to an unlawful bargain cannot recover damages for its breach.").  As the Special Master noted, Plaintiffs have not asserted any contractual claims against Defendants and are not seeking to enjoin or enforce any contractual rights.  R&R at 18 ("Plaintiffs are not seeking enforcement of any contractual right, rather they seek damages for the Alliance fraud.").  There is therefore no legal basis for the Hughes Entities to assert an illegality defense.  *See, e.g.*, *Allstate Ins. Co. v. A & F Med. P.C.*, 2017 WL 4350418, at \*10 (E.D.N.Y. Apr. 24, 2017) (denying as futile a defendant's attempt to add the affirmative defense of illegality where the plaintiff was not asserting a claim for breach of contract); *Erickson Beamon Ltd. v. CMG Worldwide, Inc.*, 2014 WL 3950897, at \*5 (S.D.N.Y. Aug. 13, 2014) (striking an illegality affirmative defense as impertinent and immaterial when there was "no evidence of a bargain . . . between the parties" (internal quotation marks omitted)).

---

contractual scenarios); *see also Liberty Lincoln-Mercury v. Ford Motor Co.*, 134 F.3d 557, 572 n.20 (3d Cir. 1998) (a "uniform pricing formula" does not violate the Robinson-Patman Act (quotation marks and citation omitted)).  Nor do manufacturers' payments of rebates to PBMs violate antitrust law.  *In re Direct Purchaser Insulin Pricing Litig.*, 2021 WL 2886216, at \*8–10 (D.N.J. July 9, 2021) (dismissing antitrust claims against insulin manufacturers arising out of their alleged anticompetitive payments of rebates to PBMs).  Similarly, New Jersey's Any Willing Provider statute does not even apply to contracts between manufacturers like Plaintiffs and PBMs, which are the contracts to which the Hughes Parties purport to object.  The statute's **very first subsection** makes clear it applies only to "group or individual hospital service corporation contract[s]."  N.J.S.A. § 17:48–6j(a).

As a matter of law, the alleged illegality of Plaintiffs' business practices is no excuse for the Hughes Entities' fraud. In fact, as the Special Master noted, the Hughes Entities' position that a plaintiff's allegedly illegal pricing practices preclude them from recovering for fraud was rejected many years ago by the United States Supreme Court. R&R at 19.

In *Bruce's Juices, Inc. v. American Can Co.*, 330 U.S. 743 (1947), the Supreme Court strictly limited the availability of the very defense asserted here: the alleged illegality of the plaintiff's pricing strategy under the Robinson-Patman Act. In response to a breach of contract claim, the defendant argued that it did not have to pay the plaintiff for goods it had purchased because the plaintiff engaged in illegal price discrimination. *Id.* at 744. The Court rejected that argument. If the defendant could indeed establish a violation of the Robinson-Patman Act, then its remedy was to bring a claim for treble damages under the Robinson-Patman Act. *Id.* at 752. The Act did not "allow a buyer to get his goods for nothing because the seller [allegedly] violated the Act by giving someone else a greater discount." *Id.* Where, as here, the plaintiff is not seeking to enforce a contract that is "intrinsically illegal" (indeed Plaintiffs here are not seeking to enforce any contracts at all), the allegation that the contract contains discriminatory pricing in violation of the Robinson-Patman Act does not preclude courts from "enforcing the duty to pay." *Id.* at 755.

Similarly, the Court held in *Kelly v. Kosuga*, 358 U.S. 516 (1959), that a plaintiff's alleged violations of the antitrust laws is a defense only where a judgment in favor of the plaintiff would require a court to "enforce[e] *the precise conduct made unlawful* by the" antitrust statutes. *Id.* at 520 (emphasis added). The Court rejected an argument that the defendant was not required to pay for onions that were purchased at a fair price and pursuant to a contract that otherwise violated the antitrust laws. *Id.* at 521. Enforcing the buyer's promise to pay the seller

for the onions would not result in making "the courts a party to the carrying out one of the very restraints forbidden by" the antitrust laws, so the illegality defense was not a bar to the plaintiff's breach of contract claim. *Id.* at 520. Here, Plaintiffs do not seek judicial enforcement of their purportedly illegal contracts; instead, they demand that the Hughes Parties and their co-conspirators be held accountable for systematically defrauding Plaintiffs. Reaffirming the Hughes Entities' obligation not to commit fraud would not require the Court to endorse any purported antitrust violation by Plaintiffs. Thus, Plaintiffs' alleged violations of law do not constitute a viable affirmative defense to their claims.[5]

The Hughes Entities' illegality defense here is substantially *more* far-fetched than those that were asserted and rejected in *Bruce's Juice's* and *Kosuga*, because in those cases, the plaintiff sued the defendant based on a contractual right, and the defendant alleged that the contract in question violated the antitrust laws. *See Bruce Juice's*, 330 U.S. at 744; *Kosuga*, 358 at 516. Here, as the Special Master noted, Plaintiffs have not sued the Hughes Entities for breaching a contract at all, let alone an illegal contract. *See* R&R at 18 ("[T]here is no 'illegal' contract between Plaintiffs and the Hughes Parties at issue . . . . [t]here is no evidence of a

---

[5] The Supreme Court's decisions in *Bruce's Juices* and *Kelly v. Kosuga* have been settled law for well over half a century, and have been repeatedly reaffirmed on the relatively rare occasions when defendants assert illegality against a claim that does not require the court to enforce an intrinsically illegal contract. *See, e.g., Monsanto Co. v. Hensel Seed Sols. LLC*, 2019 WL 2173444, at *5 (E.D. Mo. May 20, 2019) (striking an illegality defense premised on the Robinson-Patman Act because "violation of the . . . Act [was] not a defense to Monsanto's breach of contract claim"); *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.,* 2008 WL 2513806, at *2 (S.D. Ga. June 20, 2008) ("Food Movers may not defend its failure to pay for goods received by pleading illegality based on violation of antitrust laws."); *Coca-Cola Co. v. Howard Johnson Co.*, 386 F. Supp. 330, 337–38 (N.D. Ga. 1974) (striking a "clearly insufficient" antitrust affirmative defense on the ground that a judgment in plaintiff's favor would not require the court to "approve or denounce the alleged antitrust activity"). In each of these cases, the court properly rejected a defendant's attempt to transform the case from a straightforward claim for liability based on the defendant's own wrongdoing into a sideshow implicating the entire market in which the wronged plaintiff did business.

'bargain' here between the parties, let alone an unlawful one that Plaintiffs breached."). Rather, Plaintiffs have sued the Hughes Entities for their involvement in a fraudulent scheme. Illegality is not a defense to such claims.

The Hughes Entities rely on two cases to support the claim that their illegality defense is applicable against Plaintiffs' RICO and fraud claims. The Special Master correctly rejected both cases' applicability. R&R at 15. The Hughes Entities first cite *Shulton, Inc. v. Optel Corp.*, 1986 WL 15617 (D.N.J. Sept. 29, 1986), arguing that "the court found nothing insufficient with the defendants' antitrust defense to the plaintiff's RICO claims." Objection at 14–15. But *Shulton* does not support the Hughes Entities' position. The court in *Shulton* **rejected** the argument that the alleged illegality of the contracts was a defense to RICO claims. *Id.* at *25. Instead, the court concluded "the question of whether the wrongdoing of a plaintiff can bar an action based upon federal statutory prohibitions is more appropriately analyzed in terms of the doctrine of *in pari delicto*." *Id.*; *see also* R&R at 16. Here, as held by the Special Master and explained below, the Hughes Entities cannot establish that Plaintiffs are *in pari delicto*. *Infra* at 21–25. Moreover, in *Shulton*, unlike here, the plaintiff and defendants had entered into a purportedly illegal contract: the plaintiff alleged that the defendants fraudulently induced them to sell low-price merchandise, and defendants challenged the contract underlying plaintiff's fraudulent inducement claim as illegal. *See Shulton*, 1986 WL 15617, at *1–3. This case is entirely different: Plaintiffs and the Hughes Entities never entered any contract, and Plaintiffs do not seek to enforce rights related to any contracts. Plaintiffs seek to enforce their rights not to receive fraudulent insurance claims.

The Hughes Entities also cite *Dr. Miles Med. Co. v. John D. Park & Sons Co.*, 220 U.S. 373 (1911) to argue that an "illegality defense based on violations of the antitrust laws is a valid

defense to contractual and tort claims." Objection at 27. But *Dr. Miles* has been overruled. *See Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 900 (2007). Moreover, in *Dr. Miles,* the plaintiff's claim was for "malicious[] interfere[nce] with a contract between two parties," with the defendant accused of "induc[ing] one of them to break that contract, to the injury of the other." 220 U.S. at 394. Thus, the "principal question [wa]s as to the ***validity of the restrictive agreements***." *Id.* at 395 (emphasis added); *see also* R&R at 18 ("At the core of the matter in *Miles Med.* was a contract, the defendants' alleged tortious interference with that contract, and the plaintiffs' attempts to enjoin the defendants from inducing persons into breaking the contract . . . . The Court did not discuss or hold that an illegality defense based on violations of antitrust law is a valid defense to tort claims in general.").[6] Thus, the claim in *Dr. Miles*, unlike here, required a determination of the validity of the challenged agreement. *See also Shulton, Inc.*, 1986 WL 15617, at *25 ("In [*Dr. Miles*], the Supreme Court refused to allow the plaintiff to maintain an action against a defendant distributor for tortious interference with plaintiff's contractual relations with third parties, when the contract whose integrity the plaintiff sought to protect was a per se illegal agreement fixing resale prices."). *Dr. Miles* is therefore also inapposite to the Hughes Entities' defense because Plaintiffs are not suing the Hughes Entities to enforce rights created by an illegal contract.

In their Objection, the Hughes Entities twist themselves into knots trying to allege that their illegality defense *is* actually based on a contract. Because they cannot identify a contract

---

[6] The Hughes Entities' assertion that "the anticompetitive conduct at issue in *Dr. Miles* is the same anticompetitive conduct that the Medsource Entities allege in their affirmative defenses" is irrelevant for the purposes of the motion to strike (and would be irrelevant even if *Dr. Miles* had not been overruled). Objection at 17. The anticompetitive conduct at issue in *Dr. Miles* was reflected in the contract that formed the basis for the claims the plaintiff brought against the defendant. That is not the case here.

between Plaintiffs and themselves, they point to other contracts they know Plaintiffs entered into—those with the PBMs.  Objection at 15–19.  But the Special Master correctly rejected the argument that "the contracts between the Plaintiffs and the PBMs support [the Hughes Parties'] affirmative defense of illegality," noting that "Plaintiffs are neither seeking to enforce nor enjoin a party from interfering with those contracts."  R&R at 18.  The Hughes Entities contend that allowing Plaintiffs to recover on their claims would "vindicate their right to enforce their agreements with the PBMs," which in turn allow Plaintiffs to "(1) charge vastly different prices for identical test strip products; (2) pay massive bribes through rebates; (3) place only the higher-priced retail test strips on formulary for insurance reimbursement; (4) foreclose competition in the mail order business; (5) monopolize the mail order business through an unlawful tying scheme; and (6) charge consumers supracompetitive prices."  Objection at 15–16.  But, in reality, allowing Plaintiffs to recover on their claims would vindicate their right *not to be defrauded* (and, as a corollary, the Hughes Entities' legal obligation not to commit fraud).  Having exploited Plaintiffs' business practices to commit fraud, the Hughes Parties cannot rely on the purported illegality of those business practices to obtain impunity.  As the Special Master rightly concluded, the enforcement of the contracts between Plaintiffs and the PBMs "simply does not apply to the alleged fraud committed by the Hughes Parties or any of their affirmative defenses in this matter."  R&R at 18.

Because the law is clear that a defendant cannot reap an undeserved windfall based on its fraud by alleging that the plaintiff engaged in illegal price discrimination, the Special Master's recommendation that the Hughes Entities' illegality affirmative defenses be stricken should be adopted in full.

## II.     THE SPECIAL MASTER PROPERLY HELD THAT THE HUGHES ENTITIES' UNCLEAN HANDS DEFENSE IS LEGALLY INSUFFICIENT.

The Court should adopt the Special Master's recommendation that the Hughes Entities' unclean hands affirmative defenses be stricken with prejudice.  "The doctrine of unclean hands is an equitable remedy."  *Ajax Enters. v. Fay*, 2007 WL 2572324, at *3 (D.N.J. Aug. 31, 2007). Where plaintiffs "do not request any injunctive or equitable relief . . . the doctrine of unclean hand[s] is not applicable."  *Id.*  "New Jersey law does not allow equitable defenses to defeat a claim at law for purely monetary damages."  *Transamerica Life Ins. Co. v. Daibes Gas Holdings Atlanta, L.L.C.*, 2021 WL 1541150, at *8 (D.N.J. Apr. 20, 2021).  Courts apply these principles broadly, including to claims for fraud.  *Dr. Zhu Inv. Trade Corp. v. Nat. Food Imp. USA, Inc.*, 2012 WL 3236111, at *8 (N.J. Super. Ct. App. Div. July 12, 2012).  Accordingly, as the Special Master held, the unclean hands doctrine is legally insufficient as an affirmative defense to the seven of Plaintiffs' eight causes of action against the Hughes Parties that are non-equitable claims.  R&R at 20.[7]

The Special Master also properly concluded that the unclean hands doctrine is legally an insufficient defense to Plaintiffs' unjust enrichment claim (their sole equitable claim).  The Hughes Entities argue that Plaintiffs' violations of "any willing provider" statutes and antitrust laws provides a defense to their own fraudulent conduct.  *LifeScan*, Dkt. 602 at 109–10, 114; *Roche*, Dkt. 380 at 152–53, 157.  But these allegations cannot support an unclean hands defense. "The equitable doctrine of unclean hands applies when a party seeking relief has committed an unconscionable act immediately related to the equity the party seeks in respect to the litigation."

---

[7] The Hughes Entities do not appear to object to that portion of the Special Master's Report and Recommendation.  Objection at 21 ("The Medsource Entities raised an unclean hands affirmative defense in response to the equitable claims brought by Plaintiffs, including unjust enrichment . . . .").

*Highmark, Inc. v. UPMC Health Plan, Inc.*, 276 F.3d 160, 174 (3d Cir. 2001).  The doctrine is "derived from the unwillingness of a court" to give relief "to a suitor who in the very controversy has so conducted himself as to shock the moral sensibilities of the judge."  *Scherer Design Grp., LLC v. Ahead Eng'g LLC*, 764 F. App'x 147, 149–50 (3d Cir. 2019).  As a result, "a party seeking to invoke the doctrine must show: (1) the party seeking equitable relief committed an unconscionable act; and (2) the act is related to the claim upon which equitable relief is sought." *Id.* at 150.  The Hughes Parties cannot meet either requirement.

> **A.    The Hughes Entities Cannot Establish the Requisite Unconscionable Act.**

The Hughes Entities plead that, because of how they sell their products, Plaintiffs have violated various laws, including several antitrust statutes and "any willing provider" laws. Objection at 23 ("[T]he well-pled facts supporting the Medsource Entities' affirmative defenses clearly establish that Plaintiffs and their PBM co-conspirators conspired to (1) charge vastly different prices for identical test strip products; (2) pay massive bribes through rebates; (3) place only the higher-priced retail test strips on formulary for insurance reimbursement; (4) foreclose competition in the mail order business; (5) monopolize the mail order business through an unlawful tying scheme; and (6) charge consumers supracompetitive prices.").  While these accusations are entirely inaccurate, they would not satisfy the unconscionable act standard even if taken as true.  Failure to adequately allege unconscionable conduct defeats a defense of unclean hands.  *Allergan USA, Inc. v. Sun Pharm. Indus. Ltd.*, 2022 WL 16921800, at *6 (D. Del. Nov. 14, 2022) ("[Defendant's] Amended Answer fails to adequately allege that [Plaintiff] committed any unconscionable conduct underlying its defense of unclean hands.").

Courts in this circuit have set a high standard for unconscionability.  For example, in *Ciba-Geigy Corp. v. Bolar Pharmaceutical Co., Inc.*, 747 F.2d 844 (3d Cir. 1984), the court

concluded that allegations that the plaintiff engaged in false marketing of its drug, sold "adulterated batches" of a drug, and failed to comply with FDA standards were not "transgressions so egregious as to merit the preclusion of an injunction." *Id.* at 855.  Similarly, in *Howmedica Osteonics Corp. v. Zimmer, Inc.*, 2012 WL 5554543 (D.N.J. Nov. 14, 2012), the court found that knowingly hiring a competitor's employees while they were subject to restrictive covenants "would certainly not be 'egregious,' 'unconscionable' or 'inequitable.'" *Id.* at *7.  Thus, the fact that the Hughes Entities allege that Plaintiffs intentionally violated the Sherman Act does not make Plaintiffs' actions *per se* unconscionable, Objection at 22 n.12; the antitrust illegality alleged by the Hughes Entities is no more unconscionable than conduct courts have long held insufficient to state an unclean hands defense.  In fact, the Hughes Entities cite no cases in which a court has found similar antitrust allegations to be unconscionable in the context of an unclean hands defense.

Although the Special Master found that he need not determine whether the anticompetitive conduct alleged by the Hughes Entities constitutes unconscionable conduct, because he found the Hughes Entities failed to satisfy the second prong of the unclean hands defense discussed *infra*, the Special Master did note he was "unable to find any authority for the proposition that the anticompetitive conduct alleged by the Hughes Parties can support an unclean hands defense to an action alleging RICO and fraud claims," and that *Abbott Laboratories v. Adelphia Supply USA*, 2019 WL 5696148 (E.D.N.Y. Sept. 27, 2019) was "similar to the issue pertinent here."  R&R at 23.  Indeed, *Abbott Laboratories* involved nearly identical assertions against a different diabetes test strip manufacturer who brought suit for, among other claims, fraud.  In that case, the defendant asserted an unclean hands defense while "contend[ing] that Abbott's artificial price differential is not the result of market forces, but of

collusion between Abbott and [PBMs], which essentially allows Abbott to pay rebates to eliminate market competition." *Abbott Lab'ys*, 2019 WL 5696148, at *15.[8]  The court found that "[e]ven if such contracts do ultimately yield higher retail prices for U.S. consumers, these arrangements do not constitute the 'truly unconscionable and brazen behavior' required to sustain an unclean hands defense." *Id.*[9]  Here, the Hughes Entities press an identical argument as the *Abbott* defendants.  It fails for the same reasons.

### B.   The Hughes Entities Cannot Allege the Necessary Immediate Relation Between the Alleged Unconscionable Act and Plaintiffs' Claims.

The Hughes Entities premise their unclean hands defense on alleged legal violations related to "the choices in how Plaintiff[s] sell diabetes test strips and how Plaintiff[s] partner with [PBMs]." *LifeScan*, Dkt. 602 at 109, 114; *Roche*, Dkt. 380 at 152, 157.  These allegations do not bear the required immediate relation to Plaintiffs' claims, which are directed to fraud, not antitrust laws.

---

[8] The Hughes Entities contend that the Special Master erred in "relying" on *Abbott Laboratories* because they believe that alleged unconscionable behavior was not competition-related. Objection at 22.  They are mistaken.  The court's holding on the defendants' unclean hands defense was based on the plaintiff's alleged anticompetitive behavior by virtue of its contracts with the PBMs, not based on the plaintiff's acquisition of trademarks.  *Abbott Lab'ys*, 2019 WL 5696148, at *15.  The case is thus squarely applicable here; the Hughes Entities, like the defendants in *Abbott*, have attempted to defend themselves from liability by alleging that Plaintiffs engaged in anticompetitive behavior with the PBMs.  In any event, as noted in the text, the Special Master's decision to strike the unclean hands affirmative defense did *not* rest on its analysis of *Abbott*, but rather on the conclusion that there was an insufficiently close connection between Plaintiffs' alleged unconscionable act and Plaintiffs' claims.  R&R at 23.

[9] Although the Hughes Entities assert at various points in their Objection that Plaintiffs' business practices harmed "consumers" by raising prices on test strips, *see, e.g.*, Objection at 11, 12, 23, nothing in the fraudulent Alliance business model pretended to remedy that supposed harm. Both the patients and their insurers—the entities that bore the ultimate cost of test strips—paid Alliance pharmacies precisely what they would have paid for retail test strips.  The Hughes Entities and their co-conspirators did not pass on the extra profits gleaned from their fraudulent insurance claims to defray the cost of diabetes test strips; they pocketed those stolen profits for themselves.

As the Special Master explained, in order to invoke the unclean hands defense, there must be a relationship between the plaintiff's alleged misconduct and the plaintiff's claim against the defendant.  R&R at 23.  Furthermore, "[t]he nexus between the misconduct and the claim must be close."  *Highmark*, 276 F.3d at 174 (internal quotation marks omitted).  There must be a "tight connection"; otherwise, "the defendant could divert the proceeding into the byways of collateral misconduct."  *Scherer*, 764 F. App'x at 152 (internal quotation marks and alteration omitted).  "[M]isdeeds are collateral when the right for which the plaintiff seeks protection in the . . . suit did not accrue to him because of the misdeed."  *Id.* (internal quotation marks omitted).  It is "[o]nly when some unconscionable act of one coming for relief has immediate and necessary relation to the equity that the party seeks" that unclean hands "will bar recovery."  *In re New Valley Corp.*, 181 F.3d 517, 525 (3d Cir. 1999) (internal quotation marks omitted).  Even in cases where the plaintiff has committed felonies in marketing and selling a product at issue in the litigation, this Court has enforced the requirement for an immediate relationship.  *See In re Gabapentin Patent Litig.*, 648 F. Supp. at 651 (striking the unclean hands defense even when a pharmaceutical company plaintiff feloniously marketed a drug covered by patents it was asserting in litigation off-label because that conduct had only a "tenuous connection" to the plaintiff's patent claims).

The Hughes Entities fail to allege any nexus or close connection between their fraud and Plaintiffs' alleged illegal practices.  While they contend that Plaintiffs seek "nothing less than judicial approval of their illegal practices and anticompetitive conduct through this litigation," Objection at 7, and that Plaintiffs have "engaged in an unlawful and anticompetitive business scheme in violation of the federal antitrust laws, which Plaintiff[s] are now asking the court to enforce through the instant action," *LifeScan*, Dkt. 602 at 117; *Roche*, Dkt. 380 at 160, Plaintiffs

in fact have no claim for enforcement of antitrust laws.  To the contrary, Plaintiffs only seek

recovery of damages they suffered because of Defendants' fraudulent reimbursement claims.  As

the Special Master held, there is no "direct nexus between the alleged fraud committed by the

Hughes Parties and the Hughes Parties' allegations that the Plaintiffs and the PBMs were

engaged in an anticompetitive conspiracy."  R&R at 24.  Plaintiffs' right to seek recompense

after having been defrauded does not arise because of any activity alleged to violate the antitrust

laws; these rights exist entirely because of the fraud perpetrated by the Hughes Entities and their

co-conspirators.

The Hughes Entities argue that "Plaintiffs' anticompetitive agreements with the PBMs go

directly to the heart of Plaintiffs' efforts to have this Court hold Defendants liable for the alleged

fraud because they failed to ensure that Defendants enforced their illegal agreement."  Objection

at 24.  This amounts to an assertion that Defendants were forced to engage in fraud (and exploit,

for their own profit, the price difference between Plaintiffs' retail and non-retail products)

because of Plaintiffs' behavior.  The Special Master correctly rejected that argument:

> The Hughes Parties cannot wash their hands of their alleged fraud by alleging that
> the Plaintiffs were engaged in anticompetitive behavior that necessitated their
> fraud.  Such a conclusion would make a mockery of the unclean hands defense.
> The Special Master finds it to be inequitable, indeed an undeserved windfall, to
> permit the Hughes Parties to negate liability for their alleged fraud by asserting
> that they would not have needed to commit a fraud if Plaintiffs and the PBMs did
> not engage in anticompetitive behavior.

R&R at 24; *see also Abbott Lab'ys*, 2019 WL 5696148, at *14–15 (explaining that "it would

disserve equity to allow Defendants to succeed on an unclean hands defense by condemning the

very price differential they exploited for their own profit").  Thus, the Hughes Entities'

allegations of antitrust violations bear no equitable connection to their involvement in an

extensive scheme to lie to Plaintiffs about what products had been dispensed to patients.  The

unclean hands doctrine is thus a legally deficient defense to Plaintiffs' unjust enrichment claim. *See Ace Am. Ins. Co. v. Wachovia Ins. Agency Inc.*, 2008 WL 4630486, at \*10 (D.N.J. Oct. 17, 2008), *aff'd* 306 F. App'x 727 (3d Cir. 2009) (rejecting the unclean hands doctrine when the plaintiffs brought claims for breach of confidentiality and the defendants alleged that the plaintiffs violated noncompete clauses); *Ciba-Geigy Corp.*, 747 F.2d at 855–56 (rejecting the unclean hands defense where "the alleged wrongdoings [did] not relate to the subject matter of [the] claim"); *Ne. Women's Ctr., Inc. v. McMonagle*, 868 F.2d 1342, 1354 (3d Cir. 1989) (rejecting the application of the unclean hands doctrine when the plaintiff allegedly violated a state health regulation that was unrelated to the defendants' liability for contract interference).

\*\*\*\*\*

The Hughes Entities have failed to plead an unconscionable act or the immediate relation of such an act to this proceeding.  For each of these reasons, the Court should find the unclean hands defenses legally insufficient and strike them in their entirety.[10]

## III.   THE SPECIAL MASTER CORRECTLY HELD THAT *IN PARI DELICTO* IS A LEGALLY INSUFFICIENT DEFENSE TO PLAINTIFFS' CLAIMS.

The Special Master properly held that the Hughes Entities' *in pari delicto* defense is insufficient as a matter of law and thus struck the defense with prejudice.  R&R at 25–26.  *In pari delicto*, which literally means "equally at fault," refers "to the principle that a plaintiff who has participated in wrongdoing may not recover damages resulting from the wrongdoing."  *In re Oakwood Homes Corp.*, 356 F. App'x 622, 626 (3d Cir. 2009) (internal alteration omitted)

---

[10] The Special Master also noted that "[a] court retains the discretion to grant equitable relief even where the elements of the unclean hands doctrine are met."  R&R at 21 (quoting *In re New Valley Corp.*, 181 F.3d at 525, for the proposition that "even where there is a 'relationship between the inequitable conduct and the claims brought . . . the court has discretion to limit the reach of the doctrine'").  That discretion would be appropriately exercised to strike the Hughes Parties' defense here.

(quoting Black's Law Dictionary (8th ed. 2004)).  The affirmative defense requires a defendant to allege (1) that the plaintiff bore "at least substantially equal responsibility" for his injury as the defendant and (2) that precluding the plaintiff's suit would not significantly impair enforcement of the laws under which the plaintiff seeks redress.  *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310–11 (1985).

As to the second prong, the Hughes Entities cite no cases in the Third Circuit—or elsewhere—in which *in pari delicto* has been applied as a defense to RICO claims.  To the contrary, as the Special Master noted, "several federal courts have concluded that the *in pari delicto* defense is not available in suits brought under RICO."  R&R at 25 (citing *Smithfield Foods, Inc. v. United Food & Commercial Workers Int'l Union*, 593 F. Supp. 2d 840, 847 (E.D. Va. 2008); *Schwartz v. The Upper Deck Co.*, 956 F. Supp. 1552, 1556 (S.D. Cal. 1997)).  The Supreme Court has issued guidance on this matter, emphasizing "'the inappropriateness of invoking broad common-law barriers to relief [such as *in pari delicto*] where a private suit serves important public purposes,'" like the RICO statute.  *Bateman Eichler*, 472 U.S at 307 (quoting *Perma Life Mufflers, Inc. v. Int'l Parts Corp.*, 392 U.S. 134, 138 (1968)).  As the Special Master noted, "the *in pari delicto* defense is used sparingly and is narrowly defined in litigation under federal regulatory statues" such as RICO.  R&R at 26 (quotation marks and citation omitted).

Even if *in pari delicto* applied to RICO claims, the Special Master properly found that the Hughes Entities failed to meet the first element of the *Bateman Eichler* test, as no pleaded or inferable set of facts exist that could remotely indicate Plaintiffs were equally at fault for Defendants' fraud.  R&R at 26.  *In pari delicto* can only be a defense to a plaintiff's lawsuit if "the plaintiff [is] . . . an active, voluntary participant in the unlawful activity that is the ***subject of the suit***."  *McAdam v. Dean Witter Reynolds, Inc.*, 896 F.2d 750, 757 (3d Cir. 1990) (emphasis in

22

original); *see also Pinter v. Dahl*, 486 U.S. 622, 632 (1988) (noting that for *in pari delicto* to apply, the parties' culpability must arise "out of ***the same illegal act***" (emphasis added)).   In particular, because "*in pari delicto* is an affirmative defense to a plaintiff's claim for relief . . . . it must be the plaintiff's claim that defines the contours of the defense." *Sevenson Env't Servs. Inc. v. Diversified Royalty Corp.*, 2018 WL 5033749, at \*5 n.11 (D.N.J. Oct. 16, 2018); *Goldstein v. Firer*, 2022 WL 2479237, at \*7 (S.D. Fla. June 17, 2022), *report and recommendation adopted by* 2022 WL 2463733 (S.D. Fla. July 6, 2022) (striking an *in pari delicto* affirmative defense because the defendants did not assert that the plaintiff "engaged in any wrongdoing with respect to the violations [the plaintiff] seeks to redress").   The Hughes Entities' defense does not come close to meeting this requirement.

Again, Plaintiffs' injuries stem from the fraudulent scheme perpetrated by Defendants when they caused Alliance pharmacies to submit false reimbursements to insurance companies. As a result of that scheme, Plaintiffs were defrauded into paying improper rebates that cost them tens of millions of dollars. *See LifeScan*, Dkt. 245 ¶ 390; *Roche*, Dkt. 169 ¶ 386.   The Hughes Entities' affirmative defense does not, and indeed cannot, allege that Plaintiffs defrauded themselves—such an assertion would be absurd.   Instead, the Hughes Entities allege that Plaintiffs have violated various antitrust laws by virtue of their business models, and that because Defendants were able to exploit Plaintiffs' business models for financial gain, Plaintiffs should have no recourse. *See LifeScan*, Dkt. 602 at 114–15; *Roche*, Dkt. 380 at 157–58; *see* R&R at 26 ("[T]he Hughes Parties assert that if Plaintiffs and the PBMs had not entered into contracts and created an anticompetitive environment, the defendants would have had no reason to engage in the alleged Alliance fraud to the detriment of Plaintiffs.").   The Hughes Entities repeat that argument in their objection.   Objection at 26 ("Plaintiffs created the unfair market that it blames

Alliance for operating in . . . . but for Plaintiffs' agreement with the PBMs to exclude competitors from the mail order business and charge supracompetitive prices for identical test strips in violation of the Robinson-Patman Act, Alliance would have been able to compete in the mail order business, and Plaintiffs would not have suffered their alleged injury.").[11]

The Special Master properly rejected the argument that allegedly violating antitrust laws can make Plaintiffs *in pari delicto* with the Hughes Entities for engaging in a systematic scheme to defraud Plaintiffs, holding that "any alleged environment created by Plaintiffs does not equate to being an active participant in the fraud of which Plaintiffs complain."  R&R at 26.[12]  The Hughes Entities cite no case in which an *in pari delicto* defense arose because the plaintiff created the conditions that the defendant fraudulently exploited.  The law does not allow businesses to act as vigilantes by fraudulently exploiting other companies' allegedly unlawful business practices.  Any alleged antitrust violations would not make Plaintiffs *in pari delicto* with Defendants because they do not arise out of the fraudulent scheme alleged in the

---

[11] In addition, there are no inferable facts from the affirmative defenses that suggest that Plaintiffs acted in conjunction with Defendants, as there is no allegation that Plaintiffs committed fraud, the subject of Plaintiffs' claims.  Such active cooperation between the plaintiff and the defendant is often the hallmark of what courts look for in evaluating the *in pari delicto* defense. *See, e.g.*, *McAdam*, 896 F.2d at 757 ("Plaintiffs who are truly *in pari delicto* are those who have themselves violated the law **in cooperation with the defendant**." (emphasis added) (quotation marks omitted)); *Pinter*, 486 U.S. at 637 (noting that a court can determine the parties' relative faults, and thus the applicability of the defense, by focusing on "the extent to which the plaintiff and the defendant **cooperated** in developing and carrying out the [illegal] scheme" (emphasis added)); *United States v. Philip Morris Inc.*, 300 F. Supp. 2d 61, 76 (D.D.C. 2004) (concluding that an *in pari delicto* defense was insufficient as a matter of law because the defendant did not claim that the plaintiff violated the law in cooperation with the defendant).

[12] The Hughes Entities complain that this holding is a result of the Special Master "ignoring the low bar required to plead an affirmative defense."  Objection at 25.  That is not the case.  The Special Master applied no pleading requirement in making this conclusion.  Rather, the Special Master concluded that as a matter of law the Hughes Entities' *in pari delicto* defense cannot constitute a defense to Plaintiffs' claims.  That is the proper standard when evaluating a motion to strike.  *Newborn Bros. Co.*, 299 F.R.D. at 97–98.

complaints—there is simply no allegation whatsoever that Plaintiffs engaged in the fraud or RICO violations that caused them to pay improper rebates. Thus, Plaintiffs did not engage in the unlawful activity that is the subject of their lawsuit and they are not *in pari delicto* with Defendants. *McAdam*, 896 F.2d at 757. Courts strike *in pari delicto* affirmative defenses in which, as here, the defendant failed to allege that the plaintiff was at least equally at fault for his own injuries. *Doe v. Peterson*, 2011 WL 1120172, at *5 (E.D. Mich. Mar. 24, 2011) (striking an *in pari delicto* affirmative defense in part because the plaintiff was not "equally culpable" for her harm as was the defendant); *Brito v. Goodman Pine Creek LLC*, 2021 WL 1265246, at *3 (D. Colo. Apr. 6, 2021) (striking an *in pari delicto* affirmative defense in which the defendant did not allege how a plaintiff's wrongdoing related to the plaintiff's cause of action); *Television Educ., Inc. v. Contractors Intel. Sch., Inc.*, 2016 WL 7212791, at *2 (E.D. Cal. Dec. 12, 2016) (striking an *in pari delicto* affirmative defense when the defendant did not allege that the plaintiff engaged in improper conduct of the same nature which the plaintiff alleged the defendant to have engaged in); *Donovan v. Schmoutey*, 592 F. Supp. 1361, 1403 (D. Nev. 1984) (striking an *in pari delicto* affirmative defense because "[d]efendants failed to plead that the [plaintiff] participated in any way in the transactions" that were the bases for the plaintiff's cause of action in the suit).

Because the affirmative defense is insufficient as a matter of law, the Special Master's recommendation to strike the defense with prejudice under Rule 12(f) should be adopted in full.

## IV.   THE HUGHES PARTIES HAVE FAILED TO DEMONSTRATE THAT THE SPECIAL MASTER'S DECISION HAS PREJUDICED THEM.

The Hughes Entities argue that they are prejudiced by the Special Master's decision to strike their affirmative defenses because they are therefore unable to receive discovery relevant

to their defenses.[13]  Objection at 28–29.  That argument should be rejected.  The Special Master struck the Hughes Entities' Eighth, Ninth, Tenth, and Thirtieth affirmative defenses because they are legally deficient: in other words, they cannot provide a defense to Plaintiffs' claims.  *See generally* R&R at 15–26.  Accordingly, the Hughes Entities are not at all prejudiced by the fact that they cannot get discovery on these claims, as they are entirely irrelevant to this lawsuit.

It is instead *Plaintiffs* who would be prejudiced by the inclusion of these defenses in the litigation, especially to the extent the Hughes Entities continued to seek to discovery on them.  Any effort that Plaintiffs expend to locate and produce fact or expert discovery related to allegations that, as a matter of law, cannot provide the Hughes Entities with a legal defense to Plaintiffs' claims, would be unwarranted and prejudicial.  So, too, would Plaintiffs be prejudiced if they had to expend resources at summary judgment to establish that the Hughes Entities have failed to establish that they violated the law.  (Such a significant digression into the depths of antitrust and health insurance law would only waste the Court's time with hundreds of pages of irrelevant argument, as well.)  Courts have frequently struck defenses in order to avoid this type of wasteful and unnecessary detour.  *See S.E.C. v. Thrasher*, 1995 WL 456402, at *6 (S.D.N.Y. Aug. 2, 1995) (striking an affirmative defense that would "unnecessarily broaden discovery by requiring additional depositions of otherwise uninvolved persons" (internal quotation marks omitted)).  The Hughes Entities' attempts to inject an unrelated area of law (antitrust) into cases that have been ongoing for five and seven years, respectively, is quintessentially prejudicial.

---

[13] The Hughes Entities state that they have been especially prejudiced by the Special Master's decision because it came "only weeks before the close of discovery."  Objection at 29.  That is factually inaccurate, as both fact and expert discovery is not scheduled to close in this case until May 31, 2024, which is three and a half months after the Special Master's February 15 decision. *LifeScan*, Dkt. 827; *Roche*, Dkt. 579.

## CONCLUSION

For the foregoing reasons, the Hughes Entities' objections to the Special Master's

February 15, 2024 Report & Recommendation should be overruled and the Special Master's

February 15, 2024 Report & Recommendation should be adopted in full.


Dated: March 18, 2024

By:   /s/ *Peter C. Harvey*
   Peter C. Harvey, Esq.
   Geoffrey Potter, Esq.
   Aron Fischer, Esq.
   Tara J. Norris, Esq.

   PATTERSON BELKNAP WEBB &
   TYLER LLP
   1133 Avenue of the Americas
   New York, NY 10036-6710
   Tel:  (212) 336-2000

   *Attorneys for Plaintiffs*